IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:25-cv-00462-D-RN

JEREMIAH VONBLOHN,

Plaintiff,

v.

CROSSCOUNTRY MORTGAGE, LLC, and RALEIGH REALTY INC.

Defendants.

**CROSSCOUNTRY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

## TABLE OF CONTENTS

Page(s)

NATURE OF THE CASE AND SUMMARY OF ARGUMENT ....................................................1

BACKGROUND ....................................................................................................................3

I. Plaintiff Obtains A Mortgage Loan from CrossCountry ........................................3

II. CrossCountry, Raleigh Realty, and Page One Power Enter Into A Comarketing Agreement ..............................................................................................3

STANDARD OF REVIEW ....................................................................................................5

ARGUMENT ........................................................................................................................6

I. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RESPA....................6

A. Plaintiff's RESPA Claim Should Be Dismissed Under Rule 12(b)(6) As Time-Barred. ..............................................................6

B. Plaintiff Failed To Plead An Injury And Thus Lacks Standing Under RESPA, Requiring Dismissal Of His Complaint Under Rule 12(b)(1). ..............................................................................................7

C. Plaintiff Has Failed To Plead Conduct Falling Outside Of RESPA's Carve-Out, Necessitating Dismissal Under Rule 12(b)(6). ..............................................................................................12

II. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE UDTPA........14

A. Plaintiff Cannot Restate His RESPA Claim As A UDTPA Claim And, Thus, It Fails Under Rule 12(b)(6)...................................................15

B. Plaintiff Has Failed To Allege That CrossCountry Engaged In An Unfair Or Deceptive Act Or Practice, Resulting In Rule 12(b)(6) Dismissal.................................................................................................17

C. Per Rule 12(b)(1), Plaintiff Fails To Plead An Injury And Thus Lacks Standing To Pursue A Claim Under The UDTPA. .........................20

III. PLAINTIFF HAS FAILED TO STATE A CIVIL CONSPIRACY CLAIM........20

CONCLUSION......................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almanzar v. Bank of Am.*,
NA, No. 1:13CV146, 2013 WL 6893966 (M.D.N.C. Dec. 31, 2013) .......................... 20

*Arthur v. Ticor Title Ins. Co. of Fla.*,
569 F.3d 154 (4th Cir. 2009) .......................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................... 5

*Aziz v. Alcolac, Inc.*,
658 F.3d 388 (4th Cir. 2011) .......................... 5

*Bache Halsey Stuart, Inc. v. Hunsucker*,
38 N.C.App. 414, 248 S.E.2d 567 (1978) .......................... 15

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020) .......................... 7, 8, 9, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................... 5

*Business Cabling, Inc., v. Yokeley*,
182 N.C. App. 657, 643 S.E.2d 63 (2007) .......................... 17, 18

*Cabrera v. Bank of Am.*,
No. 5:11-CV-563-FL, 2013 WL 551697 (E.D.N.C. Feb. 12, 2013) .......................... 18

*Castellanos v. United States*,
No. 5:22-CV-00440-M-RN, 2023 WL 3940438 (E.D.N.C. May 15, 2023) .......................... 7, 9

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*,
845 F.3d 104 (4th Cir. 2016) .......................... 15, 17, 19

*Collins v. First Fin. Servs., Inc.*,
No. 7:14-CV-288-FL, 2016 WL 589688 (E.D.N.C. Feb. 10, 2016) .......................... 12, 13

*State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*,
362 N.C. 431, 666 S.E.2d 107 (2008) .......................... 20

*Corazzini v. Litton Loan Servicing LLP*,
No. 1:09-CV-199, 2010 WL 6787231 (N.D.N.Y. June 15, 2010) ................................ 7

*Cross v. Ciox Health, LLC*,
438 F. Supp. 3d 572 (E.D.N.C. 2020)............................................................ 16, 18, 19

*Crossroads Trucking Corp. v. 19th Cap. Grp. LLC*,
No. 321CV00318RJCDSC, 2022 WL 2612408 (W.D.N.C. Jan. 25, 2022) ...................................................................................................... 20

*Dalton v. Camp*,
353 N.C. 647, 548 S.E.2d 704 (2001)............................................................ 14, 15, 18

*Eichholz v. Wells Fargo Bank, NA*,
No. 10-CV-13622, 2011 WL 5375375 (E.D. Mich. Nov. 7, 2011)............................... 7

*Galiano v. Fid. Nat. Title Ins. Co.*,
No. 08-CV-4711 TCP WDW, 2010 WL 9447505 (E.D.N.Y. Nov. 8, 2010) ...................................................................................................... 13

*Goldman v. Brink*,
41 F.4th 366 (4th Cir. 2022) ........................................................................... 5

*Gudzelak v. PNC Bank*,
No. CV 12-1230-LPS, 2015 WL 1383068 (D. Del. Mar. 23, 2015) ............................. 7

*Hagy v. Advance Auto Parts, Inc.*,
No. 3:15-CV-509-RJC-DCK, 2016 WL 5661530 (W.D.N.C. Sept. 28, 2016) ...................................................................................................... 15

*Hill v. Equifax Info. Servs., LLC*,
No. 1:13CV153, 2014 WL 4809284 (M.D.N.C. Sept. 26, 2014)................................ 21

*Indus. Timber, LLC v. Jackson Furniture Indus., Inc.*,
No. 322CV00229KDBDCK, 2022 WL 5265156 (W.D.N.C. Oct. 6, 2022) ............................................................................................... 18, 19

*Madrial v. Garland*,
No. 5:23-CV-372-FL, 2023 WL 9002728 (E.D.N.C. Dec. 28, 2023) ........................... 7

*Marshall v. Miller*,
302 N.C. 539, 276 S.E.2d 397 (1981)........................................................................ 14

*McManus v. GMRI, Inc.*,
No. 3:12-CV-009-DCK, 2012 WL 2577420 (W.D.N.C. July 3, 2012)....................... 19

*Morris v. CrossCountry Mortg., LLC*,
No. 5:22-CV-336-BO-BM, 2023 WL 3029246 (E.D.N.C. Apr. 20, 2023) ..... 7, 9, 10

*Morris v. CrossCountry Mortg., LLC*,
No. 5:22-CV-336-BO-BM, 2023 WL 7003692 (E.D.N.C. Oct. 24, 2023) ..... 9

*Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*,
No. 522CV00171KDBDCK, 2023 WL 6931787 (W.D.N.C. Oct. 19, 2023) ..... 15

*Mozingo v. Orkin, Inc.*,
No. 4:10-CV-71, 2011 WL 845896 (E.D.N.C. Mar. 8, 2011) ..... 4

*Mullinax v. Radian Guar. Inc.*,
199 F. Supp. 2d 311 (M.D.N.C. 2002) ..... 6

*Mullinax v. Radian Guar., Inc.*,
311 F. Supp. 2d 474 (M.D.N.C. 2004) ..... 6

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
839 F.3d 1 (D.C. Cir. 2016) ..... 12, 14

*Register v. N. Sun Hous. & Dev., Inc.*,
No. 7:04-CV-68-FL, 2005 WL 8159532 (E.D.N.C. Sept. 2, 2005) ..... 15, 16, 17

*Robinson v. Am. Honda Motor Co.*,
551 F.3d 218 (4th Cir. 2009) ..... 5

*Skinner v. E.F. Hutton & Co.*,
314 N.C. 267, 333 S.E.2d 236 (1985) ..... 15

*Stack v. Abbott Labs., Inc.*,
979 F. Supp. 2d 658 (M.D.N.C. 2013) ..... 18

*Staten v. Tekelec*,
No. 5:09-CV-434-FL, 2010 WL 3835127 (E.D.N.C. Aug. 10, 2010) ..... 4

*Tabb v. Bd. of Educ. of the Durham Pub. Schs.*,
29 F.4th 148 (4th Cir. 2022) ..... 5

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..... 7

*Westchester Fire Ins. Co. v. Johnson*,
221 F. Supp. 2d 637 (M.D.N.C. June 27, 2002) ..... 20

*Willis v. Bank of Am. Corp.*,
No. CIV.A. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) .................... 13

*Zillow Grp., Inc. Sec. Litig.*,
No. C17-1387-JCC, 2018 WL 4735711 (W.D. Wash. Oct. 2, 2018) .......................... 12

**Statutes**

12 U.S.C. § 2607 ................................................................................ 6, 7, 12, 17

12 U.S.C. § 2607(a) ............................................................................................ 6

12 U.S.C. § 2607(c)(2) ............................................................................ 6, 12, 13

12 U.S.C. § 2614 ................................................................................................ 6

12 U.S.C. § 2617 .............................................................................................. 17

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ................................................ 16

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ....................................................... 16

Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ................................................................. 16

Home Mortgage Disclosure Act, 12 U.S.C. § 2801 *et seq.* ............................................. 16

N.C. Gen. Stat. § 53-244.010 ....................................................................................... 17

N.C. Gen. Stat. § 53-244.030 ....................................................................................... 17

N.C. Gen. Stat. § 53-244.115 ....................................................................................... 17

N.C. Gen. Stat. § 53-244.116 ....................................................................................... 17

N.C. Gen. Stat. § 53-244.118 ....................................................................................... 17

North Carolina SAFE Act, N.C. Gen. Stat. § 53-244.010 *et seq.* .................................... 17

North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §
75-1.1, *et seq.* ....................................................................................... *passim*

Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, *et seq.* ............................ *passim*

Secure and Fair Enforcement for Mortgage Licensing Act of 2008, 12
U.S.C. § 5101 *et seq* ................................................................................. 16

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ....................................................... 15, 16

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING (4th ed. 2025) ........................................................................................ 16

Defendant CrossCountry Mortgage, LLC ("CrossCountry") submits this memorandum in support of its Motion to Dismiss the Complaint of Plaintiff Jeremiah VonBlohn pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## NATURE OF THE CASE AND SUMMARY OF ARGUMENT

After obtaining a 30-year, adjustable-rate mortgage loan starting at an initial 6.75% interest rate, Plaintiff claims that CrossCountry's comarketing agreement (the "Comarketing Agreement") with Co-Defendant Raleigh Realty, Inc., his realtor ("Raleigh Realty"), somehow hindered his ability to get a better deal on his loan elsewhere. Plaintiff's entire theory rests on the benign allegation that Raleigh Realty told him once that Raleigh Realty "works with" CrossCountry and did not recommend any other lenders. Compl. ¶ 64. In this lawsuit, Plaintiff tries to turn his realtor's simple lender recommendation into purported violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, *et seq.* ("RESPA") and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("UDTPA") as well as civil conspiracy. Plaintiff claims that the Comarketing Agreement between Defendants purportedly constituted an unlawful kickback scheme whereby Raleigh Realty directed home buyers to CrossCountry for mortgage lending services, and this agreement somehow injured him.

But this is not a case about kickbacks. This is a case about whether settlement service providers can continue business as usual—or whether long-standing case law on the permissibility of comarketing agreements should be turned on its head. All that Plaintiff's 112-paragraph Complaint describes is a run-of-the-mill, industry-standard comarketing agreement. Plaintiff fails to allege the elements of his claims, ***including the basis of his own claimed injury***. Specifically, Plaintiff's claims under RESPA, UDTPA, and common law civil conspiracy each should be dismissed.

*First*, Plaintiff's RESPA claim should be dismissed under Rules 12(b)(1) and 12(b)(6). Plaintiff's RESPA claim has been time-barred for over a year-and-a-half and Plaintiff does not (and cannot) plead any facts that suggest his limitations period should be tolled. Plaintiff lacks standing to bring a claim under RESPA because he has failed to adequately allege that he was overcharged—or experienced any other injury—as a result of the Comarketing Agreement. Plaintiff's RESPA claim is further defective because there are no facts showing that the Comarketing Agreement falls outside of RESPA's carve-out for payments in return for "services actually performed."

*Second*, Plaintiff's UDTPA claim should be dismissed under Rules 12(b)(1) and 12(b)(6). Plaintiff's UDTPA claim is premised on the same allegations as his RESPA claim and, under long-standing case law, Plaintiff cannot base a UDTPA violation on conduct that is already subject to extensive regulation by existing statutory and regulatory regimes, such as RESPA. Separately, Plaintiff's UDTPA claim fails because he has failed to plead any conduct that is unfair or deceptive. And, like Plaintiff's RESPA claim, Plaintiff lacks standing to pursue a UDTPA claim for failure to adequately allege an injury.

*Third*, Plaintiff's civil conspiracy claim should be dismissed. Plaintiff's civil conspiracy claim is premised on the alleged underlying RESPA and UDTPA violations. Because those claims should be dismissed, so too should Plaintiff's civil conspiracy claim. Additionally, like his other claims, Plaintiff lacks standing to pursue a civil conspiracy claim because he has not adequately alleged that he suffered an injury. For these reasons, Plaintiff's Complaint fails under Rules 12(b)(1) and 12(b)(6).

## BACKGROUND[1]

### I. Plaintiff Obtains A Mortgage Loan from CrossCountry

Plaintiff retained Raleigh Realty to assist him in the purchase of a home starting in October 2021. Compl. ¶¶ 13, 60. At Raleigh Realty, Plaintiff was represented by Ayana Barnes, a real estate agent. Compl. ¶ 60. Plaintiff alleges that, in Fall 2021, Ayana Barnes recommended CrossCountry to Plaintiff, stating that Raleigh Realty "works with" CrossCountry, and that Ayana Barnes "recommended CrossCountry but no other lenders." Compl. ¶ 64. Thereafter, Plaintiff obtained a mortgage loan from CrossCountry on November 15, 2022. Compl. ¶ 78.

Plaintiff's mortgage loan with CrossCountry is an adjustable-rate mortgage with an initial interest rate of 6.75%. Compl. ¶ 67. Plaintiff's mortgage also contained a $995 loan origination fee. Compl. ¶ 72.

### II. CrossCountry, Raleigh Realty, and Page One Power Enter Into A Comarketing Agreement

***Raleigh Realty Enters Into An Agreement With Page One Power In Early 2021*:** On January 19, 2021, Raleigh Realty entered into an SEO Service Agreement with Page One Power, a digital marketing company specializing in search engine optimization.[2] Compl. ¶ 39; Compl. Ex. 1 at 10-11. Under the SEO Service Agreement, Raleigh Realty paid $7,500 per month to Page One Power and received search engine optimization services aimed at increasing Raleigh Realty's website's position within Google search results and, thus, the website's web traffic. Compl. Ex. 1 at 10-11. On March 2, 2021, Raleigh Realty and Page One Power Amended the SEO Service

---

[1] These alleged facts are taken from the Complaint and are assumed to be true only for purposes of this motion. CrossCountry reserves its right to challenge these factual allegations at an appropriate time in the future.

[2] Search engine optimization, or "SEO," refers to the process of optimizing a website such that links to that website appear higher in the results of a web user's search on a search engine such as Google, with the goal of increasing web traffic on that website. *See What is SEO in digital marketing?*, INTUIT MAILCHIMP, https://mailchimp.com/marketing-glossary/seo/.

Agreement via the Project Scope Addendum. Ex. 1.[3] Through the Project Scope Addendum, Raleigh Realty increased its monthly payment to $30,000 and, in return, received an increased volume of search engine optimization services from Page One Power at a discounted rate. *Id.*

***Raleigh Realty, CrossCountry, & Page One Power Enter Into A Comarketing Agreement On April 12, 2021*:** In mid-February 2021, Ryan Fitzgerald, Raleigh Realty's owner and president, began to explore a possible business agreement with CrossCountry's executive vice president, Chuck Shackelford and a CrossCountry branch manager, Corey Walker. Compl. ¶¶ 11, 13, 34. Ultimately, CrossCountry, Raleigh Realty, and Page One Power elected to transition the existing Raleigh Realty-Page One Power SEO Service Agreement into a comarketing agreement through an Addendum for Vendor Investment Inclusions executed on April 12, 2021 between CrossCountry, Raleigh Realty, and Page One Power. Compl. ¶ 41; Compl. Ex. 1 at 16-20.

Under the Comarketing Agreement, CrossCountry was to pay $15,000/month of the total $30,000/month Raleigh Realty was already paying to Page One Power for search engine optimization services aimed at boosting viewership of Raleigh Realty's website. Compl. Ex. 1 at 16. In return, CrossCountry received numerous web marketing services, aimed at integrating CrossCountry within Raleigh Realty's website. *Id.* These services included:

1. A "Get Pre-Qualified" CTA[4] on the website's real estate listings;

---

[3] Plaintiff has attached to the Complaint both the SEO Service Agreement, Compl. Ex. 1 at 2-15, and the Addendum for Vendor Investment Inclusions, *Id.* at 16-20, which was incorporated into the SEO Service Agreement. Compl. ¶ 41. The entire agreement between the CrossCountry, Raleigh Realty, and Page One Power also includes CrossCountry's Exhibit 1, the Project Scope Addendum, which amended the SEO Service Agreement prior to the execution of the Addendum for Vendor Investment Inclusions. The Court may consider this document without converting CrossCountry's motion to dismiss into one for summary judgment because it forms part of the Comarketing Agreement which is "integral to and explicitly relied on in the complaint." *Mozingo v. Orkin, Inc.*, No. 4:10-CV-71, 2011 WL 845896, at *4 (E.D.N.C. Mar. 8, 2011); *Staten v. Tekelec*, No. 5:09-CV-434-FL, 2010 WL 3835127, at *4 (E.D.N.C. Aug. 10, 2010).

[4] A CTA, or "Call-to-Action" is a concise and persuasive prompt encouraging or directing individuals to take a specific action. *See Call-to-Action (CTA)*, INTUIT MAILCHIMP, https://mailchimp.com/marketing-glossary/what-is-a-cta/. Here, the CTA directed viewers on Raleigh Realty's website to get pre-qualified for a mortgage loan with CrossCountry.

2. The addition of a CrossCountry Loan Officer on the website's "Agents" page;
3. A hyperlink titled "Lending" that linked to CrossCountry's website; and
4. CrossCountry's logo placed on the website's mortgage calculator. *Id.*

**STANDARD OF REVIEW**

A complaint is subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) where a plaintiff "has not alleged facts sufficient to establish Article III standing to sue." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022). Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted).

In addition, a "motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim." *Tabb v. Bd. of Educ. of the Durham Pub. Schs.*, 29 F.4th 148, 155 (4th Cir. 2022). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

At the motion to dismiss stage, the Court must "assum[e] all well-pleaded, non-conclusory factual allegations in the complaint to be true." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). Here, Plaintiff's Complaint fails under both Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RESPA

RESPA § 2607 states that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). However, "[n]othing in [§ 2607] shall be construed as prohibiting…the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2).

Plaintiff's RESPA claim should be dismissed under Rules 12(b)(1) and 12(b)(6) because (1) Plaintiff's RESPA is time-barred, (2) Plaintiff has failed to allege injury or standing, and (3) the Complaint makes clear that the supposed 'kickback' was for "services actually performed." *Id.*

#### A. Plaintiff's RESPA Claim Should Be Dismissed Under Rule 12(b)(6) As Time-Barred.

Plaintiff's RESPA claim is subject to a 1-year limitations period that commenced at the closing of Plaintiff's mortgage loan on November 15, 2022. Compl. ¶ 60; *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 324-25 (M.D.N.C. 2002); 12 U.S.C. § 2614. Plaintiff's RESPA claim thus expired on November 15, 2023, well over a ***year and a half*** before commencing this lawsuit. Plaintiff has pled no facts that could suggest his RESPA limitations period should be tolled. Plaintiff's RESPA claim should therefore be dismissed under Rule 12(b)(6). *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 487, 492 (M.D.N.C. 2004) (dismissing RESPA claim as untimely because plaintiffs initiated litigation six months after the one-year limitations period expired).

### B. Plaintiff Failed To Plead An Injury And Thus Lacks Standing Under RESPA, Requiring Dismissal Of His Complaint Under Rule 12(b)(1).

Even if Plaintiff's RESPA claim was timely (which it is not), Plaintiff has failed to plead facts showing that he was injured as a result of the alleged RESPA violation and, thus, lacks standing to pursue that claim. To establish standing, Plaintiff must show that: (1) he "suffered an injury in fact;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). An injury-in-fact must be "concrete" and "de facto." *Id*. at 2205. To allege standing under RESPA § 2607, a plaintiff must adequately allege that he or she was actually overcharged as a result of the alleged kickback scheme. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020). Such allegations of an overcharge must be plausible and cannot be speculative or conclusory; "courts have consistently dismissed complaints under RESPA if they…state merely that in a conclusory fashion the defendant caused damages to the plaintiff." *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010); *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 WL 3029246, at *3 (E.D.N.C. Apr. 20, 2023) (RESPA § 2607 claim dismissed where plaintiff "provid[ed] no allegations which would plausibly support a showing" of injury); *Eichholz v. Wells Fargo Bank, NA*, No. 10-CV-13622, 2011 WL 5375375, at *2 (E.D. Mich. Nov. 7, 2011) (dismissing RESPA § 2607 claim because plaintiff's conclusory allegations that defendant extracted unearned fees from plaintiff failed to "rise[] above the speculative level"); *Gudzelak v. PNC Bank*, No. CV 12-1230-LPS, 2015 WL 1383068, at *3 (D. Del. Mar. 23, 2015) ("Plaintiff's generalized and conclusory allegations" of injury under RESPA cannot "allow his claims to survive a motion to dismiss"); *Madrial v. Garland*, No. 5:23-CV-372-FL, 2023 WL 9002728, at *3 (E.D.N.C. Dec. 28, 2023) ("conclusory assertion" of injury failed to confer standing); *Castellanos v. United States*, No. 5:22-CV-00440-

M-RN, 2023 WL 3940438, at *4 (E.D.N.C. May 15, 2023) (plaintiff failed to allege standing for failure to "provide any plausible facts" showing an injury).

*Baehr* is instructive. There, the Fourth Circuit held that RESPA plaintiffs failed to show that they had suffered a concrete injury as a result of an alleged kickback scheme, remanding the case for dismissal for lack of standing. 953 F.3d at 258. Like here, the *Baehr* plaintiffs alleged there was an unlawful kickback arrangement between their real estate agent and a settlement service provider (a title company) to whom the real estate agent had referred the plaintiffs. *Id.* at 248-51. The *Baehr* plaintiffs did not claim they were overcharged, only that they were "deprived of an impartial and fair competition between settlement service providers." *Id.* at 254. The Fourth Circuit rejected the plaintiffs' suggestion that, in the absence of an overcharge, the plaintiffs suffered a "concrete injury" merely by paying for settlement services that were provided in violation of RESPA or by being deprived of "impartial and fair competition." *Id.* at 254. Absent an overcharge as a result of the RESPA violation, a plaintiff's claim of alleged kickbacks merely "reduces to the type of 'bare procedural violation' that has long been insufficient for Article III standing." *Id.* at 258.

Plaintiff's Complaint should be dismissed for the same reasons. Like in *Baehr*, Plaintiff primarily contends that the Comarketing Agreement deprived him of "the benefits of impartial and fair competition." Compl. ¶ 59. In an attempt to circumvent *Baehr*'s requirement of an overcharge, Plaintiff baldly asserts that he "would have been able to obtain an adjustable-rate loan with an initial interest rate of 6.625%" from another lender instead of his 6.75% initial interest rate with CrossCountry.[5] Compl. ¶¶ 63, 67, 74. He also asserts that, had he not borrowed from

[5] Plaintiff alternatively claims that he "would have been able to obtain a 30-year *fixed*-rate loan with an interest rate of 6.75% or lower." Compl. ¶ 62 (emphasis added). Plaintiff does not claim that his actual adjustable-rate loan with CrossCountry constitutes an overcharge relative to this hypothetical 6.75% fixed-rate loan that he "would have been

CrossCountry, "he would have been able to borrow from a mortgage lender that charged a lower loan origination fee." Compl. ¶ 73. These conclusory allegations fail to plausibly show that Plaintiff suffered any injury or overcharges. Plaintiff is simply claiming that he "would have been able to" obtain a lower initial interest rate and origination fee and is asking the court to take his word for it without providing any supporting allegations. That is insufficient to allege an injury. *Castellanos*, 2023 WL 3940438, at *4.

Plaintiff should be aware that these allegations are insufficient to allege standing. In *Morris v. CrossCountry*, No. 5:22-CV-336-BO-BM (E.D.N.C. filed Aug. 25, 2022), Plaintiff's counsel represented other CrossCountry borrowers and Raleigh Realty clients alleging the same claims based on the same supposed kickback scheme alleged by Plaintiff here. There, Judge Boyle originally dismissed the plaintiffs' RESPA claim, finding that they failed to adequately allege an overcharge, and thus standing, despite pleading facts that were substantially more plausible than those present here.[6] *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 WL 3029246, at *3 (E.D.N.C. Apr. 20, 2023). The *Morris* plaintiffs alleged, for example, that they had prequalified with another lender for a mortgage loan at a 2.25% interest rate, but that their interest rate with CrossCountry was 3.625%. *Id.* And, like here, they alleged that they would not have had to pay CrossCountry's origination fee had they used another lender. *Id.* Judge Boyle found that these allegations were "not much different" than the allegations in *Baehr* because they failed to plausibly demonstrate an overcharge. *Id.* The *Morris* plaintiffs' "bare allegation" concerning their origination fee did not "plausibly support a showing that an origination fee would not have been

able to obtain." Nor can he, because, as with any adjustable rate loan, Plaintiff's interest rate may be adjusted downward resulting in lower payments across the life of the loan compared to a fixed 6.75% interest rate.

[6] After the initial dismissal, the *Morris* plaintiffs subsequently amended their complaint to include further specific factual allegations about their claimed overcharges that the Court ultimately held were sufficient to survive dismissal on a second motion to dismiss. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 WL 7003692, at *3 (E.D.N.C. Oct. 24, 2023).

charged by another lender or that CrossCountry's origination fee was unreasonably higher than other lenders." *Id.* Similarly, the *Morris* plaintiffs' interest rate allegations were defective because, for example, there were no plausible allegations that the prior prequalification rate would have translated into an actual interest rate had they proceeded with the other lender. *Id.* They further failed to plausibly demonstrate that "CrossCountry's rate was higher than plaintiffs would have qualified for elsewhere." *Id.* The Court should reach the same result here. Plaintiff's allegations here are even more threadbare than those in *Morris*. Specifically, Plaintiff baselessly asserts that he "would have been able to" obtain a lower initial interest rate and origination fee elsewhere, without even bothering to point to a prior prequalification or other allegations supporting that claim.

In addition, Plaintiff has failed to allege an injury because, even if Plaintiff's conclusory allegations that he "would have been able to" obtain a lower origination fee and initial interest rate from another mortgage lender were true, those allegations still fail to demonstrate an *overcharge*. Compl. ¶¶ 63, 73. Notably, for example, Plaintiff does not allege that *CrossCountry* would have charged him less absent its participation in the Comarketing Agreement. Nor does Plaintiff allege that the supposedly lower initial interest rate and origination fee he "would have been able to obtain" were market-standard rates. Plaintiff thus appears to base his alleged injury on the supposed fact that, somewhere in the market, one of CrossCountry's competitors might have charged a lower interest rate or origination fee than CrossCountry did, and that Plaintiff "would have been able to" obtain those rates. Plaintiff's novel theory that he can allege standing simply by claiming the existence of a lower available interest rate does not find support in the law. The mere allegation that a mortgage lender does not charge the lowest rates of all of its competitors

cannot confer standing. *See Arthur v. Ticor Title Ins. Co. of Fla*., 569 F.3d 154, 156 (4th Cir. 2009) ("RESPA is not a price-control statute").

But even if Plaintiff could plausibly show that he was overcharged, he has failed to show that any overcharge was *caused* by the Comarketing Agreement, further rendering Plaintiff's RESPA claim, at most, a "bare procedural violation, divorced from any concrete harm." *Baehr*, 953 F.3d at 252. Plaintiff's theory of an overcharge is not that CrossCountry would have charged him less in the absence of the Comarketing Agreement. Rather, Plaintiff claims that he could have obtained a lower interest rate, and loan origination fee if he "had the opportunity to shop around" and if Raleigh Realty did not "affirmatively induc[e] Plaintiff's selection of CrossCountry as his mortgage lender." Compl. ¶¶ 74, 76. But Plaintiff has failed to plead allegations showing that he was, as he claims, deprived of "the opportunity to shop around"—let alone as a result of the Comarketing Agreement. Plaintiff's claim that he was deprived of "the opportunity to shop around" is supported only by his allegation that Raleigh Realty Agent Ayana Barnes told Plaintiff "that Raleigh Realty works with CrossCountry Mortgage and recommended CrossCountry Mortgage but no other lenders." Compl. ¶ 64. A simple lender recommendation does nothing to show that Plaintiff was prevented or discouraged from seeking other options for mortgage lenders. This sole factual allegation cannot suffice to show CrossCountry or Raleigh Realty prevented Plaintiff from seeking out other mortgage lenders from which he "would have been able to" receive a lower initial interest rate or loan origination fee. *See Baehr*, 953 F.3d at 255-56 (RESPA plaintiffs failed to show they were "deprived of impartial and fair competition among settlement services providers" because "they did not investigate…other settlement service providers").

Plaintiff thus has failed to allege an injury, and his RESPA claim should thus be dismissed for lack of standing under Rule 12(b)(1).

### C. Plaintiff Has Failed To Plead Conduct Falling Outside Of RESPA's Carve-Out, Necessitating Dismissal Under Rule 12(b)(6).

Plaintiff's RESPA claim also fails because RESPA contains an express carve-out for comarketing agreements like the one at issue here. RESPA § 2607 provides that "***[n]othing*** in this section shall be construed as prohibiting…the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2) (emphasis added). Courts have long held that Section 2607(c) means what it says: that "[n]othing means nothing." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 41 (D.C. Cir. 2016), *reversed on other grounds*, 881 F.3d 75 (D.C. Cir. 2018).

In other words, agreements between settlement service providers for "services actually performed" are not prohibited by RESPA, ***even if those agreements are explicitly tied to referrals.*** *Id.* (holding that an agreement "in which the lender says to the mortgage insurer: We will refer customers to you, but only if you purchase another service from our affiliated reinsurer, albeit at reasonable market value" does not violate RESPA); *Zillow Grp., Inc. Sec. Litig.*, No. C17-1387-JCC, 2018 WL 4735711, at *7 (W.D. Wash. Oct. 2, 2018) ("[E]ven if [] co-marketing agents were making mortgage referrals, such referrals would fall under the Section [2607(c)] safe harbor because lenders received advertising services in exchange for paying a portion of their agent's advertising costs.").

Accordingly, courts routinely hold that dismissal is warranted under Rule 12(b)(6) where, as here, a RESPA plaintiff fails to plausibly allege that the supposed kickback was not for services actually performed. *Collins v. First Fin. Servs., Inc.*, No. 7:14-CV-288-FL, 2016 WL 589688, at *8 (E.D.N.C. Feb. 10, 2016) (dismissing RESPA claim because plaintiff "has not alleged any kickbacks [] between [codefendants] that were other than "for services actually performed" because "the fact of payment of fees under the [codefendants'] Agreement is not in itself sufficient

to state a violation of Section [2607] of RESPA"); *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *15 (D. Md. Aug. 1, 2014) (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable"); *Galiano v. Fid. Nat. Title Ins. Co.*, No. 08-CV-4711 TCP WDW, 2010 WL 9447505, at *4 (E.D.N.Y. Nov. 8, 2010), *aff'd,* 684 F.3d 309 (2d Cir. 2012) (that Defendant "performed actual services" in exchange for alleged kickback was "fatal to Plaintiffs' RESPA claim").

Plaintiff's Complaint contains numerous allegations that Comarketing Agreement was supposedly "based on referrals." Compl. ¶¶ 35, 38, 48. But those allegations are not enough on their own. Plaintiff also was required to allege that the payments under the Comarketing Agreement were not for "services actually performed." 12 U.S.C. § 2607(c)(2); *Collins*, 2016 WL 589688, at *8. Not only has Plaintiff failed to make these allegations, Plaintiff has ***affirmatively alleged*** that CrossCountry was, in fact, provided with marketing services under the Comarketing Agreement. Compl. ¶ 43 ("the 'marketing services' were simply window-dressing provided for plausible deniability"). Further, Exhibit 1 to the Complaint, the Comarketing Agreement, details the exact services that CrossCountry was provided in return for its $15,000/month payment. Compl. Ex. 1 at 16. Plaintiff has not alleged that any of these specific marketing services were not provided to CrossCountry.

Moreover, Plaintiff failed to allege that $15,000/month was an unreasonable amount to pay for the marketing services CrossCountry received. And, he cannot do so. As explained *supra* pp. 3-5, these services allowed CrossCountry to piggy-back on the pre-existing $30,000/month search engine optimization services Page One Power already was providing to Raleigh Realty to boost Raleigh Realty's website and viewership. Compl. Ex. 1; Ex. 1. CrossCountry was provided

services under the Comarketing Agreement that functioned to integrate CrossCountry into Raleigh Realty's website by including within the website (1) links to CrossCountry's website, (2) CrossCountry loan officer information, and (3) CrossCountry advertising material. Compl. Ex. 1 at 16. Not only were "services actually performed" for CrossCountry under the Comarketing Agreement, but CrossCountry was receiving, for $15,000/month, the benefits of Page One Power's search engine optimization services for which Raleigh Realty had previously been paying $30,000/month. Compl. Ex. 1; Ex. 1. Plaintiff has not alleged—and cannot allege—that CrossCountry paid an unreasonable amount for such services.

That CrossCountry allegedly expected referrals from Raleigh Realty does nothing to support a RESPA violation given that CrossCountry received services for its participation in the Comarketing Agreement. Compl. ¶ 43. Comarketing agreements such as the one at issue here are entirely permissible and are precisely why RESPA's carve-out exists. *PHH Corp.*, 839 F.3d at 41-42 (Congress included § 2607(c) to make clear that "transactions between businesses in the real estate market [] connected to, conditioned on, or tied to referrals" were "lawful so long as reasonable market value was paid and the services were actually performed" given that such "arrangements are ubiquitous in the U.S. economy."). Plaintiff has thus failed to allege conduct outside of RESPA's carve-out.

For the foregoing reasons, Plaintiff's RESPA claim should be dismissed.

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE UDTPA

The UDTPA requires a showing that (1) the defendant committed an unfair or deceptive act or practice; (2) the defendant's act was in or affecting commerce; and (3) the plaintiff was injured thereby. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Acts are unfair if they offend public policy or are immoral, unethical, or substantially injurious to consumers. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Moreover, "some type of

egregious or aggravating circumstances must be alleged and proved before the [UDTPA]'s provisions may take effect." *Dalton*, 353 N.C. at 657.

Pursuant to Rules 12(b)(1) and 12(b)(6), Plaintiff has failed to state a claim under the UDTPA because (1) Plaintiff cannot use the UDTPA to restate his RESPA claim, (2) Plaintiff fails to allege that CrossCountry engaged in an "unfair or deceptive act or practice," and (3) Plaintiff lacks standing to pursue a UDTPA claim.

**A. Plaintiff Cannot Restate His RESPA Claim As A UDTPA Claim And, Thus, It Fails Under Rule 12(b)(6).**

Plaintiff's UDTPA claim fails because it is based on the same conduct as his RESPA claim, which is conduct already subject to extensive regulation. "North Carolina courts have refused to apply the UDTPA to matters already under 'pervasive and intricate regulation' by other statutory schemes that contain separate enforcement, supervisory, and remedial provisions." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016); *Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 WL 8159532, at *2, *10 (E.D.N.C. Sept. 2, 2005), *aff'd sub nom. Register v. Flagstar Bank*, 205 F. App'x 154 (4th Cir. 2006) (UDTPA claim cannot be based on a Truth in Lending Act violation against a mortgage lender given existing "pervasive regulation"); *Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C.App. 414, 421, 248 S.E.2d 567, 570 (1978) (holding that the UDTPA does not apply to commodities transactions because they are subject to a "pervasive" federal scheme); *Hagy v. Advance Auto Parts, Inc.*, No. 3:15-CV-509-RJC-DCK, 2016 WL 5661530, at *3 (W.D.N.C. Sept. 28, 2016) (dismissing UDTPA claim premised on Medicare Secondary Payer Act violation because "there clearly exists a 'pervasive and intricate' statutory scheme governing Medicare"); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274, 333 S.E.2d 236, 241 (1985) (UDTPA does not apply to securities transaction due to "pervasive" federal regulation); *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No.

522CV00171KDBDCK, 2023 WL 6931787, at *2, *6 (W.D.N.C. Oct. 19, 2023) (dismissing UDTPA claim premised on unfair competition in vehicle sales because "vehicle dealers are already subject to pervasive and intricate regulation[.]"); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 579, 587 (E.D.N.C. 2020) (dismissing UDTPA claim premised on overcharges for PHI where a "comprehensive federal statutory and regulatory scheme" governs procedures for "charging for copies of PHI").

The mortgage lending industry is under such 'pervasive and intricate' regulation by several federal and state statutory and regulatory schemes overseen by numerous administrative agencies. PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING Preliminary Materials (4th ed. 2025) (mortgage lending is subject to a "complex and diverse" regulatory scheme); *see also Register*, 2005 WL 8159532, at *2, *10. The mortgage lending industry is regulated by a variety of federal statutes including, among others, RESPA; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, 12 U.S.C. § 5101 *et seq*.; the Home Mortgage Disclosure Act, 12 U.S.C. § 2801 *et seq.*; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Many of these statutes, including RESPA, grant federal administrative agencies—such as the Consumer Financial Protection Bureau and Department of Housing and Urban Development—rulemaking, enforcement, and adjudicatory authority under which a complex web of regulations have been promulgated. PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING §§ 2:2, 5:2, 3:2, 8:2, 9:94, 10:2, 11:2, 12:2, 12:48 (4th ed. 2025).

For its part, the State of North Carolina, too, has its own regulatory regime governing mortgage lending, with rulemaking and enforcement authority granted to administrative agencies.

*See, e.g.*, N.C. Gen. Stat. § 53-244.010; N.C. Gen. Stat. § 53-244.030; N.C. Gen. Stat. § 53-244.116; N.C. Gen. Stat. § 53-244.115; N.C. Gen. Stat. § 53-244.118. Plaintiff even cites to some of these statutes and regulations in the Complaint. Compl. ¶ 96(d) (citing the North Carolina SAFE Act, N.C. Gen. Stat. § 53-244.010 *et seq.*; ¶ 99(d) (citing 21 N.C. Admin. Code 58A .0109 (prohibiting kickbacks to brokers in real estate transactions)).

Plaintiff's UDTPA claim, just like his RESPA claim, is based entirely on the supposed "unlawful" kickback arrangement between CrossCountry and Raleigh Realty. Compl. ¶¶ 95, 96 (e-f), 96(h), 98. As detailed above, Plaintiff cannot bring a UDTPA claim based on this claimed kickback arrangement because such conduct is clearly subject to "pervasive and intricate regulation." *Champion*, 845 F.3d at 110; *Register*, 2005 WL 8159532, at *2, *10. Most notably, the Consumer Financial Protection Bureau has rulemaking, enforcement, and adjudicatory authority over the same provisions of RESPA that Plaintiff uses to assert his RESPA claim. 12 U.S.C. § 2607; 12 U.S.C. § 2617. This is exactly the type of UDTPA claim that North Carolina and Fourth Circuit courts have long forbidden, particularly because, as here, "there already exists an extensive regulatory regime to address the violation." *Champion*, 845 F.3d at 110. Plaintiff's UDTPA claim should therefore be dismissed.

**B. Plaintiff Has Failed To Allege That CrossCountry Engaged In An Unfair Or Deceptive Act Or Practice, Resulting In Rule 12(b)(6) Dismissal.**

"Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers…Moreover, *some type of egregious or aggravating circumstances must be alleged and proved before the Act's provisions may take effect*." *Business Cabling, Inc., v. Yokeley*, 182 N.C. App. 657, 663, 643 S.E.2d 63, 68 (2007) (emphasis in original)

(quoting *Dalton*, 353 N.C. at 656-57 (finding that defendant's actions were not egregious nor aggravating where defendant-employee established a competing entity and poached employer's client)). Generally, substantial aggravating circumstances involve "forged documents, lies, and fraudulent inducements." *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013).

Accordingly, courts routinely dismiss UDTPA claims where a plaintiff fails to plead egregious or aggravating circumstances. *Cross*, 438 F. Supp. 3d at 579, 587 (allegations of "systematic overcharging" were insufficient to state a claim under UDTPA because there is a "fundamental difference" between "charg[ing] for products not actually delivered" and mere overcharging); *Cabrera v. Bank of Am.*, No. 5:11-CV-563-FL, 2013 WL 551697, at *5-7 (E.D.N.C. Feb. 12, 2013) (plaintiffs' UDTPA claim against their lender did not evince egregious or aggravating circumstances where defendant lender allegedly "frustrated the loan modification process ... [with] delays and repetitive requests that frustrated the contract finalization process" and prevented plaintiffs from conducting a short sale of the property); *Indus. Timber, LLC v. Jackson Furniture Indus., Inc.*, No. 322CV00229KDBDCK, 2022 WL 5265156, at *1, *4 (W.D.N.C. Oct. 6, 2022) ("the Court cannot find sufficient aggravating circumstances based merely on the allegation that [counterclaim defendant] prepared incorrect invoices" resulting in overcharges, even if it was "intentional").

Plaintiff has failed to show that CrossCountry acted deceptively or that egregious or aggravating circumstances existed, which are necessary to state an UDTPA claim. *Yokeley*, 182 N.C. App. at 663. Plaintiff does not (and cannot) allege that CrossCountry forged any documents, made fraudulent misrepresentations, or engaged in any other conduct that could be considered aggravating or egregious. Plaintiff alleges that "Mr. Shackelford [of CrossCountry] put [] pressure on Raleigh Realty, telling Mr. Fitzgerald [of Raleigh Realty] that he should not allow Raleigh

Realty agents to use any mortgage company other than Cross Country," Compl. ¶ 53, but there is nothing unfair or deceptive—let alone aggravating or egregious—about a mortgage lender seeking business referrals. Moreover, Plaintiff does not even allege he was pressured to use CrossCountry or that CrossCountry was his only option. He only claims that his Raleigh Realty agent told him that Raleigh Realty "works with" CrossCountry Mortgage and that the agent "recommended CrossCountry Mortgage but no other lenders." Compl. ¶ 64. Plaintiff cannot turn a mere recommendation into a UDTPA claim.

To the extent that Plaintiff bases this claim on his conclusory overcharge allegations, mere allegations of an overcharge are insufficient to state a claim under the UDTPA. *Cross*, 438 F. Supp. 3d at 579, 587; *Jackson Furniture*, 2022 WL 5265156, at *1, *4.[7]

Lastly, the Comarketing Agreement itself cannot be considered unfair or deceptive—let alone aggravating or egregious. As Plaintiff pleads in the Complaint, comarketing agreements like the one at issue in this case ***are typical in the mortgage industry***. Compl. ¶¶ 23, 28, (citing *Co-Marketing Tips for Following RESPA Rules*, Nat'l Ass'n of Realtors Mag. (Nov. 1, 2018)). Conduct that is typical within an industry cannot meet the UDTPA's 'egregious or aggravating' requirement. *Champion*, 845 F.3d at 110 ("such activity is indicative of the industry in which these parties operate and falls outside the scope of business activities the UDTPA is designed to address.").

Plaintiff thus has failed to show that CrossCountry engaged in any unfair or deceptive conduct, and his UDTPA should be dismissed under Rule 12(b)(6).

---

[7] As described above, Plaintiff's allegations of an overcharge are conclusory, *see supra* pp. 7-11, and cannot support a claim under the UDTPA. *McManus v. GMRI, Inc.*, No. 3:12-CV-009-DCK, 2012 WL 2577420, at *6 (W.D.N.C. July 3, 2012).

### C. Per Rule 12(b)(1), Plaintiff Fails To Plead An Injury And Thus Lacks Standing To Pursue A Claim Under The UDTPA.

Under the UDTPA, a party bringing suit must "be injured … by reason of any act or thing done." *Westchester Fire Ins. Co. v. Johnson*, 221 F. Supp. 2d 637, 649 (M.D.N.C. June 27, 2002); *Almanzar v. Bank of Am.*, NA, No. 1:13CV146, 2013 WL 6893966, at *5-*6 (M.D.N.C. Dec. 31, 2013) (dismissing UDTPA claim where the plaintiff "failed to allege any injury proximately caused" by the violation).

For the reasons explained *supra* pp. 7-11, Plaintiff has failed to adequately plead an injury. As a result, Plaintiff has failed to state a UDTPA claim and also lacks standing to pursue this claim.

For the foregoing reasons, Plaintiff's UDTPA claim should be dismissed under Rule 12(b)(1).

## III. PLAINTIFF HAS FAILED TO STATE A CIVIL CONSPIRACY CLAIM

Under North Carolina law, to allege civil conspiracy, a plaintiff must show: (1) the existence of the conspiratorial agreement itself; (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy; and (3) injury as a result of that conspiracy. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008).

As an initial matter, Plaintiff has failed to state a claim for civil conspiracy under Rule 12(b)(6) because civil conspiracy "is premised on an underlying act and is not a separate cause of action." *Crossroads Trucking Corp. v. 19th Cap. Grp. LLC*, No. 321CV00318RJCDSC, 2022 WL 2612408, at *6 (W.D.N.C. Jan. 25, 2022). Plaintiff's civil conspiracy claim is premised on the alleged underlying violations of RESPA and the UDTPA. Compl. ¶¶ 110-111. Because Plaintiff has failed to state claims under RESPA and the UDTPA, as explained *supra* pp. 6-20, Plaintiff's civil conspiracy claim must also be dismissed. *Crossroads Trucking Corp.*, 2022 WL 2612408, at *6.

Additionally, Plaintiff fails to state a claim for civil conspiracy under Rule 12(b)(1) because, as explained *supra* pp. 7-11, Plaintiff has not suffered any injury. *Hill v. Equifax Info. Servs., LLC*, No. 1:13CV153, 2014 WL 4809284, at *6 (M.D.N.C. Sept. 26, 2014) (no civil conspiracy claim where "Plaintiff has failed to allege that he suffered any injury as a result of the conspiracy").

Accordingly, Plaintiff's civil conspiracy claim should be dismissed under Rules 12(b)(1) and 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

This 29th day of September, 2025.

/s/ *Debra Bogo-Ernst*
Debra Bogo-Ernst
Illinois License No. 6271962
Nathan Pflaum
Illinois License No. 6346439
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Drive
Chicago, Illinois 60654
Tel: (312) 728-9062
Fax: (312) 728-9199
dernst@willkie.com
npflaum@willkie.com

*Lead Counsel for Defendant CrossCountry Mortgage, LLC, by Special Appearance Pursuant to Local Rule 83.1(e)*

/s/ *Clifton L. Brinson*
Clifton L. Brinson
NC State Bar No. 34331
Samantha B. Taylor
NC State Bar No. 564501
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
150 Fayetteville Street, Suite 2300

Raleigh, North Carolina 27601
Tel: (919) 821-6605
Fax: (919) 821-6800
cbrinson@smithlaw.com
staylor@smithlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendant CrossCountry Mortgage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **MEMORANDUM IN SUPPORT OF CROSSCOUNTRY'S MOTION TO DISMISS** using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

This 29th day of September, 2025.

*/s/ Debra Bogo-Ernst*
Debra Bogo-Ernst