**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
No. 5:25-cv-462-D-RN

| | | |
|---|---|---|
| JEREMIAH VONBLOHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT RALEIGH** |
| | ) | **REALTY INC.'S** |
| CROSSCOUNTRY MORTGAGE, | ) | **MEMORANDUM IN SUPPORT** |
| LLC, RALEIGH REALTY INC. | ) | **OF ITS MOTION TO DISMISS** |
| (F/K/A Raleigh Realty, LLC), | ) | **PLAINTIFF'S AMENDED** |
| | ) | **COMPLAINT** |
| Defendants. | ) | Fed. R. Civ. P. 12(b)(1) and 12(b)(6) |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

NATURE OF THE CASE AND SUMMARY OF ARGUMENT ..................................................7

FACTUAL ALLEGATIONS RELEVANT TO THE MOTION ......................................................8

STANDARD OF REVIEW ...........................................................................................................10

ARGUMENT .................................................................................................................................11

I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA..........................................12

     A.     Plaintiff's RESPA Claim is Time-Barred……………………………13

     B.     Plaintiff Fails to Allege an Injury Sufficient to Confer RESPA Standing……………………………………………………………………15

     C.     The Conduct Alleged is Subject to RESPA Carveouts………………21

II.     PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE UDTPA...................26

     A.     Plaintiff Cannot Restate His RESPA Claim As a UDTPA Claim………….26

     B.     Plaintiff Fails to Allege Any Unfair or Deceptive Act or Practice………………………………………………………………29

     C.     Plaintiff Fails to Allege An Injury Sufficient to Confer UDTPA Standing…..31

III.     PLAINTIFF HAS FAILED TO STATE A CIVIL CONSPIRACY CLAIM ...................32

CONCLUSION...............................................................................................................................32

# TABLE OF AUTHORITIES

*Almanzar v. Bank of Am.,*
    NA, No. 1:13CV146, 2013 U.S. Dist. LEXIS 18205, at *16 (M.D.N.C. Dec. 31, 2013)......31

*Arthur v. Ticor Title Ins. Co. of Fla.,*
    569 F.3d 154 (4th Cir. 2009) .................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................10

*Aziz v. Alcolac, Inc.,*
    658 F.3d 388 (4th Cir. 2011) ...............................................................12

*Bache Halsey Stuart, Inc. v. Hunsucker,*
    38 N.C.App. 414, 248 S.E.2d 567 (1978) ...............................................27

*Baehr v. Creig Northrop Team, P.C.,*
    953 F.3d 244 (4th Cir. 2020)...........................................................15-21

*Bausch v. Philatelic Leasing, Ltd.,*
    34 F.3d 1066, 1994 U.S. App. LEXIS 22280 (4th Cir. Aug. 19, 1994)...........13-14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................12

*Binotti v. Duke Univ.,*
    No. 1:20-CV-470, 2020 U.S. Dist. LEXIS 218677 (M.D.N.C. Nov. 9, 2020).........14

*Business Cabling, Inc., v. Yokeley,*
    182 N.C. App. 657, 643 S.E.2d 63 (2007) .........................................29-30

*Cabrera v. Bank of Am.,*
    No. 5:11-CV-563-FL, 2013 U.S. Dist. LEXIS 21401 (E.D.N.C. Feb. 12, 2013) .......30

*Castellanos v. United States,*
    No. 5:22-CV-00440-M-RN, 2023 U.S. Dist. LEXIS 102200 (E.D.N.C. May 15, 2023)...15, 17

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC,*
    845 F.3d 104 (4th Cir. 2016) ........................................................25, 28

*Collins v. First Fin. Servs., Inc.,*
    No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322 (E.D.N.C. Feb. 10, 2016)..........21-23

*State ex rel. Cooper v. Ridgeway Brands Mfg.,*
    LLC, 362 N.C. 431, 666 S.E.2d 107 (2008) ...........................................31

*Corazzini v. Litton Loan Servicing LLP,*
    No. 1:09-CV-199, 2011 U.S. Dist. LEXIS 6356531 (N.D.N.Y. June 15, 2010).........15

Case 5:25-cv-00462-D-RN    Document 22    Filed 10/16/25    Page 3 of 32

*Cross v. Ciox Health, LLC*,
  438 F. Supp. 3d 572 (E.D.N.C. 2020) ...........................................………..26

*Dalton v. Camp*,
  353 N.C. 647, 548 S.E.2d 704 (2001) ...................................................24, 28

*Doe-2 v. Sheriff of Richland Cnty.*,
  No. 21-1771, 2023 U.S. App. LEXIS 14882, at *24 (4th Cir. June 15, 2023).....................14

*Eichholz v. Wells Fargo Bank, NA*,
  No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455 (E.D. Mich. Nov. 7, 2011).....................15

*Galiano v. Fid. Nat. Title Ins. Co.*,
  No. 08-CV-4711 TCP WDW, 2010 U.S. Dist. LEXIS 144663 (E.D.N.Y. Nov. 8, 2010) ........21

*Goldman v. Brink*,
  41 F.4th 366 (4th Cir. 2022).................................................................12

*Gudzelak v. PNC Bank*,
  No. CV 12-1230-LPS, 2015 U.S. Dist. LEXIS 35464 (D. Del. Mar. 23, 2015).....................15

*Harvey v. Cable News Network, Inc.*,
  48 F.4th 257 (4th Cir. 2022).................................................................8

*Hughes on behalf of Hughes v. Bank of Am. Nat'l Ass'n*,
  697 F. App'x 191, 192-93 (4th Cir. 2017)....................................................13

*Indus. Timber, LLC v. Jackson Furniture Indus., Inc.*,
  No. 322CV00229KDBDCK, 2022 U.S. Dist. LEXIS 182975 (W.D.N.C. Oct. 6, 2022) ......29

*Madrial v. Garland*,
  No. 5:23-CV-372-FL, 2023 U.S. Dist. LEXIS 229865 (E.D.N.C. Dec. 28, 2023).................15

*Marshall v. Miller*,
  302 N.C. 539, 276 S.E.2d 397 (1981).................................................................24

*Morris v. CrossCountry Mortg., LLC*,
  No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 (E.D.N.C. Apr. 20, 2023)......15, 17

*Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*,
  No. 522CV00171KDBDCK, 2023 U.S. Dist. LEXIS 188379 (W.D.N.C. Oct. 19, 2023) ....26

*Mullinax v. Radian Guar., Inc.*,
  311 F. Supp. 2d 474, 489 (M.D.N.C. 2004)...............................................................13

*Murphy v. Capella Educ. Co.*,
  589 F. App'x 646, 652 (4th Cir. 2014)........................................................14

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
    839 F.3d 1 (D.C. Cir. 2016) ............................................................20, 23, 24

*Philogene v. Data Networks, Inc.,*
    No. PWG-17-1318, 2018 U.S. Dist. LEXIS 31270 (D. Md. Feb. 21, 2018) .........................8

*Register v. N. Sun Hous. & Dev., Inc.,*
    No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759 (E.D.N.C. Sept. 2, 2005)...............25-27

*Robertson v. Sea Pines Real Est. Companies, Inc.,*
    679 F.3d 278, 291 n.2 (4th Cir. 2012)..............................................................14

*Robinson v. Am. Honda Motor Co.,*
    551 F.3d 218 (4th Cir. 2009) ...............................................................13

*Skinner v. E.F. Hutton & Co.,*
    314 N.C. 267, 333 S.E.2d 236 (1985).....................................................25

*Stack v. Abbott Labs., Inc.,*
    979 F. Supp. 2d 658 (M.D.N.C. 2013) .................................................28

*Tabb v. Bd. of Educ. of the Durham Pub. Schs.,*
    29 F.4th 148 (4th Cir. 2022)...........................................................13

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...............................................................14

*Westchester Fire Ins. Co. v. Johnson,*
    221 F. Supp. 2d 637 (M.D.N.C. June 27, 2002) .................................21

*Willis v. Bank of Am. Corp.,*
    No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 (D. Md. Aug. 1, 2014)........21-23

*Zillow Grp., Inc. Sec. Litig.,*
    No. C17-1387-JCC, 2018 U.S. Dist. LEXIS 170194 (W.D. Wash. Oct. 2, 2018)...............21

12 U.S.C. § 2607 ..............................................................................15, 20

12 U.S.C. § 2607(a) ............................................................................13

12 U.S.C. § 2607(c)(2) ...................................................................14, 21-24

12 U.S.C. § 2617 ................................................................................27

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*....................................27

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.......................................27

    Fair Housing Act, 42 U.S.C. § 3601 *et seq*...........................................27

    Home Mortgage Disclosure Act, 12 U.S.C. § 2801 *et seq*...............................27

N.C. Gen. Stat. § 53-244.010.................................................……...................................28

N.C. Gen. Stat. § 53-244.030.....................................................................................28

N.C. Gen. Stat. § 53-244.115.....................................................................................28

N.C. Gen. Stat. § 53-244.116.....................................................................................28

N.C. Gen. Stat. § 53-244.118.....................................................................................28

North Carolina SAFE Act, N.C.G.S.A. § 53-244.010 *et seq* ...............................................28

PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING
    (4th ed. 2025) ...........................................................................................27-28

Defendant Raleigh Realty Inc. ("Raleigh Realty") submits this memorandum of law in support of its Motion to Dismiss the Amended Complaint filed by Plaintiff Jeremiah VonBlohn. Plaintiff has submitted his Amended Complaint in response to the original Motion to Dismiss and supporting brief filed by co-Defendant CrossCountry Mortgage, LLC ("CrossCountry"), ECF Nos. 15-16, which identified numerous deficiencies applicable to Plaintiff's claims against both Raleigh Realty and CrossCountry. Because Plaintiff's Amended Complaint fails to remedy these deficiencies, Plaintiff's Amended Complaint should be dismissed with prejudice.[1]

## NATURE OF THE CASE AND SUMMARY OF ARGUMENT

Plaintiff alleges that Defendants have violated the Real Estate Settlement Practice Act ("RESPA") and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* ("UDTPA"). Plaintiff's claims remain defective, however, on a number of independent grounds.

Plaintiff's RESPA claim is defective for at least three distinct reasons: First, it is time-barred. Second, Plaintiff lacks RESPA standing, as he has failed to adequately allege he was overcharged—or experienced any other injury—as a result of the co-marketing agreement that he claims caused his injury. Third, Plaintiff's RESPA claim is defective because he alleges no facts showing that the co-marketing

---

[1] *See Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022) ("Where a plaintiff fails to state a claim in his amended complaint after having been 'advised with specificity of the legal deficiencies' in the initial complaint, dismissal with prejudice is appropriate."); *Philogene v. Data Networks, Inc.*, No. PWG-17-1318, 2018 U.S. Dist. LEXIS 31270, at *22 (D. Md. Feb. 21, 2018), *aff'd*, 728 F. App'x 214 (4th Cir. 2018) (dismissing amended complaint with prejudice after Plaintiff "failed to cure his pleading deficiencies" identified in defendant's letter request to file a motion to dismiss).

agreement in question falls outside of RESPA's carveout for payments in return for "services actually performed."

Plaintiff's UDTPA claim is similarly defective for at least three distinct reasons: First, it is premised on the same allegations as Plaintiff's RESPA claim, and, under long-standing case law, Plaintiff cannot base a UDTPA violation on conduct that is already subject to extensive regulation under existing statutory and regulatory regimes, such as RESPA. Second, Plaintiff has failed to plead any conduct that is unfair or deceptive. Third, like Plaintiff's RESPA claim, Plaintiff lacks standing to pursue a UDTPA claim for his failure to adequately allege an injury.

Finally, Plaintiff's civil conspiracy claim should be dismissed along with the RESPA and UDTPA claims on which it depends.

## FACTUAL ALLEGATIONS[2] RELEVANT TO THE MOTION

### I.  Plaintiff Retains Raleigh Realty to Help Him Purchase a Home, and Obtains a Mortgage Loan from CrossCountry.

Plaintiff retained Raleigh Realty to assist him in the purchase of a home starting in October 2021. AC ¶¶ 9, 67. At Raleigh Realty, Plaintiff was represented by Ayana Barnes, a real estate agent. AC ¶ 67. Plaintiff alleges that, in Fall 2021, Ayana Barnes recommended CrossCountry to Plaintiff. AC ¶ 71. Thereafter, Plaintiff obtained a mortgage loan from CrossCountry in November 2021. AC ¶¶ 10, 73-74. Plaintiff's mortgage loan with CrossCountry had a 6.75% interest rate

---

[2] While Raleigh Realty vigorously disputes the accuracy of many of the "factual" contentions in Plaintiff's Amended Complaint, the pertinent allegations of the Amended Complaint are treated as true solely for purposes of Raleigh Realty's threshold motion to dismiss pursuant to Rule 12(b)(6).

and a loan origination fee of $995. AC ¶¶ 74, 79. Plaintiff fails to allege that the rate he was charged was outside the market range. Plaintiff also does not allege that he was prevented from contacting other potential lenders, nor does he identify an alternative lender who allegedly would have charged him a better rate.

## II. CrossCountry, Raleigh Realty, and Page One Power Enter Into A Comarketing Agreement.

On January 19, 2021, Raleigh Realty entered into an SEO Service Agreement with Page One Power, a digital marketing company specializing in search engine optimization. AC at ¶ 40 at fn. 5; AC Ex. 1 at 10-11. Under the SEO Service Agreement, Raleigh Realty paid $7,500 per month to Page One Power and received search engine optimization services aimed at increasing Raleigh Realty's website's position within Google search results and, thus, the website's web traffic. AC Ex. 1 at 10-11. On March 2, 2021, Raleigh Realty and Page One Power Amended the SEO Service Agreement via the Project Scope Addendum. Ex. 1. Through the Project Scope Addendum, Raleigh Realty increased its monthly payment to $30,000 and, in return, received an increased volume of search engine optimization services from Page One Power at a discounted rate. *Id.*

In mid-February 2021, Ryan Fitzgerald, Raleigh Realty's owner and president, and Chuck Shackelford, CrossCountry's executive vice president, along with a CrossCountry branch manager, Corey Walker, began to explore a possible business agreement. AC ¶ 34. Ultimately, CrossCountry, Raleigh Realty, and Page One Power elected to transition the existing Raleigh Realty-Page One Power SEO Service Agreement into a comarketing agreement through an Addendum for

Vendor Investment Inclusions executed on April 12, 2021 between CrossCountry, Raleigh Realty, and Page One Power. AC ¶ 42; AC Ex. 1 at 16-20.

Under the Comarketing Agreement, CrossCountry was to pay $15,000/month of the total $30,000/month Raleigh Realty was already paying to Page One Power for search engine optimization services aimed at boosting viewership of Raleigh Realty's website. AC Ex. 1 at 16. In return, CrossCountry received numerous web marketing services, aimed at integrating CrossCountry within Raleigh Realty's website. *Id.* These services included:

1. A "Get Pre-Qualified" CTA[3] on the website's real estate listings;

2. The addition of a CrossCountry Loan Officer on the website's "Agents" page;

3. A hyperlink titled "Lending" that linked to CrossCountry's website; and

4. CrossCountry's logo placed on the website's mortgage calculator. *Id.*

## **APPLICABLE STANDARD OF REVIEW**

A complaint is subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) where a plaintiff "has not alleged facts sufficient to establish Article III standing to sue." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022). Subject matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted).

---

[3] A CTA, or "Call-to-Action" is a concise and persuasive prompt encouraging or directing individuals to take a specific action. *See Call-to-Action (CTA)*, INTUIT MAILCHIMP, https://mailchimp.com/marketing- glossary/what-is-a-cta/. Here, the CTA directed viewers on Raleigh Realty's website to get pre-qualified for a mortgage loan with CrossCountry.

Article III standing is "part and parcel of the constitutional mandate that the judicial power of the United States extend only to 'cases' and 'controversies.'" *See Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). To demonstrate constitutional standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992) (citations omitted). A plaintiff must also show a causal connection between the injury and the conduct complained of, and that it is likely (as opposed to merely speculative) that the injury will be "redressed by a favorable decision." *Id.* at 561 (citations omitted).

Here, Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* As the Supreme Court has explained, "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

In contrast to a motion to dismiss under Rule 12(b)(1), a "motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim." *Tabb v. Bd. of Educ. of the Durham Pub. Schs.*, 29 F.4th 148, 155 (4th Cir. 2022). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir.

2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). At the motion to dismiss stage, the Court must "assum[e] all well-pleaded, non-conclusory factual allegations in the complaint to be true." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted).

Here, Plaintiff's Amended Complaint fails under both Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA.

Under RESPA, "[n]o personal shall give and no personal shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). However, "[n]othing in [§ 2607] shall be construed as prohibiting [. . .] the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). RESPA claims are subject to a one-year limitations period measured from the time of closing on a subject mortgage. 12 U.S.C. § 2614.

Here, Plaintiff's RESPA claim should be dismissed under Rules 12(b)(1) and 12(b)(6) because (1) it is time-barred; (2) Plaintiff has failed to allege injury and

establish standing; and (3) the Amended Complaint makes clear that the alleged 'kickback' was for "services actually performed."

A. Plaintiff's RESPA Claim is Time-Barred.

Plaintiff's RESPA claim is subject to a one-year limitations period measured from the closing of Plaintiff's mortgage loan in November 2021. AC ¶¶ 73-74; 12 U.S.C. § 2614. Plaintiff's RESPA claim thus expired in November 2022, almost three years prior to the initiation of this lawsuit.

Plaintiffs have pled no facts that could suggest their RESPA limitations period should be tolled. Plaintiffs' RESPA claim should therefore be dismissed under Rule 12(b)(6). *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 487, 492 (M.D.N.C. 2004) (dismissing RESPA claim as untimely because plaintiffs initiated litigation six months after the one-year limitations period expired).

B. Plaintiff Fails to Allege an Injury Sufficient to Confer RESPA Standing.

Plaintiff also has failed to plead facts showing that he was injured as a result of the alleged RESPA violation and, thus, lacks standing to pursue that claim.

To establish standing generally, Plaintiff must show that: (1) he "suffered an injury in fact;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). An injury-in-fact must be "concrete" and "de facto." *Id.* at 2205.

To allege standing under RESPA, Plaintiff must adequately allege that he was actually overcharged as a result of the alleged kickback scheme. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020). Such allegations of an

overcharge cannot be speculative or conclusory; "courts have consistently dismissed complaints under RESPA if they [. . .] state merely that in a conclusory fashion the defendant caused damages to the plaintiff." *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-199, 2011 U.S. Dist. LEXIS 63565, at *12 (N.D.N.Y. June 15, 2010); *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 at *8 (E.D.N.C. Apr. 20, 2023) (RESPA § 2607 claim dismissed where plaintiff "provid[ed] no allegations which would plausibly support a showing" of injury); *Eichholz v. Wells Fargo Bank, NA*, No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455, at *7 (E.D. Mich. Nov. 7, 2011) (dismissing RESPA § 2607 claim because plaintiff's conclusory allegations that defendant extracted unearned fees from plaintiff failed to "rise[] above the speculative level"); *Gudzelak v. PNC Bank*, No. CV 12-1230-LPS, 2015 U.S. Dist. LEXIS 35464, at *8 (D. Del. Mar. 23, 2015) ("Plaintiff's generalized and conclusory allegations" of injury under RESPA cannot "allow his claims to survive a motion to dismiss"); *Madrial v. Garland*, No. 5:23-CV-372-FL, 2023 U.S. Dist. LEXIS 229865, at *5 (E.D.N.C. Dec. 28, 2023) ("conclusory assertion" of injury failed to confer standing); *Castellanos v. United States*, No. 5:22-CV-00440-M-RN, 2023 U.S. Dist. LEXIS 102200, at *8 (E.D.N.C. May 15, 2023) (plaintiff failed to allege standing for failure to "provide any plausible facts" showing an injury).

The theory of Plaintiff's Amended Complaint mirrors that of the *Baehr* plaintiffs and is likewise insufficient to confer Article III standing. In *Baehr*, plaintiffs, who claimed there was an unlawful kickback arrangement between their real estate agent and a settlement service provider to whom they were referred,

alleged that they "were deprived of an impartial and fair competition between settlement service[s] providers." *Id.* at 250. The Court found that this alleged deprivation of competition was insufficient to constitute a concrete injury for standing purposes. *Id.* at 254. In reaching its decision, the Fourth Circuit noted that plaintiffs suffer a concrete injury if they show the harm stemming from the "defendant's statutory violation is the type of harm Congress sought to prevent when it enacted the statute." *Id.* at 253 (citing *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240-41 (4th Cir. 2019)). With respect to RESPA, Congress sought to prevent *the increased costs* that tend to result from kickbacks' interference with the market for settlement services. *Id.* at 254 (citing 12 U.S.C. § 2601(b)(2)). Since the *Baehr* plaintiffs did not contend they were overcharged for settlement services, they lacked standing and their claims were subject to dismissal. *Id.* at 254-58.

As in *Baehr*, Plaintiff here primarily contends that the Comarketing Agreement deprived him of "the benefits of impartial and fair competition." AC ¶ 66. In an attempt to circumvent *Baehr*'s requirement of an overcharge, Plaintiff asserts in a conclusory fashion that he "would have been able to obtain a 30-year fixed-rate loan with an interest rate of 6.75% or lower" and that he "would have been able to obtain an adjustable-rate loan with an initial interest rate of 6.625% or lower" from another lender. instead of his 6.75% adjustable-rate loan with CrossCountry. AC ¶¶ 69-70, 74. Plaintiff also asserts that, had he not borrowed from CrossCountry, he "would have been able to borrow from a mortgage lender that charged a lower loan origination fee." *Id.* at ¶ 80. These conclusory allegations fail to plausibly show that

Plaintiff suffered any injury or overcharges. Plaintiff is simply claiming that he "would have been able to" obtain a lower interest rate, and loan origination fee and is asking the Court to take his word for it without providing any supporting allegations. That is insufficient to allege an injury under RESPA. *Castellanos*, 2023 U.S. Dist. LEXIS 102200, at *8. Indeed, allegations that other mortgage lenders were offering lower rates to other borrowers does nothing to show that *Plaintiff* would have obtained those rates had he proceeded with another lender. A multitude of factors affect the interest rate a borrower might receive when obtaining a mortgage including (1) the loan type, (2) the loan amount, (3) the duration of the loan, and (4) the time at which the loan is obtained. *See Forrest v. JP Morgan Chase Bank, N.A.*, No. 06-C-298, 2007 U.S. Dist. LEXIS 70317, at *10 (E.D. Wis. Sept. 21, 2007) ("The interest rate for a home equity loan depends on a variety of factors, including market conditions, credit history, and the value of the property used as collateral."). The existence of other, unidentified mortgage loans offers containing a lower interest rate than Plaintiff's is both unsurprising and irrelevant, given the many factors that can affect an interest rate. At bottom, Plaintiff is simply claiming that he "would have been able to" obtain a lower interest rate and origination fee and is asking the court to take his word for it without providing any supporting allegations. That is insufficient to allege an injury. *Castellanos*, 2023 U.S. Dist. LEXIS 102200, at *8.

Plaintiff should know that these allegations are insufficient to allege standing. In *Morris v. CrossCountry*, No. 5:22-CV-336-BO-BM (E.D.N.C. filed Aug. 25, 2022), Plaintiff's counsel represented other CrossCountry borrowers and Raleigh Realty

clients alleging the same claims based on the same supposed kickback scheme alleged by Plaintiff here. There, Judge Boyle dismissed plaintiffs' RESPA claim, finding that they failed to adequately allege an overcharge, and thus lacked standing, despite pleading facts that were substantially more plausible than those present here. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS, at *7-9 (E.D.N.C. Apr. 20, 2023). The *Morris* plaintiffs alleged, for example, that they had prequalified with another lender for a mortgage loan at a 2.25% interest rate, but that their interest rate with CrossCountry was 3.625%. *Id.* Like here, they alleged that they would not have had to pay CrossCountry's origination fee had they used another lender. *Id.* Judge Boyle found that these allegations were "not much different" than the allegations in *Baehr* because they failed to plausibly demonstrate an overcharge. *Id.* The *Morris* plaintiffs' "bare allegation" concerning their origination fee did not "plausibly support a showing that an origination fee would not have been charged by another lender or that CrossCountry's origination fee was unreasonably higher than other lenders." *Id.* Similarly, the *Morris* plaintiffs' interest rate allegations were defective because, for example, there were no plausible allegations that the prior prequalification rate would have translated into an actual interest rate had they proceeded with the other lender. *Id.* They further failed to plausibly demonstrate that "CrossCountry's rate was higher than plaintiffs would have qualified for elsewhere." *Id.*

Here, Plaintiff's allegations are even more threadbare than those in *Morris*. Specifically, Plaintiff baselessly asserts that he "would have been able to" obtain a

lower interest rate, and loan origination fee elsewhere, without even bothering to point to a prior prequalification or that another lender in fact offered a loan at a better rate.

Even if Plaintiff *had* plausibly alleged that he was overcharged—which he has not—he further has failed to show that any overcharge was *caused* by the Comarketing Agreement, rendering Plaintiff's RESPA claim, at most, a "bare procedural violation, divorced from any concrete harm." *Baehr*, 953 F.3d at 252. Plaintiff's theory of an overcharge is not that CrossCountry would have charged them less in the absence of the Comarketing Agreement. Rather, Plaintiff's claim that he could have obtained a lower interest rate, and loan origination fee if he "had the opportunity to shop around" and if Raleigh Realty did not "affirmatively induc[e] Plaintiff's selection of CrossCountry as his mortgage lender." AC ¶¶ 79, 83, 91. Plaintiff has failed, however, to plead allegations showing that he was, as he claims, deprived of "the opportunity to shop around"—let alone as a result of the Comarketing Agreement. Plaintiff's claim that he was deprived of "the opportunity to shop around" is supported only by his allegation that Raleigh Realty Agent Ayana Barnes told Plaintiff that "Raleigh Realty works with CrossCountry Mortgage" and "recommended CrossCountry but no other lenders." *Id.* at ¶ 71. A simple lender recommendation does nothing to show that Plaintiff was prevented or discouraged from seeking other options for mortgage lenders. This sole factual allegation cannot suffice to show CrossCountry or Raleigh Realty prevented Plaintiff from seeking out other mortgage lenders from which he "would have been able to" receive lower

charges. *See Baehr*, 953 F.3d at 255-56 (RESPA plaintiffs failed to show they were "deprived of impartial and fair competition among settlement services providers" because "they did not investigate [. . .] other settlement service providers").

Plaintiff thus has failed to allege an injury, and his RESPA claim should thus be dismissed for lack of standing under Rule 12(b)(1).

C. <u>The Conduct Alleged is Subject to RESPA Carveouts</u>.

Plaintiff's RESPA claim also fails because RESPA contains an express carve-out for co-marketing agreements like the one at issue here.

RESPA § 2607 provides that "***[n]othing*** in this section shall be construed as prohibiting [. . .] the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2) (emphasis added). Courts have long held that Section 2607(c) means what it says: that "[n]othing means nothing." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 41 (D.C. Cir. 2016), *reversed on other grounds*, 881 F.3d 75 (D.C. Cir. 2018). In other words, agreements between settlement service providers for "services actually performed" are not prohibited by RESPA, ***even if those agreements are explicitly tied to referrals***, unless the payments do not bear a reasonable relationship to the market value of those services. *Id.* (holding that an agreement "in which the lender says to the mortgage insurer: We will refer customers to you, but only if you purchase another service from our affiliated reinsurer, albeit at reasonable market value" does not violate RESPA); *Zillow Grp., Inc. Sec. Litig.*, No. C17-1387- JCC, 2018 U.S. Dist. LEXIS 170194, at

*18 (W.D. Wash. Oct. 2, 2018) ("[E]ven if [] co-marketing agents were making mortgage referrals, such referrals would fall under the Section [2607(c)] safe harbor because lenders received advertising services in exchange for paying a portion of their agent's advertising costs.").

Accordingly, courts routinely hold that dismissal is warranted under Rule 12(b)(6) where, as here, a RESPA plaintiff fails to plausibly allege that the supposed kickback was not for services actually performed. *Collins v. First Fin. Servs., Inc.*, No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322, at *22 (E.D.N.C. Feb. 10, 2016) (dismissing RESPA claim because plaintiff "has not alleged any kickbacks [] between [codefendants] that were other than "for services actually performed" because "the fact of payment of fees under the [codefendants'] Agreement is not in itself sufficient to state a violation of Section [2607] of RESPA"); *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH- 13-02615, 2014 U.S. Dist. LEXIS 105339, at *44-45 (D. Md. Aug. 1, 2014) (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable"); *Galiano v. Fid. Nat. Title Ins. Co.*, No. 08-CV-4711 TCP WDW, 2010 U.S. Dist. LEXIS 144663, at *14 (E.D.N.Y. Nov. 8, 2010), *aff'd,* 684 F.3d 309 (2d Cir. 2012) (that Defendant "performed actual services" in exchange for alleged kickback was "fatal to Plaintiffs' RESPA claim").

Plaintiff's Amended Complaint contains numerous allegations that the Comarketing Agreement was supposedly "based on referrals." AC ¶¶ 35, 58. But those allegations are not enough on their own. Plaintiff also was required to allege that the

payments under the Comarketing Agreement were not for "services actually performed." 12 U.S.C. § 2607(c)(2); *Collins*, 2016 U.S. Dist. LEXIS 16322, at *22. Plaintiff fails to make this allegation credibly. Instead, Plaintiff demonstrates that the opposite is true. He attaches proof to the Amended Complaint—the Comarketing Agreement—which details the exact marketing services that CrossCountry was provided in return for its $15,000/month payment. AC Ex. 1 at 16 (listing marketing services provided to CrossCountry, including, for example, a "Get Pre-Qualified CTA on real estate listings" and the "[a]ddition of [a CrossCountry loan officer] on 'Agents' page"). Plaintiff fails to allege that any of these specific marketing services were not provided by Raleigh Realty to CrossCountry. While Plaintiff tries to allege these services were not ultimately of any "actual value" to CrossCountry, (AC ¶ 46), this sole, conclusory allegation falls far short of what is required to remove the Comarketing Agreement from the safety of RESPA's carve-out. *Willis*, 2014 U.S. Dist. LEXIS 105339, at *44-45 (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable").

But even if the Court was required to accept as true Plaintiff's conclusory allegation, which it is not, RESPA's carve-out does not depend on whether a settlement service provider ultimately "realized [. . .] any actual value" after the conclusion of a business transaction. AC ¶ 47. Rather, a payment is permissible under RESPA where the payment was "for goods or facilities actually furnished or for services actually performed," 12 U.S.C. § 2607(c)(2), and where payment "reflects

reasonable market value" for the services received. *PHH Corp.*, 839 F.3d at 41; *Willis*, 2014 U.S. Dist. LEXIS 105339, at *43. Plaintiff conflates the irrelevant question of whether the marketing services CrossCountry purchased ultimately proved to be effective advertising tools with the unrelated—and essential—question of whether CrossCountry's payments under the Comarketing Agreement reflected the *market value* of the services it purchased.

Plaintiff does not (and cannot) allege that CrossCountry's $15,000/month payments under the Comarketing Agreement were unreasonable in relation to the market value of the services it received from Raleigh Realty. As explained above, these services allowed CrossCountry to piggy-back on the pre-existing $30,000/month search engine optimization services Page One Power already was providing to Raleigh Realty to boost Raleigh Realty's website and viewership. AC Ex. 1; Ex. 1. CrossCountry was provided services under the Comarketing Agreement that functioned to integrate CrossCountry into Raleigh Realty's website by including within the website (1) links to CrossCountry's website, (2) CrossCountry loan officer information, and (3) CrossCountry advertising material. AC Ex. 1 at 16. Not only were "services actually performed" for CrossCountry under the Comarketing Agreement, but CrossCountry was receiving, for $15,000/month, the benefits of Page One Power's search engine optimization services for which Raleigh Realty had previously been paying $30,000/month. *Id.*; Ex. 1.

Under RESPA's carve-out, Plaintiff's allegation that CrossCountry allegedly expected referrals from Raleigh Realty does nothing to support a RESPA

violation given that CrossCountry received services from Raleigh Realty for its participation in the Comarketing Agreement. AC Ex. 1. Comarketing agreements such as the one at issue here are entirely permissible and precisely why RESPA's carve-out exists. *PHH Corp.*, 839 F.3d at 41-42 (Congress included § 2607(c) to make clear that "transactions between businesses in the real estate market [] connected to, conditioned on, or tied to referrals" were "lawful so long as reasonable market value was paid and the services were actually performed" given that such "arrangements are ubiquitous in the U.S. economy.").

Plaintiff has thus failed to allege conduct outside of RESPA's carve-out, and Plaintiff's RESPA claim should be dismissed on this basis as well.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UDTPA.

The UDTPA requires a showing that (1) the defendant committed an unfair or deceptive act or practice; (2) the defendant's act was in or affecting commerce; and (3) the plaintiff was injured thereby. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Acts are unfair if they offend public policy or are immoral, unethical, or substantially injurious to consumers. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Moreover, "some type of egregious or aggravating circumstances must be alleged and proved before the [UDTPA]'s provisions may take effect." *Dalton*, 353 N.C. at 657.

Plaintiff has failed to state a claim under the UDTPA because (1) Plaintiff cannot use the UDTPA to restate his RESPA claim; (2) Plaintiff fails to allege that Raleigh Realty engaged in an "unfair or deceptive act or practice[;]" and (3)

Plaintiff lack standing to pursue a UDTPA claim.

A. Plaintiff Cannot Restate Their RESPA Claim as a UDTPA Claim.

Plaintiff's UDTPA claim fails because it is based on the same conduct as his RESPA claim, which is conduct already subject to extensive regulation.

"North Carolina courts have refused to apply the UDTPA to matters already under 'pervasive and intricate regulation' by other statutory schemes that contain separate enforcement, supervisory, and remedial provisions." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016); *Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759, at *32 (E.D.N.C. Sept. 2, 2005), *aff'd sub nom. Register v. Flagstar Bank*, 205 F. App'x 154 (4th Cir. 2006) (UDTPA claim cannot be based on a Truth in Lending Act violation against a mortgage lender given existing "pervasive regulation"); *Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C.App. 414, 421, 248 S.E.2d 567, 570 (1978) (holding that the UDTPA does not apply to commodities transactions because they are subject to a "pervasive" federal scheme); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274, 333 S.E.2d 236, 241 (1985) (UDTPA does not apply to securities transaction due to "pervasive" federal regulation); *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 522CV00171KDBDCK, 2023 U.S. Dist. LEXIS 188379, at *14 (W.D.N.C. Oct. 18, 2023) (dismissing UDTPA claim premised on unfair competition in vehicle sales because "vehicle dealers are already subject to pervasive and intricate regulation[.]"); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 579, 587 (E.D.N.C. 2020) (dismissing UDTPA claim premised on

overcharges for PHI where a "comprehensive federal statutory and regulatory scheme" governs procedures for "charging for copies of PHI").

The mortgage lending industry is under such 'pervasive and intricate' regulation by several federal and state statutory and regulatory schemes overseen by numerous administrative agencies. PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING Preliminary Materials (4th ed. 2025) (mortgage lending is subject to a "complex and diverse" regulatory scheme). The mortgage lending industry is regulated by a variety of federal statutes including, among others, RESPA; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.; the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, 12 U.S.C. § 5101 *et seq*.; the Home Mortgage Disclosure Act, 12 U.S.C. § 2801 *et seq*.; the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*.; and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Many of these statutes, including RESPA, grant federal administrative agencies—such as the Consumer Financial Protection Bureau and Department of Housing and Urban Development— rulemaking, enforcement, and adjudicatory authority under which a complex web of regulations have been promulgated. PAUL BARRON & DAN ROSIN, FED. REG. REAL ESTATE AND MORTGAGE LENDING §§ 2:2, 5:2, 3:2, 8:2, 9:94, 10:2, 11:2, 12:2, 12:48 (4th ed. 2025).

For its part, the State of North Carolina, too, has its own regulatory regime governing mortgage lending, with rulemaking and enforcement authority granted to administrative agencies. *See, e.g.*, N.C. Gen. Stat. § 53-244.010; N.C. Gen.

Stat. § 53-244.030; N.C. Gen. Stat. § 53-244.116; N.C. Gen. Stat. § 53-244.115; N.C. Gen. Stat. § 53-244.118. Plaintiffs themselves even cite to some of these statutes and regulations in the Amended Complaint. AC ¶¶ 61-63 (citing the North Carolina SAFE Act, N.C. Gen. Stat. § 53-244.010 *et seq.*; ¶¶ 64-65 (citing 21 N.C. Admin. Code 58A .0109 (prohibiting kickbacks to brokers in real estate transactions)).

Plaintiff's UDTPA claim, just like his RESPA claim, is based entirely on the supposed "unlawful" kickback arrangement between CrossCountry and Raleigh Realty. AC ¶¶ 100-04. As detailed above, Plaintiffs cannot bring a UDTPA claim based on this claimed kickback arrangement because such conduct is clearly subject to "pervasive and intricate regulation." *Champion*, 845 F.3d at 110; *Register*, 2005 U.S. Dist. LEXIS 43759, at *32. Most notably, the Consumer Financial Protection Bureau has rulemaking, enforcement, and adjudicatory authority over the same provisions of RESPA that Plaintiff uses to assert his RESPA claim. 12 U.S.C. § 2607; 12 U.S.C. § 2617. This is exactly the type of UDTPA claim that North Carolina and Fourth Circuit courts have long forbidden, particularly because, as here, "there already exists an extensive regulatory regime to address the violation." *Champion*, 845 F.3d at 110. Plaintiff's UDTPA claim should therefore be dismissed.

B. Plaintiffs Fails to Allege Any Unfair or Deceptive Act or Practice.

"Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair

when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers [. . .] Moreover, some type of egregious or aggravating circumstances must be alleged and proved before the Act's provisions may take effect." *Business Cabling, Inc., v. Yokeley*, 182 N.C. App. 657, 663, 643 S.E.2d 63, 68 (2007) (emphasis in original) (quoting *Dalton*, 353 N.C. at 656-57 (finding that defendant's actions were not egregious nor aggravating where defendant-employee established a competing entity and poached employer's client)). Generally, substantial aggravating circumstances involve "forged documents, lies, and fraudulent inducements." *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013). Accordingly, courts routinely dismiss UDTPA claims where a plaintiff fails to plead egregious or aggravating circumstances. *Cross*, 438 F. Supp. 3d at 579, 587 (allegations of "systematic overcharging" were insufficient to state a claim under UDTPA because there is a "fundamental difference" between "charg[ing] for products not actually delivered" and mere overcharging); *Cabrera v. Bank of Am.*, No. 5:11-CV-563-FL, 2013 U.S. Dist. LEXIS 21401, at *14-15 (E.D.N.C. Feb. 12, 2013) (plaintiffs' UDTPA claim against their lender did not evince egregious or aggravating circumstances where defendant lender allegedly "frustrated the loan modification process ... [with] delays and repetitive requests that frustrated the contract finalization process" and prevented plaintiffs from conducting a short sale of the property); *Indus. Timber, LLC v. Jackson Furniture Indus., Inc.*, No. 322CV00229KDBDCK, 2022 U.S. Dist. LEXIS 182975, at *9 (W.D.N.C. Oct. 6, 2022) ("the Court cannot find sufficient

aggravating circumstances based merely on the allegation that [counterclaim defendant] prepared incorrect invoices" resulting in overcharges, even if it was "intentional").

Plaintiff has failed to show that Raleigh Realty acted deceptively or that egregious or aggravating circumstances existed, which are necessary to state an UDTPA claim. *Yokeley*, 182 N.C. App. at 663. Plaintiff does not (and cannot) allege that Raleigh Realty forged any documents, made fraudulent misrepresentations, or engaged in any other conduct that could be considered aggravating or egregious. Plaintiff does not even allege that Raleigh Realty pressured him to use CrossCountry or was told that he had no other choice for a lender. He only claims that his Raleigh Realty agent told him that "Raleigh Realty works with CrossCountry Mortgage" and "recommended CrossCountry Mortgage but no other lenders." AC ¶ 71. Plaintiffs cannot turn a mere recommendation into a UDTPA claim.

To the extent that Plaintiff bases this claim on his conclusory overcharge allegations, mere allegations of an overcharge are insufficient to state a claim under the UDTPA. *Cross*, 438 F. Supp. 3d at 579, 587.

Last, the Comarketing Agreement itself cannot be considered unfair or deceptive—let alone aggravating or egregious. As Plaintiff pleads in the Amended Complaint, comarketing agreements like the one at issue in this case ***are typical in the mortgage industry***. AC ¶¶ 23, 28, (citing *Co-Marketing Tips for Following RESPA Rules*, Nat'l Ass'n of Realtors Mag. (Nov. 1, 2018)). Conduct that is typical within an industry cannot meet the UDTPA's 'egregious or aggravating'

requirement. *Champion*, 845 F.3d at 110 ("such activity is indicative of the industry in which these parties operate and falls outside the scope of business activities the UDTPA is designed to address.").

Plaintiff thus has failed to show that Raleigh Realty engaged in any unfair or deceptive conduct, and his UDTPA claim should be dismissed under Rule 12(b)(6).

C. <u>Plaintiff Fails to Allege an Injury Sufficient to Confer UDTPA Standing</u>.

Under the UDTPA, a party bringing suit must "be injured [. . .] by reason of any act or thing done." *Westchester Fire Ins. Co. v. Johnson*, 221 F. Supp. 2d 637, 649 (M.D.N.C. June 27, 2002); *Almanzar v. Bank of Am.*, NA, No. 1:13CV146, 2013 U.S. Dist. LEXIS 18205, at *16 (M.D.N.C. Dec. 31, 2013) (dismissing UDTPA claim where the plaintiff "failed to allege any injury proximately caused" by the violation). For the reasons set forth above, Plaintiff has failed to adequately plead an injury. As a result, Plaintiff has failed to state a UDTPA claim and also lacks standing to pursue this claim.

## III.     PLAINTIFF FAILS TO STATE A CIVIL CONSPIRACY CLAIM.

Under North Carolina law, to allege civil conspiracy, a plaintiff must show: (1) the existence of the conspiratorial agreement itself; (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy; and (3) injury as a result of that conspiracy. *State ex rel. Cooper v. Ridgeway Brands Mfg.*, LLC, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008).

Plaintiff has failed to state a claim for civil conspiracy under Rule 12(b)(6) because North Carolina law does not recognize an independent cause of action for civil conspiracy. *See Sellers v. Morton*, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008). "Instead, civil conspiracy is premised on the underlying act." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011). Here, Plaintiff's civil conspiracy claim is purely dependent, premised on the alleged underlying violations of RESPA and the UDTPA. AC ¶¶ 115-116. Because Plaintiff has failed to state claims under RESPA and the UDTPA, Plaintiff's civil conspiracy claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

[No further text on this page]

This the 16th day of October, 2025.

PARRY LAW, PLLC

/s/ Jonah A. Garson

K. Alan Parry
N.C. State Bar No. 31343
Jonah A. Garson
N.C. State Bar No. 55547
100 Europa Drive, Ste 351
Chapel Hill, NC 27517
(919) 913-3320
kap@parryfirm.com
jag@parryfirm.com

*Counsel for Defendant Raleigh Realty Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document is filed with the Court's

CM/ECF filing system which effectuates service upon all parties having appeared in

this matter.

This the 16th day of October, 2025.


/s/ Jonah A. Garson