IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:25-cv-462-D-RN

| | | |
|---|---|---|
| JEREMIAH VONBLOHN,<br><br>Plaintiff,<br><br>v.<br><br>CROSSCOUNTRY MORTGAGE, LLC, and RALEIGH REALTY INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

NATURE OF THE CASE AND SUMMARY OF THE ARGUMENT ........................... 1

FACTUAL ALLEGATIONS ....................................................................... 3

LEGAL STANDARDS .............................................................................. 5

I. Rule 12(b)(1) Motion to Dismiss ........................................................ 5

II. Rule 12(b)(1) Motion to Dismiss ....................................................... 7

ARGUMENT ........................................................................................... 7

I. Plaintiff States a Claim For RESPA Violations. ........................................... 7

A. Plaintiff's RESPA Claim is Not Time-Barred. .......................................... 8

B. Plaintiff Has Sufficiently Pleaded Injury-in-Fact And Thus Has Standing Under RESPA. ........................................................................ 9

C. Defendants' Challenged Conduct is Not Protected by RESPA's Carve-Out. ....... 12

II. Plaintiff Has Stated a Claim Under The UDTPA. ....................................... 15

A. Plaintiff's UDPTA Claim is Not Merely a Restated RESPA Claim. .................. 15

B. Plaintiff Has Sufficiently Alleged Unfair And Deceptive Conduct. ................. 17

C. Plaintiff Needs Not Allege "Aggravating Circumstances." ........................... 21

D. Plaintiff Has Sufficiently Alleged Injury Under the UDTPA. ......................... 22

III. Plaintiff Has Sufficiently Stated a Claim for Civil Conspiracy. ........................ 22

CONCLUSION ........................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974) .................................... 8

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011) ................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 7, 12

*Baehr v. Creig Northrop Team, P.C*, 953 F.3d 244 (4th Cir. 2020) ........................ 2–3, 8–10

*BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282 (2019) ........................................... 22–23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................ 7

*Bloss v. Gov't Emps. Ins. Co.*, No. 1:24CV536, 2025 U.S. Dist. LEXIS 67480
(M.D.N.C. Apr. 9, 2025) ...................................................................... 20

*Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25 (2002) ......................................... 22

*Brasko v. Howard Bank*, No. 1:20-cv-3489-SAG, 2022 U.S. Dist. LEXIS 57627
(D. Md. Mar. 30, 2022) ...................................................................... 9–10

*Burton v. Dixon*, 259 N.C. 473 (1963) ............................................................ 22

*Carroll v. Nw. Fed. Credit Union*, 770 Fed. App'x 102 (4th Cir. 2019) ........................... 6

*Champion Pro Consulting Grp. v. Impact Sports Football*, 845 F.3d 104
(4th Cir. 2016) ...................................................................... 15

*Crown v. Parker*, 462 U.S. 345 (1983) ............................................................ 8

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 281 N.C. App. 312
(2022) ...................................................................... 21

*DC Custom Freight, LLC v. Tammy A. Ross & Assoc., Inc.*, 273 N.C. App. 220 (2020) ......... 17

*Dickens v. Puryear*, 302 N.C. 437 (1981) ............................................................ 23

*Drouillard v. Keister Williams Newspaper Servs. Inc.*, 108 N.C. App. 169 (1992) ............... 19

*Galiano v. Fid. Nat'l Title Ins. Co.*, No. 08-CV-4711 TCP WDW, 2010 U.S. Dist.
LEXIS 144663, at *14 (E.D.N.Y. Nov. 8, 2010) ............................................ 13

*Gilbane Bldg. Co. v. Fed. Res. Bank Richmond*, 80 F.3d 895 (4th Cir. 1996) .................... 18

*Griffin v. Dept. Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019) ............................ 6

*Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393 (1978) .............................. 18

*Henry v. Deen*, 310 N.C. 75 (1984) ............................................................................ 23

*In re Fifth Third Bank, Nat'l Ass'n of Penland Litig.*, 217 N.C. App. 199 (2011) ........... 19, 20

*In re Zillow Grp., Inc., Secs. Litig.*, No. C17-1387-JCC, 2018 U.S. Dist. LEXIS 170194 (W.D. Wash. Oct. 2, 2018) ................................................. 14

*Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247 (1980) ....................................... 18

*Lewis v. Equityexperts.Org, LLC*, No. 5:22-CV-302-FL, 2025 U.S. Dist. LEXIS 84478 (E.D.N.C. May 2, 2025) ............................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 5, 6

*Marshall v. Miller*, 302 N.C. 539 (1981) ......................................................... 17–18

*Mazaska Owecaso Otipi Fin., Inc. v. Montileaux*, No. 5:25-CV-05013-CCT, 2025 U.S. Dist. LEXIS 210008 (D.S.D. Oct. 22, 2025) .................................... 15

*Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 (E.D.N.C. Apr. 20, 2023) ....................................................... 1

*Morris v. CrossCountry Mortg., LLC*, 22-cv-336-BO-BM, 2023 U.S. Dist. LEXIS 190304 (E.D.N.C. Oct. 23, 2023) ....................................................... *passim*

*Muse v. Morrison*, 234 N.C. 195 (1951) .................................................... 22, 23, 24

*P&G v. Stone Container Corp.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007) ............................ 8–9

*Poor v. Hill*, 138 N.C. App. 19 (2000) ............................................................... 22

*PHH Corp. v. Consumer Fin. Prot. Bur.*, 839 F.3d 1 (2016) ....................................... 13

*Register v. N. Sun Hous. & Dev., Inc.* 2005 U.S. Dist. LEXIS 43759 (E.D.N.C. Sep. 2, 2005) ............................................................................ 16

*Reid v. Holden*, 242 N.C. 408 (1955) ................................................................ 23

*Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891 (S.D.N.Y. Mar. 27, 2024) ............................................................ 17

*Riddick v. Barber*, 109 F.4th 639 (4th Cir. 2024) .................................................... 7

*Shiflett v. Lakeview Loan Servicing, LLC*, No. 2:23-cv-00397-DJC-EFB, 2025 U.S. Dist. LEXIS 33834 (E.D. Cal. Feb. 25, 2025) ............................................ 17

*Sparks v. Oxy-Health, LLC*, 134 F.Supp.3d 961 (E.D.N.C. Sep. 15, 2015) ...................... 21

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................ 5–6

*State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431 (2008) ................ 22, 23

*Tomlin v. Dylan Mortg. Inc.*, 2000 NCBC 9, 2000 NCBC Lexis 11 (N.C. Super. June 12, 2000) ........................................................ 16–17, 19

*TransUnion v. Ramirez*, 594 U.S. 413 (2021) .................................................... 5

*Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63 (2007) .......................... 18–20, 22

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................ 6

*Willis v. Bank Am.*, No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 (D. Md. Aug. 1, 2014) ............................................................. 13

*Wilson v. Eagle Nat'l Bank*, No. 8:20-cv-01344-JRR, 2023 U.S. Dist. LEXIS 42588 (D. Md. Mar. 13, 2023) ............................................................ 6, 10

*Zahran v. Bank of America, N.A.*, No. 3:20-cv-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087 (W.D.N.C. June 2, 2021) .............................................. 16–17

**Statutes and Regulations**

12 C.F.R. § 1024.5 ................................................................ 15

12 U.S.C. § 2607 ................................................................. 7–8, 12

12 U.S.C. § 2616 ................................................................. 15

N.C. GEN. STAT. § 53-244.010 .................................................... 20

N.C. GEN. STAT. § 75-1.1 ........................7.................................... 3

N.C. GEN. STAT. § 75-16 .......................................................... 17, 22

**Other Authorities**

1 Andrea L. Negroni & Mary M. Pfaff, *Residential Mortgage Lending: State Reg. Manual* § 2:11 (2023) .......... 20

Plaintiff Jeremiah VonBlohn hereby submits this Memorandum in Opposition to the Motions to Dismiss of Defendant CrossCountry Mortgage, LLC ("CrossCountry"), and Defendant Raleigh Realty, Inc. ("Raleigh Realty").[1]

## NATURE OF THE CASE AND SUMMARY OF THE ARGUMENT

Plaintiff filed his Amended Complaint on October 3, 2025. *See generally* ECF No. 18, and Defendants moved to dismiss on October 17, 2025. *See generally* CrossCountry's Motion and Memorandum, ECF Nos. 19–20; and Raleigh Realty's Motion and Memorandum, ECF Nos. 21–22.

Defendants rehash many of the same arguments that this Court rejected in *Morris v. CrossCountry Mortgage, LLC*, which involved the same kickback scheme and allegations of harm that were, if anything, weaker than Plaintiff alleges in the instant action. *See* 22-cv-336, 2023 U.S. Dist. LEXIS 190304 (E.D.N.C. Oct. 23, 2023) (Boyle, J.) ("*Morris II*"). Notably, both Defendants rely extensively on Judge Boyle's dismissal of the *Morris* plaintiffs' original complaint, ECF No. 20, at 9–10; ECF No. 22, at 16–17 (citing *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 (E.D.N.C. Apr. 20, 2023) ("*Morris I*")), while whistling past the denial of Defendants' motions to dismiss the amended *Morris* complaint. *See* ECF No. 20, at 11, fn.7 ("Plaintiff's Amended Complaint in this case does not include such specific factual allegations."); ECF No. 22, at 16, fn.4 (same). But Plaintiff's allegations of harm are more detailed and specific than those in the *Morris* plaintiffs' Amended Complaint, let alone those in the original *Morris* complaint that was dismissed.

[1] Because of the similarities in the Memorandums in Support of CrossCountry's and Raleigh Realty's Motions to Dismiss, Plaintiff is addressing them collectively, except where otherwise noted. (*See generally* ECF Nos. 20 (CrossCountry's Memorandum) and 22 (Raleigh Realty's Memorandum)).

Most brazenly, Defendant CrossCountry asserts that "this is not a case about kickbacks," but rather about run-of-the-mill comarketing agreements. ECF No. 20, at 2. This case is ***absolutely about kickbacks***; Judge Boyle has already determined that. *See Morris II*, 2023 U.S. Dist. LEXIS 190304, at *10–11. Defendants seize on the fact that Plaintiff here alleges a sham co-marketing agreement under which CrossCountry paid $15,000 to a third-party for services rendered to Raleigh Realty, not that they paid money directly to Raleigh Realty. ECF No. 20, at 4–5, 14–16. Whether or not co-marketing agreements are categorically problematic is not the question before the Court; kickback agreements are plainly so. Because neither the Complaint, nor its exhibit, nor Defendants' memoranda point to any "services actually performed," let alone any associated "reasonable market value," the Court must credit the Complaint's detailed allegations that the Defendants' written co-marketing agreement was *post hoc* window-dressing to paper the alleged kickback conspiracy. ECF No. 18 ¶¶ 34–36, 47, 55–56. If these violations are "business as usual," as CrossCountry contends, ECF No. 20, at 2, then its usual business must change to conform with the law.

Defendants also take the failed tack that Plaintiff was not actually harmed by an interest rate that was significantly higher than what they would have obtained if they had not been deceptively steered to CrossCountry. As with their motions to dismiss the original *Morris* complaint, Defendants rely heavily on the Fourth Circuit's opinion in *Baehr v. Creig Northrop Team, P.C*, 953 F.3d 244 (4th Cir. 2020) to argue that Plaintiff fails to allege a concrete injury-in-fact. *Compare* ECF No. 20, at 9–13, *with Morris*, 22-cv-336, ECF No. 44, at 6–7. In *Baehr*, the Fourth Circuit Court of Appeals affirmed the district court's grant of summary judgment, holding that those plaintiffs did not put forward evidence of a real-world concrete injury to support standing under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), not in terms of an

actual increase in settlement costs and not even a tendency to increase settlement costs. *Baehr*, 953 F.3d at 254 (citing 12 U.S.C. § 2601(b)(2) (emphasis added)).

Like the plaintiffs in *Morris II*, Plaintiff here allege that he was ultimately harmed because Defendants' kickback arrangement had a tendency to increase costs and, moreover, that it actually ***did*** increase Plaintiff's own costs: The terms of the CrossCountry mortgage was less favorable than what Plaintiff would have otherwise obtained, ECF No. 18 ¶ 76, and CrossCountry charged him a non-standard "loan origination fee," *Id.* ¶¶ 79–80. These harms, not the bare absence of competition, are the injuries-in-fact that Plaintiff claims and are "the type of harm Congress sought to prevent when it enacted the statute." *Baehr*, 953 F.3d at 253; *see also Morris II*, 2023 U.S. Dist. LEXIS 190304, at *6–7 (citing *Baehr*, 953 F.3d at 254). And it is imminently plausible that these real-world harms resulted from Defendants' thwarting of fair competition in the market.

The alleged means of thwarting fair competition were crucial, too, because they belie Defendants' argument that Plaintiff's claims for violations of the N.C. Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1 ("UDTPA"), is impermissibly duplicative of his RESPA claim. *See* ECF No. 20, at 18–20; ECF No. 22, at 24–26. Namely, Plaintiff alleges that Raleigh Realty recommended CrossCountry and only CrossCountry. ECF No. 18 ¶ 71; *see id.* ¶¶ 104(e), 107(e). This deception was an element of the Defendants' conspiracy, *id.* ¶ 117, amounting to coercion, misrepresentation, or both, and Judge Boyle held in *Morris II* that it constituted unfair and/or deceptive conduct and a conspiracy, 2023 U.S. Dist. LEXIS 190304.

## FACTUAL ALLEGATIONS

In February 2021, Defendants entered into an agreement by which CrossCountry would pay Raleigh Realty to exclusively refer their homebuyer clients seeking a mortgage to CrossCountry. ECF No. 18 ¶¶ 34–39. The agreement was that CrossCountry would pay $15,000 a

month to cover half of the monthly cost of a marketing agreement with Page One Power. *Id.* ¶¶ 43–46. This amount was based on an expectation of $500 to $1,000 per referral. *Id.* ¶¶ 35, 55–56.

CrossCountry committed to this payment based *solely* on expectations of the referrals. *Id.* ¶ 57. The supposed marketing services were not worth the $15,000 contribution from CrossCountry, which received no marketing benefit from the shared marketing costs. *Id.* ¶ 46. Nor did CrossCountry expect any marketing benefit to accrue from its $15,000 contribution: The "marketing services" were merely window-dressing to provide plausible deniability for the kickback arrangement. *Id.* ¶ 44. CrossCountry's subsequent behavior confirmed this. First, it did not monitor the performance of any Page One Power services. *Id.* ¶ 46. Second, CrossCountry ended the arrangement specifically because Raleigh Realty was not making the minimum fifteen referrals per month. ¶¶ 55–56.

Raleigh Realty, for its part, performed under the illicit kickback deal by requiring its agents to impel all buyers to use CrossCountry for lending services that its clients would inevitably need, to omit reference to any other mortgage lender, and to imply to Plaintiff in particular that CrossCountry the only possible mortgage provider. *Id.* ¶¶ 36, 50–54, 71–72. Raleigh Realty's owner and president, Ryan Fitzgerald told all Raleigh Realty agents that CrossCountry "needs to be the only lender we are recommending." *Id*. ¶ 51. Any agent refusing to effectuate the unlawful kickback arrangement was "taking money out of the entire company's pocket" or "my pockets". *Id.* Fitzgerald enforced this requirement on Raleigh Realty agents by threatening to cut off access to sales leads where an agent referred a client to a lender other than CrossCountry. *Id*. ¶¶ 52–53.

The kickback scheme requiring all Raleigh Realty's homebuyer clients to exclusively use CrossCountry as their mortgage provider necessarily resulted in material harm for Plaintiff because it tended to unnecessarily increase the costs of settlement services. *Id*. ¶¶ 7, 72, 84, 95. Moreover,

Plaintiff ***did*** in fact bear increased costs for settlements services as a result of the kickback scheme: higher closing costs and less favorable loan terms in a riskier loan. *Id.* ¶¶ 7–8, 66, 73–80. Affirmatively inducing Plaintiff to select CrossCountry as his mortgage lender – regardless of whether CrossCountry might be the best or most cost-efficient choice, deprived him of fair and impartial competition in the market for real estate settlement services and ultimately created additional costs and additional risks for him.

Plaintiff engaged Raleigh Realty in October 2021. ECF No. 18 ¶ 67. Raleigh Realty steered him to CrossCountry in fall 2021. *Id.* ¶ 71. He closed on the home and the mortgage in November 2022. *Id.* ¶ 73. CrossCountry charged an initial rate of 6.75% on his mortgage, compared to initial rates of 6.625% on other variable loans and 6.75% on fixed-rate loans. Furthermore, the $995 "loan origination fee" represents an additional cost that Plaintiff would not have paid if he had been able to use a different lender. *Id.* ¶¶ 80–81.

## <u>LEGAL STANDARDS</u>

### I. RULE 12(b)(1) MOTION TO DISMISS.

The three elements for Article III standing are injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021).

While "a bare procedural violation, divorced from any concrete harm," will not satisfy Article III's injury-in-fact requirement, *Spokeo*, 578 U.S. at 341, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact, [therefore] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 578 U.S. at 342 (internal citations omitted) (emphasis in original).

To establish injury in fact, a plaintiff must show that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. "An injury is 'concrete' when it is 'real and not abstract.'" *Griffin v. Dept. Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *Spokeo*, 578 U.S. at 340). "Concrete is not, however, necessarily synonymous with tangible[;] intangible injuries can be concrete." *Carroll v. Nw. Fed. Credit Union*, 770 Fed. App'x 102, 104 (4th Cir. 2019). "The actual or threatened injury required" for Article III standing "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (internal citations omitted). "In deciding what intangible injuries are concrete, we consult the judgment of Congress because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Griffin*, 912 F.3d at 653; *see also Spokeo*, 578 U.S. at 340–41 ("In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles.").

"[T]he procedural posture of the case dictates the plaintiff's burden as to standing." *Wilson v. Eagle Nat'l Bank*, No. 8:20-cv-01344-JRR, 2023 U.S. Dist. LEXIS 42588, at *12 (D. Md. Mar. 13, 2023) (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). "Thus, when a defendant challenges a plaintiff's standing, we analyze the challenge differently depending on the stage of litigation at which the challenge is brought and the substance of the defendant's arguments." *Id.* (quoting *Overbey v. Mayor of Balt.*, 930 F.3d 215, 227 (4th Cir. 2019)). Accordingly, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (cleaned up).

## II. RULE 12(b)(6) MOTION TO DISMISS.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations need not be "detailed" but must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The court must view the pleaded facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. *Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir. 2024); *see also Twombly* at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."). The moving party bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

# ARGUMENT

## I. PLAINTIFF STATES A CLAIM FOR RESPA VIOLATIONS.

RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). Similarly, "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). The statute

was enacted to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2).

Defendants contend that Plaintiff lacks standing. *See* ECF No. 20, at 9–13; ECF No. 22, at 13–19. Specifically, Defendants assert that Plaintiff suffered no injury as a result of Defendants' conduct and that his claims should therefore be dismissed pursuant to Rule 12(b)(1); Defendants furthermore assert that Plaintiff's RESPA claim is time-barred.

**A. Plaintiff's RESPA Claim is Not Time-Barred.**

Defendants argue that Plaintiff's RESPA claim was not tolled by the class claims in *Morris at al v. CrossCountry Mortgage et al* and that it is therefore time-barred. *See* ECF No. 20 at 7–8; ECF No. 22 at 13. This argument ignores the rationales undergirding *American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974) and its progeny: to prevent a flood of protective filings actions against a class action defendant who already has notice of the similar claims. *See Crown v. Parker*, 462 U.S. 345, 352 (1983). Defendants are also wrong to demand strict adherence to the precise time period alleged in the Amended Complaint. "[I]t is well established that defects in proposed class definitions, such as those identified by the court in its class certification order, 'can and often should be solved by refining the class definitions.'" *Lewis v. Equityexperts.Org, LLC*, No. 5:22-CV-302-FL, 2025 U.S. Dist. LEXIS 84478, at *21 (E.D.N.C. May 2, 2025) (quoting *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 682 (4th Cir. 2024)). "For tolling to apply, claims do not have to be identical but only substantially similar to those brought in the original class action. When a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.'" *P&G v. Stone Container Corp.*, 504 F. Supp. 2d 38, 46 (E.D. Pa. 2007) (quoting *Crown*, 462 U.S. at 355).

The *Morris* action was filed on August 25, 2022. *See generally* 5:22-cv-00336-BO-BM, ECF No. 1; *see also id.* ¶ 34 (proposed class definition); *Morris*, ECF No. 41 ¶ 79 (same). It was dismissed on June 24, 2025. *See generally* 5:22-cv-00336-BO-BM, ECF No. 76.

Its thirty-four-month pendency tolled Plaintiff's RESPA claim, because the *Morris* plaintiffs' complaint and amended complaint provided Defendants ample notice their customers were harmed by a kickback scheme that began in early 2021 and continued through at least August 2022. 5:22-cv-00336-BO-BM, ECF No. 41 ¶¶ 21–35. As discussed more fully below, Plaintiff's allegations are "substantially similar" to the allegations that the Morrises raised for the proposed classes except for the precise date he closed on the mortgage. *See P&G v. Stone Container Corp.*, 504 F. Supp. 2d at 46. Plaintiff engaged Raleigh Realty in October 2021, ECF No. 18 ¶ 67, while the alleged kickback scheme was in effect, which Defendants acknowledge was within the class period. Raleigh Realty steered him to CrossCountry soon thereafter and also within the Class Period. *Id.* ¶ 71. The Court should deny Defendants' motion to dismiss his RESPA claim and should allow it to proceed into discovery.

### B. Plaintiff Has Sufficiently Pleaded Injury-in-Fact And Thus Have Standing Under RESPA.

In a RESPA case, the type of harm that Congress sought to prevent is "the increased costs that 'tend' to result from kickbacks' interference with the market for settlement services." *Morris II*, 2023 U.S. Dist. LEXIS 190304, at *6–7 (quoting *Baehr*, 953 F.3d at 254 (quoting 12 U.S.C. § 2601(b)(2))). Notably, the standard for injury under *Baehr* is not actual overpayment by a plaintiff; it is a violation with even a *tendency* to increase the cost of settlement services. *Id.*; *see Brasko v. Howard Bank*, No. 1:20-cv-3489-SAG, 2022 U.S. Dist. LEXIS 57627, at *7 (D. Md. Mar. 30, 2022) (Plaintiffs "need not point to a particular overcharge but instead must demonstrate that they were injured by kickbacks or referral fees that tend to increase unnecessarily the costs of

certain settlement services." (quoting *Baehr*, 953 F.3d at 254)); *Wilson*, 2023 U.S. Dist. LEXIS 42588, at *20.

In granting summary judgment,[2] the *Baehr* court rejected those plaintiffs' contention that they were concretely harmed by a bare lack of competition among providers of real estate settlement services, "[b]ecause the deprivation of impartial and fair competition between settlement services providers is not the harm that Congress enacted § 2607(a) of RESPA to prevent… ." *Baehr*, 953 F.3d at 254 (citing *Dreher v. Experian Info. Sols.*, 856 F.3d 337, 346 (4th Cir. 2017)). The *Baehr* court noted that the transaction in question, title services costing $425, were less expensive than the $520 the plaintiffs had paid for title services in connection with the purchase of a cheaper home years earlier. *Id.* at 249.

Here, the Amended Complaint alleges that kickbacks in tandem with an exclusive, undisclosed, and deceptive referral arrangement tend to increase unnecessarily the costs of settlement services even if there had been no quantifiable overcharge in Plaintiff's particular transaction. *E.g.,* ECF No. 18 ¶ 84. Moreover, Plaintiff alleges in detail that Defendants' conspiracy did, in fact, increase the costs of Plaintiff's settlement services, *id.* ¶¶ 69–81, 117–19.

Defendants attempt to avoid these allegations by labeling them as "baseless[]." ECF No. 20, at 12. Their briefs assert that Plaintiff is "asking the Court to take his word for it without providing any supporting allegations." *Id.* at 11.

These are plainly mischaracterizations regarding the sufficiency of Plaintiff's claims, particularly at the pleadings stage. The Amended Complaint provides ample detail on the

---

[2] At summary judgment, "the pertinent inquiry" is specifically "whether there are any genuine factual issues that properly can be resolved only by" the factfinder. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (cleaned up); *see generally* Fed. R. Civ. P. 56. Conversely, "a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (internal citations omitted).

predicates of the loan and its then-unknown alternatives, including the mortgage amount and the loan-to-value ratio. ECF No. 18 ¶ 68–70, 73–74. These were the bases of both the inflated 6.75% rate on the CrossCountry loan and the rate of 6.625% that Plaintiff would have been able to obtain elsewhere in the market. *Id*.

Judge Boyle recognized the importance of the differing interest rates when he denied these same Defendants' motions, which concerned the same scheme and were filed by the same counsel, in *Morris II*. *See generally* 2023 U.S. Dist. LEXIS 190304. To be sure, Plaintiff recognizes differences between the particular facts establishing the harm to the *Morris* plaintiffs and those establishing his own harm. But these differences are insubstantial. The Morrises alleged that Mr. Morris had been pre-approved by another lender for an interest rate lower than the one they obtained from Defendant CrossCountry. 5:22-cv-336-BO-BM, ECF No.41 ¶¶ 57, 62–63. In moving for dismissal of the amended *Morris* complaint, Defendants argued at length that the comparison was "apples to oranges" and invalid because of the months-long gap between the pre-approval and CrossCountry's own rate determination, and because the loans were of different types. *See* 5:22-cv-336-BO-BM, ECF No. 44, at 6–9. The Morrises bridged that gap with a one-paragraph allegation that

> [i]nterest rates for conventional 30-year mortgage loans did not materially change between January and August 2021. Therefore, increases in Plaintiffs' interest rates were not materially impacted by changes in the overall market for residential mortgage loans.

5:22-cv-336-BO-BM, ECF No. 41 ¶ 63.

Plaintiff's harm allegations are comparable with those of the Morrises. Here, Plaintiff provides a specific rate that was actually offered by at least one other mortgage lender in the very same time frame as the actual CrossCountry mortgage loan and alleges that the "loan origination

fee" would have been avoided by using a different lender. ECF No. ¶ 69–80.[3] This goes well beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The Court must therefore "assume their veracity," *Iqbal*, 556 U.S. at 678, or, in Defendants' terms, "take [Plaintiff's] word for it." ECF No. 20, at 11.

In short, Defendants' dispute of the Plaintiff's injury here is fundamentally a factual dispute that must be weighed on a full record at summary judgment and/or trial. *See Morris II*, 2023 U.S. Dist. LEXIS 190304 at *7–8 ("[A]bsent discovery, there is no way to know whether, for example, Mrs. Morris' absence from the original prequalification or presence on the CrossCountry loan had any material impact."). The Court should therefore hold that Plaintiff has Article III standing and deny Defendants' Rule 12(b)(1) motion.

**C. Defendants' Challenged Conduct is Not Protected by RESPA's Carve-Out.**

RESPA's anti-kickback prohibition does not reach compensation for "goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). Defendants implicitly acknowledge that this "carve out" does not apply where the compensation exceeds "reasonable market value" for the services rendered. ECF No. 20 at 16 (citing *PHH Corp. v. Consumer Fin. Prot. Bur*., 839 F.3d 1, 41 (2016)).

Plaintiff's allegations make clear that Defendants' co-marketing agreement did not involve delivery of services at "reasonable market value," and that Defendants did not even attempt to assess or monitor such a value. From the get-go, the papered agreement for supposed "marketing services" was merely window-dressing to provide plausible deniability for the kickback

[3] The comparison reflects an actual investigation by Plaintiff's counsel, and is an apples-to-apples comparison of rates on 30-year variable-rate loans that were actually available in the market at the time the CrossCountry loan issued, as well as Plaintiff's credit score. While the Court may not consider this footnoted assertion in deciding whether to dismiss Plaintiff's Amended Complaint, it shows that he would be able to cure any perceived insufficiency through amendment and that any dismissal should be without prejudice.

arrangement. ECF No. 18 ¶¶ 44; *see id.* ¶¶ 34–36. The parties' subsequent behavior confirmed this. CrossCountry did not monitor the performance of the marketing services that were, on paper, to be provided by Page One Power. *Id.* ¶ 46. And in fact Page One Power provided "no marketing benefit" to CrossCountry in exchange for its $15,000 monthly payment. *Id.* Finally, CrossCountry ended the arrangement specifically because Raleigh Realty was not making the minimum fifteen referrals per month. *Id.* ¶¶ 55–56. Nowhere does the Amended Complaint allege that any relevant services were "actually performed," let alone support an inference that such services were of "reasonable market value," ECF No. 20 at 16. To the contrary, the services had ***no value***. ECF No. 18 ¶¶ 46, 55–56. And Defendants offer no evidence of services "actually performed," let alone services of "reasonable market value." They merely point to the Page One Power contract, which the Amended Complaint specifically identifies as "window-dressing" created for "plausible deniability." ECF No. 18 ¶ 44.

*PHH Corporation* does nothing to support dismissal here.[4] To the contrary, *PHH Corporation* emphasizes the intensely factual determination of "reasonable market value." *See* 839 F.3d 1, at 9–10. There, the D.C. Circuit reversed what would have been the final step in an enforcement action by the Consumer Financial Protection Bureau's ("CFPB"), a $109 million fine that was not based on an attempt to quantify "reasonable market value". *See id.* at 10 ("On remand, the CFPB may determine among other things whether … the relevant mortgage insurers paid more than reasonable market value to the PHH-affiliated reinsurer."). Plaintiff has effectively alleged

[4] *Galiano v. Fidelity National Title Insurance* similarly does nothing for Defendants' argument; it, too, concerned allegations of services actually performed. *See* ECF No. 20, at 15; *Galiano v. Fid. Nat'l Title Ins. Co.*, No. 08-CV-4711 TCP WDW, 2010 U.S. Dist. LEXIS 144663, at *14 (E.D.N.Y. Nov. 8, 2010). The same goes for *Willis v. Bank of America. See* ECF No. 20, at 15–16; *Willis v. Bank Am.,* No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339, at *44–45 (D. Md. Aug. 1, 2014).

that the co-marketing agreement's "reasonable market value" was zero,[5] *see* ECF No. 18 ¶ 46 ("no marketing benefit"), and that the conspirators never even attempted to achieve such a reasonable value, *see id.* ("Defendants' agreement operated without significant monitoring or oversight."). The takeaway from *PHH Corporation* is that this action should similarly proceed into discovery so that "reasonable market value" can be determined as the CFPB initially failed to do.

*In re Zillow Group, Inc., Securities Litigation* is no more helpful for Defendants. *See* ECF No. 20, at 14 (citing No. C17-1387-JCC, 2018 U.S. Dist. LEXIS 170194, at *18 (W.D. Wash. Oct. 2, 2018)). First and foremost, the primary defendant there, Zillow, was not accused of paying or receiving kickbacks in the manner of CrossCountry and Raleigh Realty. 2018 U.S. Dist. LEXIS 170194, at *3. Rather, Zillow's "co-marketing program" provided services to real estate agents and to lenders. In other words, Zillow is analogous to Page One Power, which is not a defendant here. The Western District of Washington quickly dispensed with the plaintiffs' assertion that co-marketing agreements were *per se* RESPA violations by Zillow. *Id.* at *17–18. The court then rejected plaintiffs' RESPA claims against Zillow because they had failed to provide "particularized facts that demonstrate co-marketing lenders were paying more than fair market value for the advertising services they received" as could be relevant to Zillow. *Id.*, at *20.[6]

For these reasons, the Court should reject Defendants' assertion that their conduct fell within RESPA's carve-out.

---

[5] Should the Court demand that Plaintiff expressly allege that the reasonable market value was zero, Plaintiff requests leave to amend the Complaint to expressly include such an allegation.

[6] It would be counterintuitive here to provide the sort of "particularized facts" that the Western District of Washington found lacking, because the Amended Complaint does not allege that CrossCountry actually received ***any*** marketing services for its monthly $15,000 contribution. ECF No. 18, ¶¶ 34–36, 44, 46. If at summary judgment Defendants submit evidence suggesting that any marketing services were in fact provided to CrossCountry, and not merely mentioned in a sham contract that was not monitored for value or compliance, Plaintiff believes his own evidence will show that any such services' "reasonable market value" fell far short of $15,000 per month.

## II. PLAINTIFF HAS STATED A CLAIM UNDER THE UDTPA.

Defendants contend that Plaintiff fails to adequately allege that (a) Defendants' conduct was unfair or deceptive; and (b) Plaintiff suffered an injury under the UDTPA. *See* ECF No. 20, at 17–23; ECF No. 22, at 23–29. This is wrong—Plaintiff's allegations in support of his UDTPA claim are more than sufficient to survive a motion to dismiss.

### A. Plaintiff's UDPTA Claim is Not Merely a Restated RESPA Claim.

Under the guise of a preemption-type argument, Defendants assert that Plaintiff's UDTPA claim is merely a "restated" RESPA claim that is precluded because, Defendants say, the mortgage industry is pervasively regulated.

This argument fails out of the gate for several reasons. First, RESPA itself expressly provides that it "does not annul, alter, or affect, or exempt any person subject to the provisions of [RESPA] from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of [RESPA], and then only to the extent of the inconsistency." 12 U.S.C. § 2616; *see* 12 C.F.R. § 1024.5(c)(1) (same); *see also Mazaska Owecaso Otipi Fin., Inc. v. Montileaux*, No. 5:25-CV-05013-CCT, 2025 U.S. Dist. LEXIS 210008, at *21 (D.S.D. Oct. 22, 2025) ("Importantly, Congress indicated that laws giving greater protection to the consumer are not to be found inconsistent with RESPA." (citing 12 U.S.C.S. § 2616 and 12 C.F.R. § 1024.5(c)(2)(i)).

Given this explicit authorization, it is not surprising that Defendants fail to cite even one case where RESPA preempted or otherwise precluded a UDTPA claim. Defendants themselves half-acknowledge this absence. In *Champion Pro Consulting Group v. Impact Sports Football*, the state-law claims were precluded by "carefully crafted" internal regulations of the National Football League Players Association. 845 F.3d 104, 110 (4th Cir. 2016); *see* ECF No. 20, at 18, 20.

Defendants' other cited cases deal with securities regulations, commodities trading, the Truth in Lending Act ("TILA"), and the federal Medicare program. *See id*. at 18–19. Nor do Defendants attempt to identify any "inconsistency" that might limit the authorization of 12 U.S.C. § 2616. Plaintiff, too, HAS been unable to identify any such inconsistency or any instance of RESPA precluding a UDTPA claim.

The TILA case provides a useful contrast to the allegations now before the Court. There, this Court, through Judge Flanagan, granted summary judgment on the plaintiffs' UDTPA claim as being based "***solely*** upon violations addressed in plaintiffs' other claims … ." *Register v. N. Sun Hous. & Dev., Inc.* 2005 U.S. Dist. LEXIS 43759, at *32 (E.D.N.C. Sep. 2, 2005) (emphasis added). Specifically, the plaintiffs argued that a "failure to disclose violates the TILA and the North Carolina Retail Installment Act, and, in turn, violates the North Carolina Unfair and Deceptive Trade Practices Act." *Id.*, at *19. Here, Plaintiff's UDTPA claim is not based solely on RESPA violations. Rather, Plaintiff alleges deceptive statements regarding the availability of non-CrossCountry mortgages. ECF No. 18 ¶ 71. Plaintiff also alleges violations of the SAFE Act, *id.* ¶¶ 60–62, the North Carolina Administrative Code's anti-kickback restrictions, *id.* ¶¶ 64, 107(d), and other North Carolina public policy, *id.* ¶¶ 104, 107, in support of his UDTPA claims.

In contrast to the non-RESPA cases that Defendants cite, UDTPA claims involving mortgages and RESPA regularly proceed into discovery. Even these same Defendants, under the same respective counsel as in the instant case, did not raise such a defense in *Morris II* in response to concurrent and overlapping RESPA and UDTPA claims. *See generally* 5:22-cv-00336-BO-BM, ECF Nos. 44, 46; *Morris II*, 2023 U.S. Dist. LEXIS 190304. Concurrent claims for RESPA and UDTPA also proceeded in, for example, *Zahran v. Bank of America, N.A.*, No. 3:20-cv-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087, at *7 (W.D.N.C. June 2, 2021) (denying motions to dismiss

RESPA and UDTPA claims), and *Tomlin v. Dylan Mortgage Inc.*, 2000 NCBC 9, 2000 NCBC Lexis 11 (N.C. Super. June 12, 2000), ¶¶ 13–16 (same). This is similarly common in other states with laws proscribing unfair and deceptive trade practices. *See, e.g., Shiflett v. Lakeview Loan Servicing, LLC*, No. 2:23-cv-00397-DJC-EFB, 2025 U.S. Dist. LEXIS 33834, at *62 (E.D. Cal. Feb. 25, 2025); (denying motion to dismiss claims for violations of RESPA and California's Unfair Competition Law); *Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891, at *3 (S.D.N.Y. Mar. 27, 2024) (denying motion to dismiss claims for violations of RESPA and New York deceptive trade practices statute).

For these reasons, the Court should reject Defendants' argument that RESPA somehow precludes Plaintiff's UDTPA claim.

**B. Plaintiff Has Sufficiently Alleged Unfair And Deceptive Conduct.**

The UDTPA gives a consumer a private right of action against a defendant who engages in unfair or deceptive acts or practices that involve commerce and harm the consumer. *See generally* N.C. GEN. STAT. § 75-16. "To prevail on a [UDTPA claim], a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice (2) in or affecting commerce which (3) proximately caused injury to the plaintiff." *DC Custom Freight, LLC v. Tammy A. Ross & Assoc., Inc.*, 273 N.C. App. 220, 227–28 (2020).

The legislative history and case law of the UDTPA show that it is meant to fill gaps between existing common law causes of actions. *See e.g., Marshall v. Miller*, 302 N.C. 539, 543 (1981). The Act itself does not explicitly "define an unfair or deceptive act, 'nor is any precise definition of the term possible.'" *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting*, LLC, 2024 NCBC 46, 2024 NCBC LEXIS 99 ¶ 394 (quoting *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 229–30 (1984)). Whether a defendant's challenged conduct is unfair or deceptive "depends upon

the facts of each case and the impact the practice has in the marketplace." *Marshall*, 302 N.C. at 548. The conduct is "unfair" if it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* A practice is deceptive "if it has the capacity or tendency to deceive; proof of actual deception is not required." *Id.* "Either unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive." *Gilbane Bldg. Co. v. Fed. Res. Bank Richmond*, 80 F.3d 895, 903 (4th Cir. 1996).

Unfairness in the UDTPA context is a "somewhat nebulous concept," taking many forms. *Id.* at 902. Thus, the determination of unfairness is intensely case-specific: "the fair or unfair nature of a particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others." *Harrington Mfg. Co. v. Powell Mfg. Co*., 38 N.C. App. 393, 400 (1978). Accordingly, the unfairness of particular conduct is an adaptable determination that a court must make based on the particular allegations in a case. *See Gilbane*, 80 F.3d at 902 ("[T]he fairness or unfairness of particular conduct is not an abstraction to be derived by logic.") However, "[i]n practice," North Carolina courts apply the UDTPA "liberally." *Id*. at 903 (internal citations omitted).

The prohibition on "unfairness" is "broader than and includes the concept of 'deception.'" *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263 (1980). In other words, "an act or practice which is unfair may also be deceptive, or vice versa," but "it need not be" both unfair ***and*** deceptive to be a violation of the UDTPA. *Id*. North Carolina courts have declined to set a limit on what conduct can qualify as unfair under the UDTPA, instead casting a wide net to formulate and apply various definitions of unfairness, all of which demonstrate the broadness of the standard. As the Supreme Court has explained, "[a] practice is unfair when it offends established public policy as

well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72 (2007).

Plaintiff alleges that the kickback scheme was unfair in numerous ways. First, the kickback scheme is sufficiently immoral, unethical, oppressive, and substantially injurious to bring an UDTPA claim because Plaintiff was unfairly deceived into using CrossCountry, which increased his settlement costs. ECF No. 18 ¶¶ 69–80. Second, the kickback scheme gives rise to an UDTPA claim because it violates longstanding North Carolina and federal laws and offends public policy, including RESPA and the North Carolina Secure and Fair Enforcement Mortgage Act ("SAFE Act"). *Id*. ¶¶ 60–62, 104–07. Finally, the kickback scheme is substantially injurious so as to support a UDTPA claim in that it resulted in excessive and increased settlement costs. *Id*. ¶¶ 7–8, 66, 69–80.

While noncompliance with "general industry standards does not constitute a *per se* violation of the UDTPA," a defendant's "violation of a regulatory statute which governs business activities may … also be a violation of" the UDTPA. *In re Fifth Third Bank, Nat'l Ass'n of Penland Litig.*, 217 N.C. App. 199, 207 (2011); *see also Tomlin*, 2000 NCBC 9 ¶ 16 ("[I]f plaintiffs are able to establish a violation of RESPA, they will be able to support an argument that the acts alleged are *per se* violations of Chapter 75.").

Unfairness under the UDTPA is not to be narrowly construed; thus a regulatory violation "may also be a violation…whether or not such activities are listed specifically" in the regulation or regulatory act itself. *Drouillard v. Keister Williams Newspaper Servs. Inc.*, 108 N.C. App. 169, 172 (1992). Therefore, violation of a consumer protection statute such as RESPA, "may, in some instances, constitute a *per se* violation of the UDTPA." *Fifth Third Bank*, 217 N.C. App. at 207.

Even if violations of such a statute "are not unfair or deceptive trade practices *per se*, those violations are potentially relevant to" an UDTPA claim as evidence of an unfair or deceptive trade practice. *Walker*, 362 N.C. at 71. Conversely, where a violation of a consumer-protection statute constitutes a *per se* violation of the UDTPA, a plaintiff may file a standalone UDTPA claim or a UDPTA claim arising out of the other statutory violation. *Bloss v. Gov't Emps. Ins. Co.*, No. 1:24CV536, 2025 U.S. Dist. LEXIS 67480, at *21–22 (M.D.N.C. Apr. 9, 2025) (citing *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396, 397 n.8 (4th Cir. 2018)).

Plaintiff amply alleges that Defendants violated not only RESPA, *see supra*, but also at least six specific provisions of the Secure and Fair Enforcement Mortgage Licensing Act, N.C. GEN. STAT. § 53-244.010 *et seq.* (the "SAFE Act"), and provisions of the N.C. Administrative Code applicable to real estate agents. ECF No. 18 ¶¶ 61–64. Since these violations may be *per se* violations of the UDTPA, a corollary RESPA violation may similarly be a *per se* violation. *See Fifth Third Bank* at 176. Similarly, because the UDTPA "prohibits unfair methods of competition and unfair or deceptive acts or practices" in or affecting commerce, "which would presumably include real property transactions" and mortgage brokerage, the SAFE Act violations alleged by Plaintiff may similarly constitute *per se* violations, or at least persuasive evidence of a violation, of the UDTPA. *See* 1 Andrea L. Negroni & Mary M. Pfaff, *Residential Mortgage Lending: State Reg. Manual* § 2:11 (2023).

Even if these violations are not *per se* violations of the UDTPA, they would at minimum be evidence of a potential UDTPA violation. *See Walker*, 362 N.C. at 71 (a violation of a state statute was not a *per se* violation but "would still be "relevant to any claim that defendant violated § 75-1.1").

Without embracing the *per se* theories, Judge Boyle held that these same Defendants' statutory violations, if proved, would constitute unfair conduct. *See Morris II*, 2023 U.S. Dist. LEXIS 190304, at *9 ("Plaintiffs here have alleged both that defendants violated RESPA and the SAFE Act, consumer protection statutes, and that they have violated the North Carolina Administrative Code for the Real Estate Commission. … This is sufficient to nudge plaintiffs' unfair and deceptive trade practices claim across the line from conceivable to plausible. The Court will not dismiss the claim at this stage.")

Plaintiff has provided highly similar allegations of misconduct, that Defendants misled Plaintiff into taking out a mortgage against his best interest. Defendants have not met their burden, and their Motions should be denied.

**C. Plaintiff Needs Not Allege "Aggravating Circumstances."**

Defendants assert that Plaintiff must show, at this early stage of litigation, that Defendants "acted deceptively or that egregious or aggravating circumstances existed" in order "to state an UDTPA claim." ECF No. 20, at 20–22. This fundamentally mischaracterizes the nature of UDTPA claims. UDTPA claims "fairly may be categorized into five types:" (1) generally unfair conduct that "offends public policy; or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;" (2) "deceptive misrepresentations [with] the capacity or tendency to deceive the average person;" (3) certain "per se violations of [the UDTPA];" (4) "breach of contract accompanied by aggravating circumstances;" and (5) "anti-competitive conduct." *Sparks v. Oxy-Health, LLC*, 134 F.Supp.3d 961, 997–98 (E.D.N.C. Sep. 15, 2015) (internal citations omitted). The "aggravating circumstances" requirement asserted by Defendants comes into play only when based on the breach of a contract. *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 281 N.C. App. 312, 325 (2022). Here, Plaintiff's UDTPA claim is not based on breaches

of contract. Instead, as explained above, Plaintiff's claim is based on generally unfair conduct, *per se* violations of regulatory statutes, and deception in combination with violations of regulatory statutes.

**D. Plaintiff Has Sufficiently Alleged Injury Under the UDTPA.**

The UDTPA itself grants standing to "any person [who] shall be injured…by reason of any act or thing done by any other person, firm, or corporation in violation of the provisions of this Chapter." N.C. GEN. STAT. § 75-16 (providing that the injured person "shall have a right of action on account of such injury done"); *see also Walker*, 362 N.C. at 71 (UDTPA "provides standing to any person who suffers any injury, as well as for any business injury."). "Actual injury" may be any other elements of damages shown by a plaintiff's evidence. *Poor v. Hill*, 138 N.C. App. 19, 34 (2000). While plaintiffs must provide evidence to support a UDTPA claim as the case goes forward, at the pleading stage "they are entitled to proceed with their claims" where they make sufficient allegations of actual injury under the UDTPA. *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 37 (2002).

As discussed at length above, Plaintiff has alleged actual concrete harm going even beyond relevant RESPA injury, "tendency" to increase real estate settlement costs. Defendants' arguments for dismissal of the UDTPA claim on this basis must be rejected.

**III. PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR CIVIL CONSPIRACY.**

A civil conspiracy "is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself." *Burton v. Dixon*, 259 N.C. 473, 476 (1963). A plaintiff must allege "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (citing *Muse v. Morrison*, 234 N.C. 195, 198 (1951)). Then, "all of the conspirators are jointly and

severally liable for the act of any one of them done in furtherance of the agreement." *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300 (2019) (cleaned up). Accordingly, a claim for civil conspiracy "does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all." *Henry v. Deen*, 310 N.C. 75, 86–87 (1984). The "underlying unlawful conduct need not be separately stated;" the court "reviews all sections of a complaint as to allegations to support such a claim." *BDM Invs.*, 264 N.C. App. at 300. Here, Plaintiff has sufficiently stated claims under RESPA and the UDTPA, *supra*, and have alleged conduct that amounts to violations of the SAFE Act and the North Carolina Administrative Code; his claim for civil conspiracy is therefore proper.

Because "the gravamen of the action is the resultant wrong," *Muse*, 234 N.C. at 198, the claim arises from the "damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself," *Reid v. Holden*, 242 N.C. 408, 414 (1955). A plaintiff must allege an overt act committed by at least one conspirator in furtherance of the conspiracy. *Dickens v. Puryear*, 302 N.C. 437, 456 (1981).

Here, Plaintiff has sufficiently and specifically alleged "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Ridgeway Brands,* 362 N.C at 444. Plaintiff alleges that "Defendants intended to form and did form a conspiracy by entering into an unlawful agreement by which Raleigh Realty exclusively referred its buyer clients, including Plaintiff, to CrossCountry in exchange for a monthly monetary payment. *See* ECF No. 18 ¶¶ 34–38. Plaintiff further alleges conduct by both Defendants that violated RESPA and the UDTPA. *See id.* ¶¶ 116–19.

As for the overt act, Plaintiff alleges that (1) CrossCountry remitted monthly kickback payments to Raleigh Realty purposely to further the conspiracy by requiring Raleigh Realty to

continue exclusively recommending CrossCountry to its buyer-clients despite the violations of RESPA, the UDTPA, and other corollary North Carolina laws and regulations; and (2) Raleigh Realty required its agents to exclusively recommend CrossCountry to all buyer-clients to further the conspiracy by inducing CrossCountry to continue remitting kickback "referral fees" despite the violations of RESPA, the UDTPA, and other corollary North Carolina law. *See id*. ¶¶ 47, 116–19. Each payment and/or receipt of an unlawful kickback payment and each mortgage originated pursuant to Defendants' unlawful exclusivity requirement was an overt act committed in furtherance of the conspiracy.

Regardless, whether Plaintiff is to prove their allegations "is of no concern [in] testing the sufficiency of a complaint" on a motion to dismiss. *Muse*, 234 N.C. at 198. "A conspiracy between defendants is [sufficiently] alleged in the complaint" where "[t]here are allegations that numerous wrongful acts were unlawfully, maliciously, and corruptly done" by the defendants "as a part of and in furtherance of the common object" and "it is alleged that plaintiff has been injured and is damaged as the result of the acts so done." *Id*.

**<u>CONCLUSION</u>**

WHEREFORE, Defendants' Motions should be DENIED because Plaintiff suffered an injury sufficient to confer Article III standing for both his RESPA and UDTPA claims, and has plausibly alleged facts sufficient to establish his UDTPA claim and his claim for civil conspiracy.

Respectfully submitted, this 7th day of November 2025.

*Counsel for Plaintiff*

**MAGINNIS HOWARD**

*/s/ Christopher R. Bagley*
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
CHRISTOPHER R. BAGLEY
N.C. State Bar No. 50567
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel: (919) 526-0450
Fax: (919) 882-8763
emaginnis@carolinalaw.com
cbagley@carolinalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

This the 7th day of November 2025.

**MAGINNIS HOWARD**

*/s/ Christopher R. Bagley*
Christopher R. Bagley

c