IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:25-cv-00462-D-RN

| | |
|---|---|
| JEREMIAH VONBLOHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CROSSCOUNTRY MORTGAGE, | ) **CROSSCOUNTRY'S** |
| LLC, and RALEIGH REALTY INC. | ) **REPLY IN SUPPORT** |
| | ) **OF ITS MOTION TO DISMISS** |
| Defendants. | ) **PLAINTIFF'S AMENDED COMPLAINT** |
| | ) **PURSUANT TO FED. R. CIV. P.** |
| | ) **12(b)(1) AND 12(b)(6)** |

## TABLE OF CONTENTS

                                                                                                                    **Page**

PRELIMINARY STATEMENT ..................................................................................................1

I. PLAINTIFF LACKS STANDING TO ASSERT ANY OF HIS CLAIMS, REQUIRING RULE 12(b)(1) DISMISSAL............................................................................1

II. PLAINTIFF'S RESPA CLAIM FAILS UNDER RULE 12(b)(6) ......................................4

    A. Plaintiff's Untimely RESPA Claim Cannot Be Tolled Under *American Pipe*. ..........................................................................................................................4

    B. Plaintiff Alleges No Comarketing Payments Outside RESPA's Carve-Out. ..........5

III. PLAINTIFF'S UDTPA CLAIM FAILS UNDER RULE 12(b)(6) .....................................7

    A. Plaintiff's UDTPA Claim Does Not Apply To Pervasively Regulated Conduct. ..................................................................................................................7

    B. Plaintiff Alleges No Unfair Or Deceptive Conduct ................................................9

IV. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS UNDER RULE 12(b)(6) ...........10

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES
Page(s)

**Cases**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)..................................................................................................1, 4, 5

*Arthur v. Ticor Title Ins. Co. of Fla.*,
    569 F.3d 154 (4th Cir. 2009) ..................................................................................................4

*Baehr v. Creig Northrop Team, P.C.*,
    953 F.3d 244 (4th Cir. 2020) ...............................................................................................2, 4

*Bloss v. Gov't Emps. Ins. Co.*,
    No. 1:24CV536, 2025 WL 1068829 (M.D.N.C. Apr. 9, 2025)...............................................10

*Brasko v. Howard Bank*,
    No. 1:20-CV-3489-SAG, 2022 WL 951771 (D. Md. Mar. 29, 2022) ......................................2

*Bridges v. Dep't of Maryland State Police*,
    441 F.3d 197 (4th Cir. 2006) ..................................................................................................5

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*,
    845 F.3d 104 (4th Cir. 2016) ...............................................................................................7, 8

*Collins v. First Fin. Servs., Inc.*,
    No. 7:14-CV-288-FL, 2016 WL 589688 (E.D.N.C. Feb. 10, 2016).........................................6

*Cross v. Ciox Health, LLC*,
    438 F. Supp. 3d 572 (E.D.N.C. 2020).....................................................................................9

*Dalton v. Camp*,
    353 N.C. 647, 548 S.E.2d 704 (2001)....................................................................................9

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
    2022-NCCOA-27, 281 N.C. App. 312, 869 S.E.2d 34 (2022) ..............................................10

*DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*,
    273 N.C. App. 220, 848 S.E.2d 552 (2020)..........................................................................10

*Eichholz v. Wells Fargo Bank, NA*,
    No. 10-CV-13622, 2011 WL 5375375 (E.D. Mich. Nov. 7, 2011).........................................3

*Elliott v. Am. States Ins. Co.*,
    883 F.3d 384 (4th Cir. 2018) ................................................................................................10

*Exclaim Mktg., LLC v. DirecTV, LLC*,
 134 F. Supp. 3d 1011 (E.D.N.C. 2015) ...................................................................................9

*In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*,
 217 N.C. App. 199, 719 S.E.2d 171 (2011) ..........................................................................10

*Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*,
 80 F.3d 895 (4th Cir. 1996) ...................................................................................................10

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
 38 N.C. App. 393, 248 S.E.2d 739 (1978) ............................................................................10

*Harvey v. Cable News Network, Inc.*,
 48 F.4th 257 (4th Cir. 2022) ....................................................................................................6

*Johnson v. Phoenix Mut. Life Ins. Co.*,
 300 N.C. 247, 266 S.E.2d 610 (1980) ...................................................................................10

*Kettle v. Leonard*,
 No. 7:11-CV-189-BR, 2012 WL 4086595 (E.D.N.C. Sept. 17, 2012) ....................................4

*Morris v. CrossCountry Mortg., LLC*,
 No. 5:22-CV-336-BO-BM, 2023 WL 3029246 (E.D.N.C. Apr. 20, 2023) ..............................3

*Morris v. CrossCountry Mortg., LLC*,
 No. 5:22-CV-336-BO-BM, 2023 WL 7003692 (E.D.N.C. Oct. 24, 2023) ..............................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
 591 F.3d 250 (4th Cir. 2009) ...................................................................................................6

*P&G v. Stone Container Corp.*,
 504 F. Supp. 2d 38 (E.D. Pa. 2007) ........................................................................................5

*Philogene v. Data Networks, Inc.*,
 No. PWG-17-1318, 2018 WL 1014929 (D. Md. Feb. 21, 2018) .............................................6

*Register v. N. Sun Hous. & Dev., Inc.*,
 No. 7:04-CV-68-FL, 2005 WL 8159532 (E.D.N.C. Sept. 2, 2005) .........................................8

*Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*, 2024 NCBC 46, 2024 NCBC
 LEXIS 99 ...............................................................................................................................10

*Renois v. WVMF Funding, LLC*,
 No. 20-CV-9281-LTS, 2024 WL 1313492 (S.D.N.Y. Mar. 27, 2024) .....................................8

*Shiflett v. Lakeview Loan Servicing, LLC*,
 No. 2:23-CV-00397-DJC-EFB, 2025 WL 603616 (E.D. Cal. Feb. 25, 2025) .........................8

*Sparks v. Oxy-Health, LLC*,
    134 F. Supp. 3d 961 (E.D.N.C. 2015)..................................................................................10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................................2

*Tomlin v. Dylan Mortgage Inc.*, 2000 NCBC 9, 2000 NCBC Lexis 11 (N.C.
    Super. June 12, 2000).........................................................................................................8

*Walker v. Fleetwood Homes of N. Carolina, Inc.*,
    362 N.C. 63, 653 S.E.2d 393 (2007)................................................................................10

*Willis v. Bank of Am. Corp.*,
    No. CIV.A. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) ..............................6

*Wilson v. Eagle Nat'l Bank*,
    No. 8:20-CV-01344-JRR, 2023 WL 2478933 (D. Md. Mar. 13, 2023) ..................................2

*Zahran v. Bank of Am., N.A.*,
    No. 3:20-CV-427-MOC-DSC, 2021 WL 2226491 (W.D.N.C. June 2, 2021) .........................8

**Statutes**

15 U.S.C. § 1610(a)(1)..................................................................................................................8

12 U.S.C. § 2605..........................................................................................................................8

12 U.S.C. § 2607..........................................................................................................................5

12 U.S.C. § 2616..........................................................................................................................7

North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-
1.1, *et seq.* ("UDTPA") ........................................................................................... *passim*

Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, *et seq.* ("RESPA") .................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...............................................................................1, 4

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................4, 7, 10

## PRELIMINARY STATEMENT

Plaintiff's Opposition (ECF No. 23, "Opp."), confirms that, despite repleading, the Amended Complaint still lacks the basic elements needed to survive dismissal.[1]

Plaintiff alleges no concrete injury tied to the Comarketing Agreement, his RESPA claim is time-barred and in any event falls within RESPA's carve-out for payments for services actually performed, his UDTPA theory impermissibly targets conduct that is already governed by a pervasive regulatory regime and otherwise fails to meet the stringent "unfair or deceptive" standard, and his civil conspiracy claim adds nothing. Those defects are fatal.

It is no wonder why Plaintiff seeks to subvert numerous, well-settled areas of law instead of meaningfully engaging with CrossCountry's arguments. Instead of pleading a concrete injury, Plaintiff claims an injury is unnecessary—only a statutory violation with a "tendency" to injure. Instead of bringing a timely RESPA claim, Plaintiff requests that the *American Pipe* rule be expanded to toll the claims of those who were never part of a putative class. Instead of bringing a viable UDTPA claim, Plaintiff asserts that RESPA's preemption provision somehow enlarges state law beyond what state law itself authorizes. These arguments lack merit. The Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I. PLAINTIFF LACKS STANDING TO ASSERT ANY OF HIS CLAIMS, REQUIRING RULE 12(b)(1) DISMISSAL**

Plaintiff's Opposition does not meaningfully address the fact that the Amended Complaint fails to allege an overcharge and wholly ignores several of CrossCountry's arguments. Instead, Plaintiff claims that he is exempt from pleading a concrete injury because, according to him, "the

---

[1] All capitalized terms not otherwise defined here shall have the definitions ascribed to them in CrossCountry's memorandum in support of its motion to dismiss, ECF No. 20 ("Mot.").

standard for injury under *Baehr* is not actual overpayment by a plaintiff; it is a violation with even a *tendency* to increase the cost of settlement services." Opp. at 9 (emphasis in original). Plaintiff is incorrect. His theory that standing can be conferred simply by pleading a statutory violation that has a "tendency" to cause an injury is exactly the type of pleading that *Baehr* proscribes.

The *Baehr* plaintiffs lacked standing because their claims of a kickback scheme were "untethered from any evidence that [the kickback scheme] **increased settlement costs**[.]" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 250, 254 (4th Cir. 2020) (emphasis added). Although the *Baehr* plaintiffs—like Plaintiff here—alleged that defendant settlement service providers had an exclusive, kickback-funded referral arrangement, the absence of any resulting overcharge meant their claim was only a "statutory violation divorced from any real world effect," insufficient to confer standing. *Id.*; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016) (injury must be "concrete," "particularized," and must "actually exist"). Plaintiff's theory that he can plead an injury simply because he has alleged a kickback scheme is wrong, and none of Plaintiff's other authorities support his position. *See Brasko v. Howard Bank*, No. 1:20-CV-3489-SAG, 2022 WL 951771, at *3 (D. Md. Mar. 29, 2022) (stating only that a plaintiff need not show a "*particular* 'overcharge' for a *particular* settlement service") (emphasis added); *Wilson v. Eagle Nat'l Bank*, No. 8:20-CV-01344-JRR, 2023 WL 2478933, at *6, *7 (D. Md. Mar. 13, 2023) (finding that plaintiffs "presented corroborating evidence of overcharges" and stating, "importantly, in *Baehr*, the plaintiffs did not argue they were harmed by a settlement service overcharge").

Plaintiff's fallback argument, that he has adequately alleged an overcharge, fares even worse. The Opposition unsurprisingly cites no case permitting overcharge allegations as skeletal as Plaintiff's. Instead, it recycles the Amended Complaint's conclusory allegation that Plaintiff "would have been able to" obtain lower charges from another lender. Opp. at 11; AC ¶¶ 69-70, 80.

The Opposition now claims, inexplicably, that the Amended Complaint substantiates that allegation because it identifies "the mortgage amount and the loan-to-value ratio" of Plaintiff's loan with CrossCountry. Opp. at 10-11. But the Amended Complaint nowhere identifies the loan-to-value ratio. Even if it did, it is unclear why Plaintiff believes these figures support his overcharge allegations, which remain pure speculation. *Eichholz v. Wells Fargo Bank, NA*, No. 10-CV-13622, 2011 WL 5375375, *2 (E.D. Mich. Nov. 7, 2011) (RESPA claim dismissed where plaintiff "made an allegation without any specificity or factual support").

Plaintiff's reliance on the *Morris* decisions is also misplaced. Plaintiff concedes that there are "differences between the particular facts establishing harm to the *Morris* plaintiffs and those establishing his own harm," but he understates the gap. Opp. at 11. Even in *Morris I*, the *Morris* plaintiffs alleged, for example, that they had actually prequalified with another mortgage lender at a lower interest rate. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 WL 3029246, at *3 (E.D.N.C. Apr. 20, 2023). That prior prequalification was insufficient to plausibly allege an overcharge or injury, resulting in dismissal. *Id.* at *4. To survive dismissal in *Morris II*, the plaintiffs made specific allegations showing that their prequalification rate could have translated into an *actual* interest rate. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 WL 7003692, at *3 (E.D.N.C. Oct. 24, 2023). That required allegations identifying (1) the market fluctuations in mortgage interest rates during their search for a loan and (2) any changes to their financial status. *Id.* Plaintiff here merely speculates that he "would have been able to" obtain lower charges without identifying a prior prequalification or any other facts that could substantiate that claim. That falls well short of even the deficient allegations in *Morris I*.

But even if Plaintiff had adequately pled facts showing that he "would have been able to" receive lower charges from other lenders (he has not), the Opposition fails entirely to address

CrossCountry's arguments that that allegation—even taken as true—cannot confer standing. First, there cannot be an injury from the mere allegation that a mortgage lender does not charge the lowest rates of all its competitors. Mot. at 12-13; *Arthur v. Ticor Title Ins. Co. of Fla.*, 569 F.3d 154, 156 (4th Cir. 2009) ("RESPA is not a price-control statute"). Second, Plaintiff has failed to allege that his supposed injury was tied in any way to the Comarketing Agreement that constitutes the alleged kickback scheme. Mot. at 13. Plaintiff alleges only that his Raleigh Realty agent told him that Raleigh Realty "works with" CrossCountry, and has pled no facts to suggest that he was prevented from researching or using other lenders. AC ¶ 71. That renders Plaintiff's RESPA claim, at the very most, a "bare procedural violation, divorced from any concrete harm." *Baehr*, 953 F.3d at 252, 255-56. Plaintiff has failed to address these arguments and has thus conceded them. *Kettle v. Leonard*, No. 7:11-CV-189-BR, 2012 WL 4086595, at *5 (E.D.N.C. Sept. 17, 2012) (quotations and citations omitted) ("When a party does not address arguments raised by a movant, the court may treat those arguments as conceded.")

Plaintiff alleges no injury beyond the supposed overcharge, and the Opposition does not contend otherwise. Plaintiff, however, has not pled facts sufficient to show an overcharge, let alone one causally connected to the alleged kickback scheme. He therefore lacks standing to pursue RESPA, UDTPA, or civil-conspiracy claims, warranting dismissal under Rule 12(b)(1).

## II.    PLAINTIFF'S RESPA CLAIM FAILS UNDER RULE 12(b)(6)

### A.    Plaintiff's Untimely RESPA Claim Cannot Be Tolled Under *American Pipe.*

Plaintiff contends that the *American Pipe* rule should be fundamentally expanded to toll his untimely RESPA claim despite Plaintiff never being a member of any putative class. According to Plaintiff, straightforward application of the *American Pipe* rule, which limits tolling only to "asserted members of [a] class," amounts to "ignor[ing] the rationales undergirding *American Pipe*." *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974); Opp. at 8.

But Plaintiff ignores the rule. In *American Pipe*, "the Supreme Court remained highly sensitive to the need for certainty of a bright-line rule" because "statutes of limitations provide notice to…defendants as to a date after which they can rely that stale claims cannot be presented." *Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 212-13 (4th Cir. 2006). Unsurprisingly, Plaintiff has not provided a shred of support for his argument that a non-class member's claims can be tolled by *American Pipe*. *P&G*, the sole case cited by Plaintiff interpreting *American Pipe*, directly contradicts his own argument. *See P&G v. Stone Container Corp.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007). In *P&G*, the court **rejected** the idea that *American Pipe* tolling could toll the claims of plaintiffs who were not putative class members in a prior class action. *Id.* at 47. It was dispositive that the class definitions in the prior class action complaint "unambiguously restrict the scope of the class action to purchases made no later than November 30, 1995," despite the *P&G* plaintiffs' argument that other allegations in the prior class action complaint could support a larger class. *Id.* Plaintiff makes the same failed argument here, despite the unambiguous class definitions in *Morris* excluding him from membership in those classes. Mot. at 8. Plaintiff's RESPA claim is thus time-barred and should be dismissed.

**B.     Plaintiff Alleges No Comarketing Payments Outside RESPA's Carve-Out.**

RESPA § 2607 provides that "[n]othing in this section shall be construed as prohibiting…payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). Nowhere in the Amended Complaint or Opposition does Plaintiff state that CrossCountry did not receive the services that it paid for under the Comarketing Agreement, which are clearly laid out in Exhibit 1 to the Amended Complaint. AC Ex. 1 at 16.

Instead, Plaintiff dances around the inconvenient fact that CrossCountry obtained services under the Comarketing Agreement. Indeed, rather than meet his own pleading burden, Plaintiff attempts to invert it by claiming that "[n]owhere does the Amended Complaint allege that any

5

relevant services were 'actually performed'" and that "Defendants offer no evidence of services "actually performed[.]'" Opp. at 13. Needless to say, it is *Plaintiff's burden* to plausibly allege that services were not "actually performed"—a burden he has failed to meet. *Collins v. First Fin. Servs., Inc.*, No. 7:14-CV-288-FL, 2016 WL 589688, at *8 (E.D.N.C. Feb. 10, 2016) (dismissing RESPA claim because plaintiff "has not alleged any kickbacks [] between [codefendants] that were other than 'for services actually performed'").

Plaintiff also recycles the Amended Complaint's allegations that the services provided to CrossCountry had "no value." Opp. at 13. Tellingly, Plaintiff fails to acknowledge CrossCountry's argument that the ultimate value of the marketing services to CrossCountry is immaterial to RESPA's carve-out analysis. Mot. at 16. Rather, the analysis is whether CrossCountry's payments reasonably reflect the *market value* of the services it received. *Id.* Plaintiff has not alleged otherwise. *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *15 (D. Md. Aug. 1, 2014) (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable").

Plaintiff also requests leave to amend the Amended Complaint so he can allege that the reasonable market value of the services CrossCountry received "was zero." Opp. at 14 n.5. That amendment would be futile. Plaintiff has attached proof to the Amended Complaint of the several services CrossCountry received under the Comarketing Agreement. AC Ex. 1 at 16. Plaintiff cannot credibly claim that these services had a market value of "zero." Mot. at 16-17. Such an amendment, belied entirely by Plaintiff's other allegations and Ex. 1 to his Amended Complaint, should not be taken as true.[2] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250,

---

[2] Beyond the futility of this amendment, as explained in CrossCountry's Opening Brief, the Court should dismiss all of Plaintiff's claims with prejudice because the Amended Complaint fails to remedy any of the defects that CrossCountry identified in detail in its original motion to dismiss Plaintiff's initial Complaint. Mot. at 1 n.1; *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022); *Philogene v. Data*

253 (4th Cir. 2009) (the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments"). Plaintiff's RESPA claim should accordingly be dismissed.

## III. PLAINTIFF'S UDTPA CLAIM FAILS UNDER RULE 12(b)(6)

### A. Plaintiff's UDTPA Claim Does Not Apply To Pervasively Regulated Conduct.

Plaintiff does not contest the abundance of Fourth Circuit and North Carolina case law holding that the UDTPA does not apply to matters under pervasive and intricate regulation by other statutory schemes. Mot. at 18. Nor does he contest that the mortgage lending industry is under such pervasive and intricate regulation. *Id.* at 19. Instead, Plaintiff claims that RESPA's preemption provision, 12 U.S.C. § 2616, which provides that RESPA does not exempt compliance with state law in certain circumstances, should result in the UDTPA being expanded to apply to conduct already under extensive regulation. Opp. at 15.

Not so. While 12 U.S.C. § 2616 generally does not exempt CrossCountry's compliance with state law, the state law at issue (the UDTPA) *itself does not apply* to the conduct Plaintiff alleges. As the Fourth Circuit has recognized, "North Carolina courts have **refused to apply** the UDTPA to matters already under pervasive and intricate regulation." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016) (emphasis added) (quoting *Hagy v. Advance Auto Parts, Inc.*, No. 3:15-CV-509-RJC-DCK, 2016 WL 5661530, at *2 (W.D.N.C. Sept. 28, 2016); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274, 333 S.E.2d 236, 241 (1985)). This is not a matter of federal preemption, but proper application of North Carolina law. North Carolina courts hold that the UDTPA does not apply to matters under extensive regulation because "'the UDTPA's broad language and provision for treble damages' has led to its inclusion in 'in almost every complaint based on a commercial or consumer transaction in North

---

*Networks, Inc.*, No. PWG-17-1318, 2018 WL 1014929, at *2, *8 (D. Md. Feb. 21, 2018), *aff'd*, 728 F. App'x 214 (4th Cir. 2018).

Carolina.'" *Champion*, 845 F.3d at 110. Thus, a UDTPA claim is "inappropriate 'where there already exists an extensive regulatory regime to address the violations.'" *Id.*

RESPA's preemption provision is thus immaterial. This Court has already prohibited a UDTPA a claim against a mortgage lender that mirrored a Truth in Lending Act ("TILA") violation—a federal statute containing a preemption provision nearly identical to RESPA's. *Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 WL 8159532, at *2, *10 (E.D.N.C. Sept. 2, 2005); 15 U.S.C. § 1610(a)(1) (TILA does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions…").

Plaintiff's cited examples of "concurrent" RESPA and UDTPA claims do not help him. In *Zahran*, the plaintiff's RESPA claim was limited to the defendant's failure to respond to a Qualified Written Request under RESPA § 2605, while the plaintiff separately asserted that the defendant charged her false fees. *See Zahran v. Bank of Am., N.A.*, No. 3:20-CV-427-MOC-DSC, 2021 WL 2226491, at *1 (W.D.N.C. June 2, 2021). And, as Plaintiff correctly acknowledges, the issue of whether the conduct alleged by the *Morris* plaintiffs was subject to pervasive and intricate regulation was not before the Court.[3] Opp. at 16. Plaintiff's other cases, which do not even involve the UDTPA, also do not aid his argument. *See Shiflett v. Lakeview Loan Servicing, LLC*, No. 2:23-CV-00397-DJC-EFB, 2025 WL 603616 (E.D. Cal. Feb. 25, 2025); *Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 WL 1313492 (S.D.N.Y. Mar. 27, 2024).

Finally, Plaintiff's argument that his UDTPA claim is "not based solely on RESPA violations" because he alleges that his Raleigh Realty agent told him that Raleigh Realty "works with" CrossCountry misses the mark. Opp. at 16 (citing AC ¶ 71). Referrals by settlement service providers are clearly subject to pervasive and intricate regulation, including by RESPA, and this

---

[3] Nor is there any indication that the issue was raised in *Zahran* or *Tomlin*. 2021 WL 2226491; *Tomlin v. Dylan Mortgage Inc.*, 2000 NCBC 9, 2000 NCBC Lexis 11 (N.C. Super. June 12, 2000).

8

allegation is central to Plaintiff's RESPA claim. Mot. at 13. Plaintiff's references to other statutes and regulations governing mortgage lending, including with respect to kickbacks, only reinforces the fact that Plaintiff's UDTPA claim is improper. Opp. at 16 (referencing the SAFE Act and the N.C. Admin. Code's "anti-kickback restrictions") (citing AC ¶¶ 60-62, 64, 104, 107).

### B. Plaintiff Alleges No Unfair Or Deceptive Conduct

Plaintiff's UDTPA also fails because, as CrossCountry has explained in detail, Plaintiff has failed to allege conduct that is unfair or deceptive within the meaning of the UDTPA.[4] Mot. at 20-22. Plaintiff's Opposition confirms this.

Plaintiff repeatedly implies that a violation of RESPA or other statutes "may" be a *per se* violation of the UDTPA and that, even if it is not, such an alleged violation could "potentially" be relevant to a UDTPA claim. Opp. at 20. Plaintiff's qualifying language is telling; he has cited no authorities to suggest that an alleged violation of RESPA—or the other statutes and regulations he claims CrossCountry violated—can be a *per se* violation of the UDTPA.

Rather, "a violation of a statute or regulation does not constitute a per se UDTPA violation unless the statute or regulation 'specifically designates that a violation of the statute or regulation is also a violation of the UDTPA' or 'specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA.'" *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020) (violation of statute was not *per se* violation of UDTPA because "[i]t does not specifically define and proscribe 'unfair or deceptive acts or practices in or affecting

---

[4] Plaintiff claims that, because he does not allege a breach of contract, he need not plead "egregious or aggravating circumstances" to state a UDTPA claim. Opp. at 20. Plaintiff is wrong; courts routinely apply the "egregious or aggravating" requirement to non-contract UDTPA claims. *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015), *aff'd*, 674 F. App'x 250 (4th Cir. 2016) ("In all cases, the [UDTPA] only applies where egregious or aggravating circumstances are proved"); *Dalton v. Camp*, 353 N.C. 647, 658, 548 S.E.2d 704, 711 (2001).

commerce') (emphasis in original). Neither RESPA nor the other statutes and regulations cited by Plaintiff meet this standard, nor does Plaintiff argue otherwise.

Other than Plaintiff's '*per se* violation' argument, he points to the Comarketing Agreement and the allegation that his Raleigh Realty agent recommended CrossCountry to him. Opp. at 19 (citing AC ¶¶ 69-80). As CrossCountry has explained, these allegations cannot rise to the high level of "unfair or deceptive" conduct required to state a UDTPA claim. Mot. at 20-22. Plaintiff's own authorities demonstrate his failure to meet his stringent burden. Indeed, the vast majority of the UDTPA cases Plaintiff cites resulted in a finding ***in favor of the UDTPA defendant***.[5] Plaintiff's UDTPA claim should thus be dismissed.

## IV. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS UNDER RULE 12(b)(6)

Plaintiff's civil conspiracy claim should be dismissed for failure to allege an underlying RESPA or UDTPA claim. *See* Mot. at 23. Plaintiff does not argue otherwise.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

---

[5] *See See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 399 (4th Cir. 2018); *Bloss v. Gov't Emps. Ins. Co.*, No. 1:24CV536, 2025 WL 1068829, at *8 (M.D.N.C. Apr. 9, 2025); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 396, 403, 248 S.E.2d 739, 742, 745 (1978); *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 999 (E.D.N.C. 2015); *DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 273 N.C. App. 220, 235, 848 S.E.2d 552, 563 (2020); *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 898 (4th Cir. 1996); *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266, 266 S.E.2d 610, 623 (1980); *Walker v. Fleetwood Homes of N. Carolina, Inc.,* 362 N.C. 63, 70, 653 S.E.2d 393, 398 (2007); *In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*, 217 N.C. App. 199, 210, 719 S.E.2d 171, 178 (2011); *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting*, LLC, 2024 NCBC 46, 2024 NCBC LEXIS 99 ¶ 403; *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 2022-NCCOA-27, 281 N.C. App. 312, 321, 869 S.E.2d 34, 43 (2022).

This 19th day of November, 2025.

/s/ *Debra Bogo-Ernst*
Debra Bogo-Ernst
Illinois License No. 6271962
Nathan Pflaum
Illinois License No. 6346439
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Drive
Chicago, Illinois 60654
Tel: (312) 728-9062
Fax: (312) 728-9199
dernst@willkie.com
npflaum@willkie.com

*Lead Counsel for Defendant CrossCountry Mortgage, LLC, by Special Appearance Pursuant to Local Rule 83.1(e)*

/s/ *Clifton L. Brinson*
Clifton L. Brinson
NC State Bar No. 34331
Samantha B. Taylor
NC State Bar No. 564501
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27601
Tel: (919) 821-6605
Fax: (919) 821-6800
cbrinson@smithlaw.com
staylor@smithlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendant CrossCountry Mortgage, LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **REPLY IN SUPPORT OF CROSSCOUNTRY'S MOTION TO DISMISS** using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

This 19th day of November, 2025.

*/s/ Debra Bogo-Ernst*
Debra Bogo-Ernst