IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
No. 5:25-cv-00462-D-RN

| | |
|---|---|
| JEREMIAH VONBLOHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *v.* | ) **DEFENDANT RALEIGH** |
| | ) **REALTY INC.'S REPLY IN** |
| CROSSCOUNTRY MORTGAGE, | ) **SUPPORT OF ITS MOTION TO** |
| LLC, RALEIGH REALTY INC., | ) **DISMISS PLAINTIFF'S** |
| | ) **AMENDED COMPLAINT** |
| Defendants. | ) Fed. R. Civ. P. 12(b)(1) and 12(b)(6) |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………...………..7

ARGUMENT...........................................................................................................................8

I.     PLAINTIFF IS NOT EXEMPT FROM INJURY-IN-FACT REQUIREMENTS..8

II.    PLAINTIFF'S UNTIMELY RESPA CLAIM CANNOT BE TOLLED UNDER AMERICAN PIPE…………………………………………………………………...11

III.   PLAINTIFF ALLEGES NO COMARKETING PAYMENTS OUTSIDE OF RESPA'S CARVEOUT……………….……………………………………………..13

IV.  PLAINTIFF'S UDTPA CLAIM DOES NOT APPLY TO THE PERVASIVELY-REGULATED CONDUCT AT ISSUE…………………………………………….15

V.   PLAINTIFF ALLEGES NO OTHER UNFAIR OR DECEPTIVE CONDUCT...17

VI.  PLAINTIFF'S CAUSE OF ACTION FOR "CIVIL CONSPIRACY" FAILS ALONGSIDE THE CLAIMS ON WHICH IT DEPENDS…………………………..18

CONCLUSION.................................................................................................................…20

# **TABLE OF AUTHORITIES**

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)……………………………………………………………7, 11, 12

*Arthur v. Ticor Title Ins. Co. of Fla.*,
   569 F.3d 154 (4th Cir. 2009) ........................................................................... 11

*Baehr v. Creig Northrop Team, P.C.*,
   953 F.3d 244 (4th Cir. 2020)………..8, 9, 11

*Bloss v. Gov't Emps. Ins. Co.*,
   No. 1:24CV536, 2025 LX 148380 (M.D.N.C. Apr. 9, 2025) .............................. 18

*Brasko v. Howard Bank*,
   No. 1:20-CV-3489-SAG, 2022 U.S. Dist. LEXIS 57627 (D. Md. Mar. 29, 2022) 9

*Bridges v. Dep't of Maryland State Police*,
   441 F.3d 197 (4th Cir. 2006) ........................................................................... 12

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*,
   845 F.3d 104 (4th Cir. 2016)….15, 16

*Collins v. First Fin. Servs., Inc.*,
   No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322 (E.D.N.C. Feb. 10, 2016) 13

*Cross v. Ciox Health, LLC*,
   438 F. Supp. 3d 572 (E.D.N.C. 2020) .............................................................. 18

*Dalton v. Camp*,
   353 N.C. 647, 548 S.E.2d 704 (2001) ............................................................. 17

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
   2022-NCCOA-27, 281 N.C. App. 312, 869 S.E.2d 34 (2022) .......................... 18

*DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*,
   273 N.C. App. 220, 848 S.E.2d 552 (2020) ..................................................... 18

*Eichholz v. Wells Fargo Bank, NA*,
   No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455 (E.D. Mich. Nov. 7, 2011)....9

*Elliott v. Am. States Ins. Co.*,
   883 F.3d 384 (4th Cir. 2018) ........................................................................... 18

*Exclaim Mktg., LLC v. DirecTV, LLC*,
  134 F. Supp. 3d 1011 (E.D.N.C. 2015)……………………………………..…17

*In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*,
  217 N.C. App. 199, 719 S.E.2d 171 (2011)……………………………………..18

*Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*,
  80 F.3d 895 (4th Cir. 1996)……………………………………………………18

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
  38 N.C. App. 393, 248 S.E.2d 739 (1978)………………………………………18

*Johnson v. Phoenix Mut. Life Ins. Co.*,
  300 N.C. 247, 266 S.E.2d 610 (1980)……………………………………………18

*Kettle v. Leonard*,
  No. 7:11-CV-189-BR, 2012 U.S. Dist. LEXIS 132205 (E.D.N.C. Sept. 17,
  2012)……………………………………………………………………………11

*Morris v. CrossCountry Mortg., LLC*,
  No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 (E.D.N.C. Apr. 20,
  2023)……………………………………………………………………………..9

*Morris v. CrossCountry Mortg., LLC*,
  No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 190304 (E.D.N.C. Oct. 24,
  2023)……………………………………………………………………..……..10

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009)……………………………………………………...14

*P&G v. Stone Container Corp.*,
  504 F. Supp. 2d 38 (E.D. Pa. 2007)……………………………………………12

*Register v. N. Sun Hous. & Dev., Inc.*,
  No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759 (E.D.N.C. Sept. 2, 2005)..15

*Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*,
  2024 NCBC LEXIS 99…………………………………………………………18

*Renois v. WVMF Funding, LLC*,
  No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891 (S.D.N.Y. Mar. 27,
  2024)……………………………………………………………...……………16

*Shiflett v. Lakeview Loan Servicing, LLC*,
  No. 2:23-CV-00397-DJC-EFB, 2025 LX 105252 (E.D. Cal. Feb. 25, 2025)…..16

*Sparks v. Oxy-Health, LLC*,
    134 F. Supp. 3d 961 (E.D.N.C. 2015)...............................................................................18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................................8

*Walker v. Fleetwood Homes of N. Carolina, Inc.*,
    362 N.C. 63, 653 S.E.2d 393 (2007) ..............................................................................18

*Willis v. Bank of Am. Corp.*,
    No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 (D. Md. Aug. 1, 2014) ...............................................................................................................................13

*Wilson v. Eagle Nat'l Bank*,
    No. 8:20-CV-01344-JRR, 2023 U.S. Dist. LEXIS 42588 (D. Md. Mar. 13, 2023) ...................................................................................................................................................8

*Zahran v. Bank of Am., N.A.*,
    No. 3:20-CV-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087 (W.D.N.C. June 2, 2021)…………………………………………………………………………..15, 16

Statutes

15 U.S.C. § 1610(a)(1)...............................................................................................................15

12 U.S.C. § 2605........................................................................................................................15

12 U.S.C. § 2607........................................................................................................................12

12 U.S.C. § 2616........................................................................................................................14

North Carolina Unfair and Deceptive Trade Practices Act
    N.C. Gen. Stat. § 75-1.1, *et seq.* ("UDTPA")…………………………………*passim*

Real Estate Settlement Procedures Act
    12 U.S.C. § 2607, *et seq.* ("RESPA")……………………………………………*passim*

# PRELIMINARY STATEMENT

Plaintiff filed his Amended Complaint in response to numerous pleading deficiencies identified by Defendant CrossCountry Mortgage, LLC ("CrossCountry) in its original Motion to Dismiss. (ECF No. 16). Plaintiff's brief in opposition to Defendants' motions to dismiss his Amended Complaint (ECF No. 23) makes clear that, despite availing himself of the opportunity to replead, Plaintiff has not and cannot cure these deficiencies. With respect to Plaintiff's RESPA claim, Plaintiff still fails to allege any concrete injury connected to the Raleigh Realty and CrossCountry's Comarketing Agreement, and even if Plaintiff had alleged concrete injury, the claim is time-barred, and also falls within RESPA's statutory carve-out for services actually performed. With respect to Plaintiff's UDTPA claim covering the same allegations, the conduct in question is already governed by a pervasive regulatory regime (RESPA), and otherwise fails to meet the stringent pleading standards for unfair and deceptive conduct. Finally, Plaintiff's free-standing claim for "civil conspiracy," really a theory of liability, adds nothing, and is wholly dependent on the Plaintiff's fatally-defective RESPA and UDTPA claims.

Instead of meaningfully engaging with Defendants' arguments in his response brief, Plaintiff seeks to subvert well-established law: According to Plaintiff, it does not matter whether Plaintiff suffered a concrete injury—all that matters is a statutory violation with a "tendency" to injure. Nor does it matter that Plaintiff failed to bring a timely RESPA claim—the Court simply should expand the *American Pipe* rule to toll the claims of a Plaintiff who was never a part of a putative class. Nor does

it matter that state law precludes UDTPA claims for conduct covered by RESPA—RESPA's preemption provision somehow enlarges state law beyond what state law itself authorizes.

As further discussed below, none of these novel arguments has merit, and Plaintiff's Amended Complaint should be dismissed with prejudice.[1]

## ARGUMENT

### I. PLAINTIFF IS NOT EXEMPT FROM INJURY-IN-FACT REQUIREMENTS.

Plaintiff's brief does not meaningfully address the fact that the Amended Complaint fails to allege any overcharge, and wholly ignores several of Defendants' arguments. Instead, Plaintiff claims that he is exempt from pleading a concrete injury because, according to him, "the standard for injury under *Baehr* is not actual overpayment by a plaintiff; it is a violation with even a *tendency* to increase the cost of settlement services." (Pl.'s Br. in Opp. at 9) (emphasis in original).

Plaintiff's theory that standing can be conferred simply by pleading a statutory violation that has a "tendency" to cause an injury is exactly the type of pleading rejected by the Court in *Baehr*. The *Baehr* plaintiffs lacked standing because their claims of a kickback scheme were "untethered from any evidence that [the kickback scheme] ***increased settlement costs***[.]" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 250, 254 (4th Cir. 2020) (emphasis added).

---

[1] All capitalized terms used but not defined herein shall have the definitions ascribed to them in Raleigh Realty's memorandum in support of its motion to dismiss. (ECF No. 22).

Although the *Baehr* plaintiffs—like Plaintiff here—alleged that defendant settlement service providers had an exclusive, kickback-funded referral arrangement, the absence of any resulting overcharge meant their claim was only a "statutory violation divorced from any real world effect," insufficient to confer standing. *Id.*; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016) (injury must be "concrete," "particularized," and must "actually exist"). Plaintiff's contention that the mere allegation of a kickback scheme is sufficient to plead concrete injury is simply wrong, and also wholly unsupported by the other authorities Plaintiff cites. *See Brasko v. Howard Bank*, No. 1:20-CV-3489-SAG, 2022 U.S. Dist. LEXIS 57627, at *7 (D. Md. Mar. 30, 2022) (stating only that a plaintiff need not show a "*particular* 'overcharge' for a *particular* settlement service") (emphasis added); *see also Wilson v. Eagle Nat'l Bank*, No. 8:20-CV-01344-JRR, 2023 U.S. Dist. LEXIS 42588, at *21,*18 (D. Md. Mar. 13, 2023) (finding that plaintiffs "presented corroborating evidence of overcharges" and stating, "importantly, in *Baehr*, the plaintiffs did not argue they were harmed by a settlement service overcharge").

Without the law on his side, Plaintiff hedges, arguing that an allegation identifying "the mortgage amount and the loan-to-value ratio" of Plaintiff's loan with CrossCountry is tantamount to an actual overcharge allegation. (Pl.'s Br. in Opp. at 10-11). But the Amended Complaint nowhere identifies the loan-to-value ratio. Even if it did, it is unclear why Plaintiff believes these figures support his overcharge allegations, which remain purely speculative. *See Eichholz v. Wells*

*Fargo Bank, NA*, No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455, at *7-8 (E.D. Mich. Nov. 7, 2011) (RESPA claim dismissed where plaintiff "made an allegation without any specificity or factual support").

Plaintiff's reliance on the *Morris* decisions is also misplaced. Plaintiff concedes that there are "differences between the particular facts establishing harm to the *Morris* plaintiffs and those establishing his own harm," but he understates the significance of those differences. (Pl.'s Br. in Opp. at 11). Even in *Morris I*, the *Morris* plaintiffs alleged, for example, that they had *actually* prequalified with another mortgage lender at a lower interest rate. *See Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431, at * 2 (E.D.N.C. Apr. 19, 2023). That prior prequalification was insufficient to plausibly allege an overcharge or injury, resulting in dismissal. *Id.* at *9. To survive dismissal in *Morris II*, the plaintiffs made specific allegations showing that their prequalification rate could have translated into an *actual* interest rate. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 190304, at *7-8 (E.D.N.C. Oct. 23, 2023). That required allegations identifying (1) the market fluctuations in mortgage interest rates during their search for a loan and (2) any changes to their financial status. *Id.*

Here, Plaintiff merely speculates that he "would have been able to" obtain lower charges without identifying a prior prequalification or any other facts that could substantiate that claim. This falls well short of even the deficient allegations in *Morris I*. Plaintiff's "would have been able to"—even taken as true—cannot

confer standing. First, there cannot be an injury from the mere allegation that a mortgage lender does not charge the lowest rates of all its competitors. (Def.'s Br. in Supp. at 13-16); *Arthur v. Ticor Title Ins. Co. of Fla.*, 569 F.3d 154, 156 (4th Cir. 2009) ("RESPA is not a price-control statute"). Second, Plaintiff has failed to allege that his supposed injury was tied in any way to the Comarketing Agreement that constitutes the alleged kickback scheme. (Def.'s Br. in Supp. at 18-19). Plaintiff alleges only that his Raleigh Realty agent told him that Raleigh Realty "works with" CrossCountry; Plaintiff has pled no facts to suggest that he was prevented from researching or using other lenders. (AC ¶ 71). At most, these RESPA allegations, taken as true, amount to a "bare procedural violation, divorced from any concrete harm." *Baehr*, 953 F.3d at 252, 255-56. Plaintiff fails to address these arguments, and thus concedes them. *Kettle v. Leonard*, No. 7:11-CV-189-BR, 2012 U.S. Dist. LEXIS 132205, at *15 (E.D.N.C. Sept. 17, 2012) (quotations and citations omitted) ("When a party does not address arguments raised by a movant, the court may treat those arguments as conceded.").

Accordingly, because Plaintiff has not pled facts sufficient to show an overcharge, let alone one causally connected to the alleged kickback scheme, Plaintiff lacks standing to pursue any of his RESPA, UDTPA, or "civil conspiracy" claims, warranting dismissal of all under Rule 12(b)(1).

## II.  PLAINTIFF'S UNTIMELY RESPA CLAIM CANNOT BE TOLLED UNDER *AMERICAN PIPE*.

Plaintiff contends that the *American Pipe* rule should be expanded to toll his untimely RESPA claim despite Plaintiff never being a member of any putative

class. According to Plaintiff, straightforward application of the *American Pipe* rule, which limits tolling only to "asserted members of [a] class," amounts to "ignor[ing] the rationales undergirding *American Pipe*." (Pl.'s Br. in Opp. at 8); *see American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974). In doing so, Plaintiff both ignores the rule and its actual "undergirding" rationale.

In *American Pipe*, "the Supreme Court remained highly sensitive to the need for certainty of a bright-line rule" because "statutes of limitations provide notice to [. . .] defendants as to a date after which they can rely that stale claims cannot be presented." *Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 212-13 (4th Cir. 2006). Plaintiff has not provided a shred of support for his argument, turning the bright-line rule on its head, that a non-class member's claims can be tolled by *American Pipe*. In fact, *P&G*, the sole case cited by Plaintiff interpreting *American Pipe*, directly contradicts Plaintiff's own argument. *See P&G v. Stone Container Corp.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007). In *P&G*, the court **rejected** the idea that *American Pipe* tolling could toll the claims of plaintiffs who were not putative class members in a prior class action. *Id.* at 47. The court there found it to be dispositive that the class definitions in the prior class action complaint "unambiguously restrict the scope of the class action to purchases made no later than November 30, 1995," despite the *P&G* plaintiffs' argument that other allegations in the prior class action complaint could support a larger class. *Id.* Plaintiff makes the same failed argument here, despite the unambiguous class definitions in *Morris* excluding him from membership in those classes. (Pl.'s Br. in

Opp. at 8).

Plaintiff's RESPA claim is thus also time-barred, and should be dismissed too under Rule 12(b)(6) for this reason.

## III. PLAINTIFF ALLEGES NO COMARKETING PAYMENTS OUTSIDE OF RESPA'S CARVE-OUT.

RESPA § 2607 provides that "[n]othing in this section shall be construed as prohibiting [. . .] payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2).

Nowhere in Plaintiff's Amended Complaint or opposition brief does Plaintiff claim that Raleigh Realty failed to receive the services that it paid for under the Comarketing Agreement, which are clearly laid out in Exhibit 1 to the Amended Complaint. (AC Ex. 1 at 16). Instead, Plaintiff goes to great lengths to avoid the inconvenient fact that Raleigh Realty and CrossCountry, the parties to the Comarketing Agreement, actually obtained services under the Comarketing Agreement. So far from even *attempting* to meet his own pleading burden, *see Collins v. First Fin. Servs., Inc.*, No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322, at *22 (E.D.N.C. Feb. 10, 2016) (dismissing RESPA claim because plaintiff "has not alleged any kickbacks [] between [codefendants] that were other than 'for services actually performed'"), Plaintiff tries to flip it on its head, arguing that "Defendants offer no evidence of services "actually performed[.]'" (Pl.'s Br. in Opp. at 13). Plaintiff's RESPA claim should fail for this reason alone.

Recycling allegations from the Amended Complaint, Plaintiff argues that services provided under the Comarketing Agreement had "no value[.]" (Pl.'s Br. in

12

Opp. at 13). As Defendants have argued, however, the ultimate value of the marketing services provided under the Comarketing Agreement is immaterial to RESPA's carve-out analysis. (Def.'s Br. in Supp. at 21-23). Rather, the applicable analysis is whether payments made under the Comarketing Agreement reasonably reflect the *market value* of the services received. *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339, at *44-45 (D. Md. Aug. 1, 2014) (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable"). Plaintiff's Amended Complaint offers no case-specific allegations as to whether the compensation for services under the Comarketing Agreement was reasonable or unreasonable, and fails for this reason, too.

Finally, Plaintiff requests that, to the extent his allegations regarding the Comarketing Agreement remain insufficient to avoid RESPA's carve-out, the Court allow him to further amend his Amended Complaint so he can allege that the reasonable market value of the services received under the Comarketing Agreement "was zero." (Pl.'s Br. in Opp. at 14 n.5.). That amendment, however, would be futile: Plaintiff has attached proof to the Amended Complaint of the several services rendered under the Comarketing Agreement. (AC Ex. 1 at 16). Plaintiff thus cannot credibly claim that these services had a market value of "zero." Such further amendment, belied entirely by Plaintiff's other allegations and Exhibit 1 to his Amended Complaint, need not and should not be taken as

true.[2] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments").

## IV. PLAINTIFF'S UDPTA CLAIM DOES NOT APPLY TO THE PERVASIVELY-REGULATED CONDUCT AT ISSUE.

Plaintiff does not contest the abundance of Fourth Circuit and North Carolina case law holding that the UDTPA does not apply to matters subject to pervasive and intricate regulation by other statutory schemes. (*See* Def.'s Br. in Supp. at 24-26). Nor does he contest that the mortgage lending industry is subject to such pervasive and intricate regulation. (*See id.*). Instead, Plaintiff claims that RESPA's preemption provision, 12 U.S.C. § 2616, which provides that RESPA does not exempt compliance with state law in certain circumstances, should result in the UDTPA being expanded to apply to conduct already under extensive regulation. (Pl.'s Br. in Opp. at 15).

In doing so, Plaintiff asks the Court to interpret 12 U.S.C. § 2616 to effectively create state law where there is none, a power neither Congress nor federal courts possess. While 12 U.S.C. § 2616 generally does not exempt Defendants' compliance with existing state law, the state law at issue (the UDTPA) *itself does not apply* to the conduct Plaintiff alleges. As the Fourth Circuit has recognized, "North Carolina courts have **refused to apply** the UDTPA to matters already under pervasive and intricate regulation." *Champion Pro*

---

[2] Beyond the futility of this amendment, as explained in Defendants' opening briefs, the Court should dismiss all of Plaintiff's claims with prejudice because the Amended Complaint fails to remedy any of the defects that CrossCountry identified in its original motion to dismiss Plaintiff's initial Complaint.

*Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016) (emphasis added) (quoting *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274, 333 S.E.2d 236, 241 (1985)). In other words, this is *not* a matter of federal preemption, but of proper application of North Carolina law. North Carolina courts hold that the UDTPA does not apply to matters under extensive regulation because "'the UDTPA's broad language and provision for treble damages' has led to its inclusion in 'in almost every complaint based on a commercial or consumer transaction in North Carolina.'" *Champion*, 845 F.3d at 110. Thus, a UDTPA claim is "inappropriate 'where there already exists an extensive regulatory regime to address the violations.'" *Id.*

RESPA's preemption provision is thus immaterial. This Court has already prohibited a UDTPA a claim against a mortgage lender that mirrored a Truth in Lending Act ("TILA") violation—a federal statute containing a preemption provision nearly identical to RESPA's. *See Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759, at *31-33 (E.D.N.C. Sept. 2, 2005); *see also* 15 U.S.C. § 1610(a)(1) (TILA does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions[.]").

Plaintiff's examples of "concurrent" RESPA and UDTPA claims do not help him. In *Zahran*, the plaintiff's RESPA claim was limited to the defendant's failure to respond to a Qualified Written Request under RESPA § 2605, while the plaintiff separately asserted that defendant charged her false fees. *See Zahran v. Bank of*

*Am., N.A.*, No. 3:20-CV-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087, at *1 (W.D.N.C. June 2, 2021). As Plaintiff correctly acknowledges, the issue of whether the conduct alleged by the *Morris* plaintiffs was subject to pervasive and intricate regulation was never before the Court.[3] (Pl.'s Br. in Opp. at 16). Nor do Plaintiff's other cases, which do not even involve the UDTPA, aid his argument. *See Shiflett v. Lakeview Loan Servicing, LLC*, No. 2:23-CV-00397-DJC-EFB, 2025 LX 105252 (E.D. Cal. Feb. 25, 2025); *Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891 (S.D.N.Y. Mar. 27, 2024).

Finally, Plaintiff's argument that his UDTPA claim is "not based solely on RESPA violations" in that Plaintiff alleges that his Raleigh Realty agent told him that Raleigh Realty "works with" CrossCountry misses the mark. (Pl.'s Br. in Opp. at 16 ). Referrals by settlement service providers are clearly subject to pervasive and intricate regulation, including by RESPA, and this allegation is central to Plaintiff's RESPA claim. (Def.'s Br. in Supp. at 28). Plaintiff's references to other statutes and regulations governing mortgage lending, including with respect to kickbacks, only reinforces the fact that Plaintiff's UDTPA claim is improper. (Pl.'s Br. in Opp. at 16).

## V. PLAINTIFF ALLEGES NO OTHER UNFAIR OR DECEPTIVE CONDUCT.

Nor, as Defendants have explained in detail and as confirmed in Plaintiff's brief in opposition, has Plaintiff alleged other conduct that is unfair or deceptive

---

[3] Nor, for that matter, is there any indication that this issue was raised in *Zahran*.

within the meaning of the UDTPA.[4] (Def.'s Br. in Supp. at 26-29). Plaintiff repeatedly implies that a violation of RESPA or other statutes "may" be a *per se* violation of the UDTPA and that, even if it is not, such an alleged violation could "potentially" be relevant to a UDTPA claim. (Pl.s Br. in Opp. at 20). Plaintiff's qualifying language is telling: He has not and cannot cite any authority to suggest that an alleged violation of RESPA—or the other statutes and regulations he claims Defendants violated—can constitute a *per se* violation of the UDTPA.

To the contrary, "a violation of a statute or regulation does not constitute a *per se* UDTPA violation unless the statute or regulation 'specifically designates that a violation of the statute or regulation is also a violation of the UDTPA' or 'specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA.'" *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020) (violation of statute was not *per se* violation of UDTPA because "[i]t does not specifically define and proscribe 'unfair or deceptive acts or practices in or affecting commerce') (emphasis in original). Neither RESPA nor the other statutes and regulations cited by Plaintiff meet this standard, nor does Plaintiff argue otherwise.

Beyond Plaintiff's equivocal (and erroneous) '*per se* violation' argument,

---

[4] Plaintiff claims that, because he does not allege a breach of contract, he need not plead "egregious or aggravating circumstances" to state a UDTPA claim. (Pl.'s Br. in Opp. at 20). Plaintiff is wrong; courts routinely apply the "egregious or aggravating" requirement to UDTPA claims involving no breach of contract allegations. *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015), *aff'd*, 674 F. App'x 250 (4th Cir. 2016) ("In all cases, the [UDTPA] only applies where egregious or aggravating circumstances are proved"); *Dalton v. Camp*, 353 N.C. 647, 658, 548 S.E.2d 704, 711 (2001).

Plaintiff points to the Comarketing Agreement and the allegation that his Raleigh Realty agent recommended CrossCountry to him to save his UDTPA claim. (Pl.'s Br. in Opp. at 19). As Defendants have explained, these allegations cannot rise to the high level of "unfair or deceptive" conduct required to state a UDTPA claim. (Def.'s Br. in Supp. at 26-29). Plaintiff's own authorities demonstrate his failure to meet his stringent burden: the vast majority of the UDTPA cases Plaintiff cites resulted in a finding ***in favor of the UDTPA defendant***.[5] Plaintiff's UDTPA claim should thus be dismissed.

## VI. PLAINTIFF'S CAUSE OF ACTION FOR "CIVIL CONSPIRACY" FAILS ALONGSIDE THE CLAIMS ON WHICH IT DEPENDS.

Plaintiff's freestanding cause of action for "civil conspiracy" should be dismissed as a theory liability entirely dependent on Plaintiff's fatally defective RESPA and UDTPA claims. (*See* Def.'s Br. in Supp. at 29). Plaintiff does not argue otherwise.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

---

[5] *See See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 399 (4th Cir. 2018); *Bloss v. Gov't Emps. Ins. Co.*, No. 1:24CV536, 2025 LX 148380, at *23-26 (M.D.N.C. Apr. 9, 2025); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 396, 403, 248 S.E.2d 739, 742, 745 (1978); *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 999 (E.D.N.C. 2015); *DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 273 N.C. App. 220, 235, 848 S.E.2d 552, 563 (2020); *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 898 (4th Cir. 1996); *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266, 266 S.E.2d 610, 623 (1980); *Walker v. Fleetwood Homes of N. Carolina, Inc.,* 362 N.C. 63, 70, 653 S.E.2d 393, 398 (2007); *In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*, 217 N.C. App. 199, 210, 719 S.E.2d 171, 178 (2011); *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting*, LLC, 2024 NCBC 46, 2024 NCBC LEXIS 99 ¶ 403; *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 2022-NCCOA-27, 281 N.C. App. 312, 321, 869 S.E.2d 34, 43 (2022).

This the 21st day of November, 2025.

        PARRY LAW, PLLC

        /s/ Jonah A. Garson

        K. Alan Parry
        N.C. State Bar No. 31343
        Jonah A. Garson
        N.C. State Bar No. 55547
        100 Europa Drive, Ste 351
        Chapel Hill, NC 27517
        (919) 913-3320
        kap@parryfirm.com
        jag@parryfirm.com

19

Case 5:25-cv-00462-D-RN    Document 25    Filed 11/21/25    Page 19 of 20

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document is filed with the Court's CM/ECF filing system which effectuates service upon all parties having appeared in this matter.

This the 21st day of November, 2025.

/s/ Jonah A. Garson