IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:25-cv-462-D-RN

| | | |
|---|---|---|
| JEREMIAH VONBLOHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT CROSSCOUNTRY** |
| | ) | **MORTGAGE, LLC'S ANSWER AND** |
| CROSSCOUNTRY MORTGAGE, LLC, | ) | **DEFENSES TO PLAINTIFF'S AMENDED** |
| and RALEIGH REALTY INC. | ) | **COMPLAINT** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Defendant CrossCountry Mortgage, LLC (hereinafter referred to as "Defendant" or "CrossCountry"), by and through the undersigned counsel, hereby answers the Amended Complaint filed by Plaintiff Jeremiah VonBlohn ("Plaintiff") and asserts the defenses stated herein. To the extent any allegations are not expressly admitted, they are denied.

## I. INTRODUCTION.

1. This action arises out of, *inter alia*, Defendants' violations of RESPA, which prohibits "kickbacks" and other "unearned fees." *See generally* 12 U.S.C. § 2607.

**ANSWER:** Defendant denies that Defendants violated RESPA. The remaining allegations of Paragraph 1 state legal conclusions to which no response is required. Defendant further states that 12 U.S.C. § 2607 speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 1.

2. RESPA was enacted to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2) (emphasis added). Its purpose is to provide consumers "with greater and more timely information on the nature and costs of the settlement process" so they may be "protected from unnecessarily high settlement charges caused by certain abusive practices." *Id*. § 2601(a).

**ANSWER:** The allegations of Paragraph 2 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that 12 U.S.C. § 2601(b)(2) and 12 U.S.C. § 2601(a) speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 2.

3. *Settlement services* include "any service provided in connection with a real estate settlement," including those "rendered by a real estate agent[;] the origination of a federally related mortgage loan[;] the handling of processing, and closing or settlement[;]" closing costs on a home purchase; costs associated with the application, processing, underwriting, and funding involved in the origination of a mortgage; and costs of the interest paid on the mortgage by the homebuyer. 12 U.S.C. § 2602(3).[1] These services and costs are governed by RESPA.[2]

**ANSWER:** The allegations of Paragraph 3 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that 12 U.S.C. § 2602(3) and the cases cited to speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 3, including the footnote referenced therein.

4. In pertinent part, RESPA expressly disallows the acceptance of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

**ANSWER:** The allegations of Paragraph 4 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that 12 U.S.C.

---

[1] *See, e.g., Schmitz v. Aegis Mortg. Corp.*, 48 F.Supp.2d 877, 881 (D. Minn. 1999) ("Total compensation to a [mortgage] broker includes direct origination and other fees paid by the borrower, indirect fees, including those that are derived from the interest rate paid by the borrower, or a combination of some or all" (quoting RESPA Statement of Policy 1999–1 re: Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10084 (Mar. 1, 1999)) (emphasis added)).
[2] In RESPA and colloquially, licensed real estate professionals are interchangeably called "agents" and "brokers." For clarity, this Complaint refers to licensed real estate professionals as "agents," and licensed mortgage professionals as "brokers."

§ 2607(a) speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 4.

5.  Consequently, a settlement-service provider "who agrees to pay a monetary referral fee that is not tied in any respect to a charge paid by a particular consumer," like "a 'retainer' agreement pursuant to which the provider pays a monthly lump sum in exchange for the recipient's agreement to refer any business that comes his way," would violate RESPA § 2607(a). *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012).

**ANSWER:**  The allegations of Paragraph 5 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that the case cited to speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 5.

6.  Defendants systematically and unlawfully exchanged fees, kickbacks, and other things of value pursuant to an agreement between CrossCountry and Raleigh Realty, with respect to Raleigh Realty's referral of its homebuyer clients to CrossCountry for services related to real estate-settlement services involving federally related mortgage loans.

**ANSWER:**  Defendant denies the allegations of Paragraph 6.

7.  Specifically, CrossCountry, by and through agreements consummated by its Executive Vice President Charles Shackelford, made recurring improper payments (*i.e.*, "kickbacks" or "unearned fees" (*see* 12 U.S.C. § 2607)) to Raleigh Realty (and other realty companies) disguised as payments for legitimate services. These payments have a tendency to increase settlement costs to consumers, including Plaintiff, unnecessarily.

**ANSWER:**  Defendant denies the allegations of Paragraph 7.

8.  As a result of Defendants' unlawful agreement and their resulting actions, Plaintiff was steered toward federally-related mortgage loans from CrossCountry, resulting in concrete injury by the payment of both excessive closing fees and interest rates in excess of what he would have been charged by CrossCountry's competitors in the market.

**ANSWER:**  Defendant denies the allegations of Paragraph 8.

## II.  THE PARTIES.

9.  Plaintiff Jeremiah VonBlohn is a natural person who received and paid for residential realty services from Raleigh Realty for the purchase of real property located at 8613 Vanburgh Court, Raleigh, Wake County, North Carolina (the "Property"). He is a resident of North Carolina and has been so at all times described in this Complaint.

**ANSWER:** Defendant admits that Plaintiff obtained a mortgage from CrossCountry to secure the purchase of a property located at 8613 Vanburgh Court in Raleigh, North Carolina in Wake County (the "Property"). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and, on that basis, denies them.

10. Plaintiff obtained a mortgage loan from CrossCountry for the purchase of the Property and granted a security interest in the Property to Cross Country via a deed of trust.

**ANSWER:** Defendant admits the allegations of Paragraph 10.

11. Defendant CrossCountry Mortgage, LLC, is a Delaware limited-liability company with its principal office in Cleveland, Ohio. CrossCountry provides mortgage-lending and -origination services to residential homebuyers across the United States. CrossCountry maintains a branch in Raleigh, North Carolina, led by branch manager Corey Walker and supervised by executive vice president Chuck Shackelford.

**ANSWER:** Defendant admits that it is a Delaware limited-liability company with its principal place of business in Cleveland, Ohio. Defendant further admits that it is a retail mortgage lender operating in the United States. Defendant further admits that it has a branch location in Raleigh, North Carolina, and that Corey Walker is an Originating Branch Manager in Raleigh, North Carolina. Defendant further admits that Chuck Shackelford has the title of Executive Vice President. To the extent Paragraph 11 makes other factual allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 and, on that basis, denies them.

12. Mr. Shackelford and Mr. Walker are both employees and agents of Defendant CrossCountry and were acting within the course and scope of their employment and agency at all times and with respect to all actions relevant to this action.

**ANSWER:** Defendant admits that Mr. Walker is employed by Defendant as an Originating Branch Manager and that Mr. Shackelford is employed by Defendant as an Executive Vice President. The remaining allegations of Paragraph 12 state legal conclusions to which no response

is required. To the extent the allegations are intended to be factual, Defendant denies the remaining

allegations of Paragraph 12.

13. Defendant Raleigh Realty Inc. (*f/k/a* Raleigh Realty, LLC) is a North Carolina corporation and real estate agency specializing in representing residential homebuyers and sellers. Its principal office is located at 2474 Walnut Street, Unit No. 248, in Cary, North Carolina. Its owner and president is Ryan Fitzgerald.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 13 and, on that basis, denies them.

14. As Defendant Raleigh Realty's owner and president, Mr. Fitzgerald is an agent of Raleigh Realty and was acting within the course and scope of his agency at all times and with respect to all actions relevant to this action.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 14 and, on that basis, denies them.

### III. JURISDICTION & VENUE.

15. The foregoing allegations are incorporated by reference and realleged herein.

**ANSWER:** Defendant adopts and incorporates by reference its responses to paragraphs 1

through 14 as its response to Paragraph 15.

16. *Subject-Matter Jurisdiction.* This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331; and supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

**ANSWER:** The allegations of Paragraph 16 state legal conclusions to which no response is

required. To the extent the allegations are intended to be factual, Defendant denies the allegations

in Paragraph 16.

17. *Personal Jurisdiction.* This Court has personal jurisdiction over Defendants because both are registered to do business in North Carolina, and both conduct considerable business within North Carolina. Additionally, Plaintiff is a natural person and resident of North Carolina and virtually all the alleged violations giving rise to this action occurred in North Carolina.

**ANSWER:** The allegations of Paragraph 17 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant denies the allegations in Paragraph 17.

18. *Venue.* Venue is proper under 28 U.S.C. § 1391. Both Defendants conduct business in this District, Plaintiff resides in this District, the Property is in this District, and a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** The allegations of Paragraph 18 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant denies the allegations in Paragraph 18.

## IV.  FACTUAL ALLEGATIONS.

19. The foregoing allegations are incorporated by reference and realleged herein.

**ANSWER:** Defendant adopts and incorporates by reference its responses to paragraphs 1 through 18 as its response to Paragraph 19.

### Background on Charles Shackelford

20. Mr. Shackelford is an Executive Vice President of CrossCountry.

**ANSWER:** Defendant admits the allegations of Paragraph 20.

21. Mr. Shackelford has a team of people who work directly for him in seven branches across the country, including in at least two locations in North Carolina (Raleigh and Wilmington).

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 and, on that basis, denies them.

22. Mr. Shackelford has been sued individually on at least two separate occasions regarding alleged improprieties at previous banks in which he was a loan officer.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 and, on that basis, denies them.

**Background on CrossCountry's Marketing Arrangements.**

**23.**     Mortgage companies use at least two types of marketing arrangements with realty companies: (a) Marketing Services Agreements ("MSAs") and (b) Co-Marketing Agreements.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 concerning the marketing arrangements of mortgage companies generally, as mortgage company practices can vary across jurisdictions and companies, and, on that basis, denies them. Defendant denies any remaining allegations in Paragraph 23.

**24.**     When an MSA is used by a mortgage company, it pays a realty company preset amounts in exchange for marketing services such as displaying the mortgage company's marketing materials on its website and at their physical locations.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 concerning the marketing arrangements of mortgage companies generally and, on that basis, denies them. Defendant denies any remaining allegations in Paragraph 24.

**25.**     An MSA is permissible under RESPA only if: (1) "it is structured and implemented consistently as an agreement for the performance of actual marketing services[;]" and (2) "the payments under the MSA are reasonably related to the value of the services performed." Consumer Financial Protection Bureau ("CFPB"), *FAQs – RESPA Section 8: Marketing Services Agreements*, (Oct. 7, 2020) (citing 12 U.S.C. § 2607(c)(2); 12 C.F.R. § 1024.14(g)(1)(iv), (g)(2)).[3]

**ANSWER:**     The allegations of Paragraph 25 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that 12 U.S.C. § 2607(c)(2), and 12 C.F.R. § 1024.14(g)(1)(iv), (g)(2) speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 25.

---

[3]     *See*     https://www.consumerfinance.gov/compliance/compliance-resources/mortgage-resources/real-estate-settlement-procedures-act/real-estate-settlement-procedures-act-faqs/#respa-section-8-marketing-services-agreements-msas.

**26.** An MSA, like any other agreement or contract, including the below-described Co-Marketing Agreements, is <u>not</u> permissible where the surrounding facts and circumstances demonstrate that "the MSA as structured, or the parties' implementation of the MSA—in form or substance[,] including as a matter of course of conduct—involves" any action that "violates the prohibitions [of] RESPA [§§ 2607(a) or (b)]." *Id.* Specifically, agreements involving "payments for referrals are prohibited under [RESPA]." *Id.*

**ANSWER:** The allegations of Paragraph 26 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that RESPA §§ 2607(a) and (b) speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 26.

**27.** Co-Marketing Agreements involve CrossCountry and the realty company jointly sharing the expenses of a joint marketing effort. For example, CrossCountry and the realty company can jointly elect to advertise on websites like Facebook, Zillow, or realtor.com.

**ANSWER:** Defendant admits that a co-marketing agreement between two companies may involve the sharing the expenses of a joint marketing effort, depending upon the structure of the arrangement. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 and, on that basis, denies them. Defendant denies any remaining allegations in Paragraph 27.

**28.** A Co-Marketing Agreement functions similarly to an MSA and is subject to the same provisions of RESPA, particularly those regarding payments conditioned on referrals. *See Co-Marketing Tips for Following RESPA Rules*, Nat'l Ass'n of Realtors Mag. (Nov. 1, 2018).[4]

**ANSWER:** The allegations of Paragraph 28 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that RESPA and the referenced magazine article speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 28.

---

[4] *See* https://www.nar.realtor/magazine/live/co-marketing-tips-for-following-respa-rules.

**29.** Settlement service providers can exchange payments "for goods, facilities, or services provided as long as the price is reasonable and not based on referral business," and co-marketing parties must continue to "monitor whether the [agreed-upon] services are actually being performed[;]" in other words, both parties "must [be] able to verify that the work is actually being done" pursuant to their agreement and in line with RESPA. *Id*.

**ANSWER:** The allegations of Paragraph 29 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that RESPA speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 29.

**30.** CrossCountry and the realty agency would enter into a co-marketing arrangement that, at least on the face of a written contract appears to be lawful. In practice, however, and as more fully explained below, the unlawful pay-to-play requirement has been common among co-marketing arrangements in which Mr. Shackelford is involved. CrossCountry and the realty agency agree in advance on an amount of payment in return for exclusive referrals to CrossCountry based upon the number of expected referrals. The pay-to-play relationship is established *before* any written contract is executed. The co-marketing arrangement is simply a cover for the pre-existing unlawful agreement.

**ANSWER:** Defendant denies the allegations in Paragraph 30.

**31.** CrossCountry maintained policies for approval of vendors with whom it could use for co-marketing, and it is extremely challenging for new vendors to be approved if they are not already on CrossCountry's approved-vendor list.

**ANSWER:** Defendant admits that it has robust internal processes regarding the approval of vendors for certain co-marketing agreements. Defendant denies the remaining allegations of Paragraph 31.

**32.** However, CrossCountry was willing to ignore these policies when necessary; particularly when it involved Mr. Shackelford's team.

**ANSWER:** Defendant denies the allegations of Paragraph 32.

**33.** For example, and more thoroughly alleged below, between February and March 2021, Defendants entered into an unlawful Co-Marketing Agreement under which CrossCountry would pay Raleigh Realty for referrals of Raleigh Realty's homebuyer clients seeking a mortgage, resulting in a "pay-to-play" scheme operating in direct violation of RESPA. *See* 12 U.S.C. § 2601(b).

**ANSWER:** Defendant denies the allegations of Paragraph 33.

**Defendants' Unlawful Agreement**

**34.**     In February 2021, Mr. Fitzgerald and various CrossCountry employees—including Mr. Walker and Mr. Shackelford—began to discuss the terms and expectations for an agreement between the two entities.

**ANSWER:**     Defendant admits that in February 2021, Mr. Fitzgerald, Mr. Walker, and Mr. Shackelford discussed a potential business relationship between CrossCountry and Raleigh Realty. Defendant denies any remaining allegations of Paragraph 34.

**35.**     Ultimately it was agreed that CrossCountry would pay $15,000.00 per month to Raleigh Realty. From the beginning it was understood that the Defendants intended to engage in a "pay-to-play" scheme based on referrals with Raleigh Realty—an arrangement far outside the boundaries of RESPA's requirements and CrossCountry's policy. Mr. Shackelford told Mr. Fitzgerald around this time that he expected an average kickback of about $500 for each referral.

**ANSWER:**     Defendant denies the allegations of Paragraph 35.

**36.**     Mr. Fitzgerald understood that Raleigh Realty clients would comply with its directions to use Cross Country as their mortgage provider. In fact, on February 15, 2021, Raleigh Realty told Mr. Shackelford that Raleigh Realty had begun referring all of its clients needing mortgages to CrossCountry in anticipation of a kickback deal. This practice had begun months earlier and gradually ramped up, all in anticipation of the illicit deal.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 36 and, on that basis, denies them. Defendant denies the remaining allegations of Paragraph 36.

**37.**     Within hours, Mr. Shackelford responded to Mr. Fitzgerald, asking him to fill out documents that were necessary to paper the arrangement to give an appearance of compliance with laws and regulations on RESPA compliance.

**ANSWER:**     Defendant denies the allegations of Paragraph 37.

**38.**     By that time, the two companies had a deal in that CrossCountry would compensate Raleigh Realty for the referrals. Specifically, on information and belief, Mr. Shackelford on behalf of CrossCountry and Mr. Fitzgerald on behalf of Raleigh Realty, specifically agreed on February 15, 2021, that CrossCountry would pay $15,000 a month to cover Raleigh Realty's marketing costs in exchange for an exclusive referral arrangement.

**ANSWER:**     Defendant denies the allegations of Paragraph 38.

Case 5:25-cv-00462-BO-RN     Document 30     Filed 07/21/26     Page 10 of 33

**39.** Before drafting a formal co-marketing agreement with Raleigh Realty, Mr. Shackelford specifically intended to expedite CrossCountry's process of vetting and approving it, also demonstrating Defendants' intent to finalize an agreement that circumvents RESPA and company policy.

**ANSWER:** Defendant denies the allegations of Paragraph 39.

**40.** Under the deal's final terms, CrossCountry agreed to pay $15,000 to cover at least one-half of Raleigh Realty's monthly payments to Page One Power LLC ("Page One Power"), a digital marketing company specializing in search engine optimization. *See* Page One Power Contract, attached as Exhibit 1.

**ANSWER:** Defendant admits that Page One Power LLC is a digital marketing company that provides search engine optimization services. Defendant states that Exhibit 1 of the Amended Complaint speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations of Paragraph 40.

**41.** Mr. Shackelford, as he did in other circumstances, expedited or circumvented the process by which co-marketing vendors were generally approved by CrossCountry's marketing department. For this particular deal, Mr. Shackelford took this proposal straight to top CrossCountry executives. CrossCountry marketing managers who customarily review co-marketing agreements warned the company' executives that the expedited procedure circumvented company policy and violated RESPA. (*Id.*).

**ANSWER:** Defendant denies the allegations of Paragraph 41.

**42.** Nonetheless, Defendants' agreement was executed on April 12, 2021, and was incorporated into the contract[5] with Page One Power via an "Addendum for Vendor Investment Inclusions." (*See* Ex. 1).

**ANSWER:** Defendant admits that the agreement titled Addendum for Vendor Investment Inclusions attached as Exhibit 1 to the Amended Complaint purports to show that it was signed on April 12, 2021. Defendant further states that Exhibit 1 of the Amended Complaint speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

---

[5] Raleigh Realty originally contracted with Page One Power in January 2021. (*See* Ex. 1).

allegations in the footnote of Paragraph 42 and, on that basis, denies them. Defendant denies any remaining allegations of Paragraph 42.

**43.** Under the agreement, each Defendant (represented by Mr. Fitzgerald and Mr. Shackelford, respectively) was to pay $15,000 for Page One Power's services to Raleigh Realty. (*Id*.).

**ANSWER:** Defendant states that Exhibit 1 of the Amended Complaint speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations of Paragraph 43.

**44.** In return for CrossCountry's $15,000 contribution, Raleigh Realty was to ostensibly provide various "web marketing services"; however, the reality is that the remuneration was agreed upon in advance and the "marketing services" were simply window-dressing provided for plausible deniability.

**ANSWER:** Defendant states that Exhibit 1 of the Amended Complaint speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies all remaining allegations in Paragraph 44.

**45.** Thereafter, CrossCountry began making monthly payments under Defendants' agreement, but not as reimbursements sent to Raleigh Realty—instead, CrossCountry received and paid each monthly invoice for $15,000 directly from and to Page One Power.

**ANSWER:** Defendant admits that it received invoices from Page One Power under the Addendum for Vendor Investment Inclusions, and Defendant paid certain of those invoices. Defendant denies the remaining allegations of Paragraph 45.

**46.** Upon information and belief, Defendants' agreement operated without significant monitoring or oversight—including any monthly documentation proving both parties' adherence to the agreement—from either Defendant for more than one year, also in knowing violation of CrossCountry's co-marketing guidelines. CrossCountry realized no marketing benefit of any actual value from the Page One Power co-marketing agreement, even though marketing services are mentioned in the contract. Rather, the sole benefit it received for its $15,000 was the exclusive referrals from Raleigh Realty.

**ANSWER:** Defendant denies the allegations of Paragraph 46.

**47.** Pursuant to Defendants' agreement, Mr. Fitzgerald continuously instructed and required Raleigh Realty agents to exclusively use CrossCountry to provide the mortgage financing that their clients would inevitably need.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 and, on that basis, denies them.

48. Upon information and belief, Defendant Raleigh Realty employs approximately thirty agents who represent and guide homebuyers through the real estate market, evaluating their options, negotiating purchases, and facilitating the closing on the sale of a property.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and, on that basis, denies them.

49. As owner and president of Raleigh Realty, Mr. Fitzgerald possesses and exercises significant control over Raleigh Realty agents' representation of homebuyers. Thus, in furtherance of Defendants' agreement, Raleigh Realty strictly enforced a requirement upon its agents to exclusively refer, compel, and otherwise direct all buyers to CrossCountry for mortgage lending services.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 and, on that basis, denies them.

50. Specifically, Mr. Fitzgerald continually told all Raleigh Realty agents that CrossCountry's Corey Walker "needs to be the only lender we [Raleigh Realty] are recommending;" and any agent who refused to unlawfully induce his or her clients to use CrossCountry was "taking money out of the entire company's pocket" or "my pockets." (*See below* (emphasis added)).



**ANSWER:** Defendant states that the unauthenticated screenshots speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 concerning the practices of Mr. Fitzgerald or Raleigh Realty and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 50.

51. Mr. Fitzgerald threatened that, if he were to "see" any Raleigh Realty agents not exclusively referring clients to CrossCountry by, for example, "recommending [an agent's] friend lenders" to their clients, he would retaliate by depriving those agents of future leads. Because real estate agents work exclusively on commission, Mr. Fitzgerald's repeated threats to withhold leads were tantamount to threats to terminate the agents' livelihoods.

**ANSWER:** Defendant states that the unauthenticated screenshots speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51 concerning the practices of Mr. Fitzgerald or Raleigh Realty and, on that basis, denies the allegations. Defendant denies the remaining allegations in Paragraph 51.

52. Agents employed by Raleigh Realty were in fact reprimanded, suspended, and otherwise disciplined by Mr. Fitzgerald when they provided their homebuyer clients with mortgage information from other mortgage brokers.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 concerning Mr. Fitzgerald's conduct and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 52.

53. Mr. Fitzgerald's words and conduct enacted a requirement upon Raleigh Realty agents to refer all their homebuyer clients to CrossCountry in order to abide by the agreement with CrossCountry and receive the unlawful kickbacks or referral fees.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53 concerning Mr. Fitzgerald's words and conduct and, on that basis, denies the allegations. Defendant specifically denies any allegations regarding kickback payments by CrossCountry to Raleigh Realty and denies all remaining allegations in Paragraph 53.

**54.** Mr. Shackelford put similar pressure on Raleigh Realty, telling Mr. Fitzgerald that he should not allow Raleigh Realty agents to use any mortgage company other than Cross Country, whether Corey Walker or different Cross Country personnel.

**ANSWER:** Defendant denies the allegations of Paragraph 54.

**55.** In or around May 2022, Mr. Shackelford noticed a downturn in Raleigh Realty's referrals and complained to Mr. Fitzgerald that Raleigh Realty had been failing to meet a minimum expectation of fifteen deals a month and threatening to cut the amount of the monthly $15,000 payment by roughly half.

**ANSWER:** Defendant denies the allegations of Paragraph 55.

**56.** CrossCountry ultimately terminated its agreement with Raleigh Realty because it concluded that the numbers of referrals were insufficient for the $15,000 monthly kickback to Raleigh Realty.

**ANSWER:** Defendant admits that CrossCountry terminated the April 12, 2021 Addendum for

Vendor Investment Inclusions. Defendant denies the remaining allegations in Paragraph 56.

**57.** As demonstrated by the foregoing, Defendants' agreement was not formed, executed, or operated as a proper co-marketing agreement under the applicable law, including RESPA.

**ANSWER:** Defendant denies the allegations of Paragraph 57.

**58.** From the very beginning, Mr. Shackelford and Mr. Fitzgerald—notwithstanding cover stories and pretenses—plainly circumvented CrossCountry's internal policies that were aimed at ensuring compliance with RESPA, and in doing so enacted an agreement that, in practice, operated as a "pay-for-play" scheme based on referrals in direct violation of RESPA.

**ANSWER:** Defendant denies the allegations of Paragraph 58.

**59.** Defendants' violations of RESPA are also violations of corollary North Carolina laws and regulations for mortgage brokers and real estate agents.

**ANSWER:** Defendant denies the allegations of Paragraph 59.

**60.** By violating RESPA, CrossCountry, a mortgage broker engaging in the mortgage business, and its agents and associates violated the Secure and Fair Enforcement Mortgage Licensing Act, N.C.G.S. §§ 53-244.010 – 53-244.121 (the "SAFE Act").

**ANSWER:** Defendant denies the allegations of Paragraph 60.

**61.** The primary purpose of the SAFE Act "is to protect consumers seeking mortgage loans and to ensure that the mortgage lending industry operates without unfair, deceptive, and

fraudulent practices on the part of mortgage loan originators," like CrossCountry. N.C. Gen. Stat. § 53-244.010(a).

**ANSWER:** The allegations of Paragraph 61 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that N.C. Gen. Stat. § 53-244.010(a) speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 61.

62. In violation of the SAFE Act, CrossCountry and its brokers and associates:

   a. Failed to "comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing," N.C.G.S. § 53-244.111(14);

   b. Failed to "make reasonable efforts to secure a loan…reasonably advantageous to [Plaintiffs] considering all the circumstances, including the rates, charges, and repayment terms of the loan," N.C. Gen. Stat. § 53-244.109(4);

   c. Failed to "timely and clearly disclose to [Plaintiffs] material information…expected to influence [her] decision" and was "reasonably accessible to [CrossCountry], including the total compensation [CrossCountry expected] to receive from any and all sources in connection with each loan option presented," N.C. Gen. Stat. § 53-244.109(5);

   d. Failed to "represent [Plaintiffs'] best interest in the course of brokering a mortgage loan," N.C. Gen. Stat. § 53-244.109(10);

   e. Willfully engaged in a "transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the brokering or making or servicing of" a mortgage loan, N.C.G.S. § 53-244.111(8); and

   f. Breached their duty of loyalty to Plaintiff, including the "duty not to compromise [Plaintiffs'] right or interest in favor of another's right or interest," including CrossCountry and Raleigh Realty's right or interest. N.C.G.S. § 53-244.109(11).

**ANSWER:** Defendant denies the allegations of Paragraph 62, including all subparts.

63. Similarly, by violating RESPA, Raleigh Realty and its agents and associates also violated the North Carolina Administrative Code for the Real Estate Commission and licensed real-estate agents. *See generally* 21 NCAC 58A .0101 *et seq.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Raleigh Realty, its agents and associates of Paragraph 63 and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 63.

64. Pursuant to the Code, Raleigh Realty, a real estate broker under N.C. Gen. Stat. § 93A-2(a), is prohibited from "accept[ing] any fee, kickback or other valuable consideration that is prohibited by [RESPA]." 21 NCAC 58A .0109(i).

**ANSWER:** The allegations of Paragraph 64 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that the cited statutes speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 64 concerning Raleigh Realty specifically and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 64.

## PLAINTIFF'S FACTUAL ALLEGATIONS.

65. Here, Plaintiff bore increased costs for settlements services caused by Defendants' agreement, including but not limited to a higher interest rate, higher closing costs, and higher ongoing payments for the life of the loan.

**ANSWER:** Defendant denies the allegations of Paragraph 65.

66. Had Plaintiff been able to fully consider his options in the mortgage market, he would have paid less for settlement services. Defendants deprived their clients of the benefits of impartial and fair competition in the mortgage market, which ultimately resulted in clients—including Plaintiff—paying amounts in excess of what he would have otherwise paid. For Plaintiff, such deprivation constitutes real harm with adverse effects that will continue for the life of the loan.

**ANSWER:** Defendant denies the allegations of Paragraph 66.

67. Plaintiff engaged Raleigh Realty in connection with his intent to buy a home in or near north Raleigh. Plaintiff was a client of Raleigh Realty from October 2021 until his closing on November 15, 2022. Plaintiff was represented by Ayana Barnes, a Raleigh Realty agent who at the time worked for Raleigh Realty exclusively.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 67 and, on that basis, denies the allegations.

**68.** Plaintiff had a relevant credit score of 795 in late October 2022 when he applied to Cross Country Mortgage for a mortgage loan.

**ANSWER:** Defendant denies the allegations of Paragraph 68.

**69.** Based on that score, on the terms of the loan, and on the state of mortgage markets on the date of his application, he would have been able to obtain a 30-year fixed-rate loan with an interest rate of 6.75% or lower.

**ANSWER:** Defendant denies the allegations in Paragraph 69.

**70.** Based on that score, on the terms of the loan, and on the state of mortgage markets on the date of his application, he would have been able to obtain an adjustable-rate loan with an initial interest rate of 6.625% or lower and with other terms comparable to those of the mortgage Plaintiff obtained from CrossCountry Mortgage.

**ANSWER:** Defendant denies the allegations in Paragraph 70.

**71.** Plaintiff did not know this at the time, because in fall 2021 Ms. Barnes instructed Plaintiff that Raleigh Realty works with CrossCountry Mortgage and recommended CrossCountry Mortgage but no other lenders. On information and belief, Ms. Barnes gave this recommendation at the instruction of Ryan Fitzgerald, who had begun to prepare the illicit deal with CrossCountry. Plaintiff complied with Ms. Barnes's instructions and sought a mortgage from CrossCountry exclusively.

**ANSWER:** Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 as to Ms. Barnes's communications with Plaintiff and, on that basis, denies them. Defendant denies all remaining allegations of Paragraph 71.

**72.** The representations about CrossCountry were made at the explicit direction and instruction of Mr. Fitzgerald in furtherance of the kickback scheme described above and plainly had the tendency to increase unnecessarily the costs for Plaintiff's settlement services.

**ANSWER:** Defendant denies any allegations regarding a kickback scheme and any allegation or implication that CrossCountry engaged in conduct that "had the tendency to increase unnecessarily the costs for Plaintiff's settlement services." Defendant further states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 concerning Mr. Fitzgerald's conduct and, on that basis, denies the allegations. Defendant denies the remaining allegations in Paragraph 72.

73. In or around late October 2022, Plaintiff made an offer to purchase and entered into a Purchase Agreement for the Property. The purchase price was $450,000. The closing date was set for November 15, 2022.

**ANSWER:** Defendant admits that Plaintiff purchased the Property and that the sale price for the Property as listed on Plaintiff's Closing Disclosure form for his mortgage loan was $450,000. Defendant further admits that Plaintiff's closing date as listed on Plaintiff's Closing Disclosure form for his mortgage loan was November 15, 2022. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73 and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 73.

74. CrossCountry originated a 30-year, adjustable-rate mortgage ("ARM") for Plaintiff. The amount of the mortgage was $360,000, such that it covered certain closing costs. The initial interest rate on this ARM is 6.75%. The rate can adjust beginning in November 2027. It is tied to the Secured Overnight Financing Rate ("SOFR") as measured by the Federal Reserve Bank of New York. Specifically, it is to be 3 percentage points higher than the 30-day average of the SOFR. The first adjustment is limited to 2 percentage points. Subsequent adjustments occur every six months and are limited to 1 percentage point.

**ANSWER:** Defendant states that Plaintiff's deed of trust and note with CrossCountry speak for themselves as to their contents, and Defendant denies any characterizations contrary thereto. Defendant denies any remaining allegations of Paragraph 74.

75. These terms were fixed approximately one month prior to closing and held through closing.

**ANSWER:** Defendant admits that the interest rate on Plaintiff's loan was subject to a rate lock instituted on or around October 25, 2022. To the extent Paragraph 75 makes further factual allegations, Defendant denies them.

76. These terms are considerably less favorable for Plaintiff than the terms for which he would have qualified had Raleigh Realty not steered him to CrossCountry.

**ANSWER:** Defendant denies the allegations of Paragraph 76.

77. If Plaintiff had borrowed $360,000 with an initial rate of 6.625%, instead of 6.75%, the monthly mortgage payment would have been approximately $30 lower. The difference over the first 60 months of the loan amounts to $1,800.

**ANSWER:** Defendant denies the allegations in Paragraph 77.

78. Moreover, CrossCountry Mortgage offered Plaintiff the ARM without properly advising him that adjustable-rate loans are risky for borrowers. Such loans are risky in that dramatic swings in market interest rates can force a borrower into default, entailing enormous fees and potential loss of the home, if the borrower's income or other sources of funds do not increase commensurately during the same time period.

**ANSWER:** Defendant denies the allegations of Paragraph 78.

79. Finally, Plaintiff was required to pay a "loan origination fee" of $995 to Defendant CrossCountry Mortgage.

**ANSWER:** Defendant admits that Plaintiff agreed to pay a loan origination fee of $995 as part

of obtaining his mortgage loan. Defendant denies any remaining allegations in Paragraph 79.

80. If Plaintiff had been encouraged to shop around, he would have been able to borrow from a mortgage lender that charged a lower "loan origination fee" or none at all.

**ANSWER:** Defendant denies the allegations of Paragraph 80.

81. Plaintiff would have paid far less in fees and interest if he had had the opportunity to shop around for different mortgages. Having been tied into CrossCountry Mortgage, Plaintiff had no choice but to pay these additional costs. To be clear, Plaintiff would not have paid these excessive amounts but for Defendants' unlawful arrangement.

**ANSWER:** Defendant denies the allegations of Paragraph 81.

82. Given the high level of trust that Plaintiff and other consumers place in real estate agents when buying a home, Raleigh Realty steered Plaintiff toward CrossCountry despite the disadvantageous interest rate over the life of the loan and the increased settlement costs.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 82 concerning the practices of Raleigh Realty and, on that basis,

denies the allegations. Defendant denies the remaining allegations in Paragraph 82.

83. The words and actions of Raleigh Realty, its owners, and its agents were intended to have and did have the effect of affirmatively inducing Plaintiff's selection of CrossCountry as his mortgage lender regardless of whether CrossCountry would have been the most choice most beneficial to Plaintiff.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 concerning the practices of Raleigh Realty and, on that basis, denies the allegations. Defendant denies the remaining allegations in Paragraph 83.

84. The unlawful kickbacks and business referral fees exchanged between Defendants have the tendency to increase – and actually have increased unnecessarily – the costs of settlement services to Plaintiff, causing real harm with adverse effects including higher interest rates, higher closing costs, and higher costs continuing through the life of the loan.

**ANSWER:** Defendant denies the allegations of Paragraph 84.

85. Plaintiff closed on the Property on November 15, 2022, on terms described above. To secure the mortgage, CrossCountry caused a deed of trust to be recorded on that date with the Wake County Register of Deeds, in Book 19198 at pages 2321 to 2323.

**ANSWER:** Defendant admits that Plaintiff's Closing Disclosure form states that he closed on the Property on November 15, 2022. Defendant further admits that Plaintiff's deed of trust states that it was recorded on November 15, 2022 with the Wake County Register of Deeds, in Book 019198. Defendant denies the remaining allegations of Paragraph 85.

86. All below claims are brought timely. Any applicable statute of limitations either has not expired or was tolled by the filing of *Morris v. CrossCountry Mortgage et al*, No. 5:22-cv-00336-D (E.D.N.C.). The complaint in that action asserted class claims including RESPA violations stemming from the same conduct alleged herein. *Morris* was filed on August 25, 2022, and was dismissed with prejudice by stipulation on June 24, 2025, with all class claims still pending.

**ANSWER:** The allegations of Paragraph 86 state legal conclusions to which no response is required. To the extent the allegations are intended to be factual, Defendant states that the case cited to speaks for itself as to its contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 86.

**V.      CAUSES OF ACTION.**

**FIRST CAUSE OF ACTION**
**Violation of Real Estate Settlement Procedures Act ("RESPA"),**
**12 U.S.C. § 2607, *et seq.***

87. The foregoing allegations are incorporated by reference and realleged herein.

**ANSWER:** Defendant adopts and incorporates by reference its responses to paragraphs 1 through 86 as its response to Paragraph 87.

88. Plaintiff was represented by Raleigh Realty from October 2021 until the closing on February 22, 2022. His agent was Ms. Thibault.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88 concerning the specifics about the representation of Plaintiff by Raleigh Realty and, on that basis, denies them. Defendant denies any remaining allegations of Paragraph 88.

89. In or around January 2022, Plaintiff made an offer to purchase a home located at 8613 Vanburgh Court, Raleigh, Wake County, North Carolina. The sale price of the home was $450,000. Plaintiff sought a mortgage to fulfill the Purchase Agreement.

**ANSWER:** Defendant admits that Plaintiff purchased the property located at 8613 Vanburgh Court in Raleigh, North Carolina in Wake County and that the sales price for the Property was $450,000. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 89 and, on that basis, denies the allegations. Defendant denies any remaining allegations in Paragraph 89.

90. By and through its agents, Raleigh Realty compelled Plaintiff to choose CrossCountry as his mortgage lender, resulting in a higher interest rate and closing costs that Plaintiff would not have paid but for Defendants' unlawful arrangement.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 90 concerning Raleigh Realty's actions and, on that basis, denies them. Defendant denies the remaining allegations in Paragraph 90.

91. By and through its agents, Raleigh Realty directed, impelled, and affirmatively influenced Plaintiff's selection of a real estate settlement service provider: Defendant CrossCountry.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 concerning Raleigh Realty's actions and, on that basis, denies them. Defendant denies the remaining allegations in Paragraph 91.

92. Defendants executed and enforced an agreement and understanding that Raleigh Realty's agents would exclusively refer their clients to CrossCountry brokers for mortgage origination services in exchange for CrossCountry's payment of thousands of dollars per month.

**ANSWER:** Defendant denies the allegations of Paragraph 92.

93. From CrossCountry's perspective, the benefit of this arrangement was a stable and regular supply of persons currently in need of a residential loan to purchase a home. From Raleigh Realty's perspective, the benefit of this arrangement was a steady stream of monetary compensation. However, these "benefits" were to CrossCountry and Raleigh Realty alone.

**ANSWER:** Defendant denies the allegations of Paragraph 93.

94. Through an unlawful kickback and business referral arrangement with Raleigh Realty (and any other realtors), CrossCountry unfairly competed with other mortgage companies that complied with federal laws prohibiting kickbacks.

**ANSWER:** Defendant denies the allegations of Paragraph 94.

95. Moreover, such unfair competition directly and concretely injures consumers, including Plaintiff, because it tends to increase settlement costs, and actually *has* increased settlement costs for Plaintiff and others.

**ANSWER:** Defendant denies the allegations of Paragraph 95.

96. Plaintiff has been injured as a direct result of being unlawfully deprived of any meaningful choice in selecting his own mortgage lender. As a result, Plaintiff will continuously be made to overpay tens of thousands of dollars in interest over the life of his mortgage, as well as increased settlement costs.

**ANSWER:** Defendant denies the allegations of Paragraph 96.

97. The arrangement and payments were intentional, unlawful, and violate RESPA's express terms.

**ANSWER:** Defendant denies the allegations of Paragraph 97.

98. Plaintiff has standing to sue pursuant to RESPA, 12 U.S.C. § 2607(d)(2), because he has been injured by Defendants' arrangement and agreement consisting of illegal referral payments and kickbacks related to real estate settlement services involving a federally related mortgage loan.

**ANSWER:** Defendant denies the allegations of Paragraph 98.

**99.** Defendants are jointly and severally liable to Plaintiff and in an amount equal to three times the amount of any charge for settlement services paid by her, together with the costs of this action and reasonable attorney fees.

**ANSWER:** Defendant denies the allegations of Paragraph 99.

### SECOND CAUSE OF ACTION
**Violation of the Unfair or Deceptive Trade Practices Act**
**N.C.G.S. § 75-1.1, *et seq.***

**100.** The foregoing allegations are incorporated by reference and realleged herein.

**ANSWER:** Defendant adopts and incorporates by reference its responses to paragraphs 1 through 99 as its response to Paragraph 100.

**101.** The actions and conduct of Defendants CrossCountry and Raleigh Realty, delineated above, constitute unfair or deceptive acts or practices in or affecting commerce in violation of the UDTPA.

**ANSWER:** Defendant denies the allegations of Paragraph 101.

**102.** Defendants' actions, pattern of conduct, practices, and willful disregard of applicable North Carolina law and the well-being of consumers, including Plaintiff, constitute unfair and/or deceptive acts or practices in violation of the UDTPA.

**ANSWER:** Defendant denies the allegations of Paragraph 102.

**103.** CrossCountry violated the UDTPA by employing unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to Raleigh Realty homebuyer clients pursuant to the unlawful agreement between Defendants.

**ANSWER:** Defendant denies the allegations of Paragraph 103.

**104.** Plaintiff's claims for unfair and deceptive trade practices against CrossCountry include but are not limited to:

**a.** Undertaking actions which CrossCountry knew, or should have known, offend well-established public policy, federal and state law, and federal and state banking law and were otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, including Plaintiff;

**b.** Employing unfair and deceptive measures to collect or attempt to collect amounts, fees, and other expenses relating to providing settlement services and mortgage loans to consumers, including Plaintiff;

c. Employing a system, policies, and procedures for procuring clients, providing mortgage lending services, and providing settlement services to Plaintiff and other consumers which, under North Carolina law, are unfair, deceptive, and misleading, and not permitted by public policy;

d. Employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods, with the explicit knowledge that such conduct was in violation of applicable North Carolina law, including the SAFE Act;

e. Executing and implementing an unlawful agreement with Raleigh Realty to institute unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to consumers, including Plaintiff, to his detriment;

f. Remitting kickback payments to Raleigh Realty in exchange for unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services;

g. Knowingly enabling Raleigh Realty's unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services Raleigh Realty's clients, including Plaintiff;

h. Knowingly enabling Raleigh Realty's violations of RESPA and corollary North Carolina laws and regulations designed to protect North Carolina consumers, including Plaintiff; and

i. Proximately causing economic injuries to Plaintiff.

**ANSWER:** Defendant admits that Plaintiff purports to bring a lawsuit alleging various claims.

Defendant denies all remaining allegations of Paragraph 104, including its subparts, and

specifically denies any and all allegations of wrongdoing.

105. Upon information and belief, all CrossCountry's unfair and deceptive conduct, representations, and omissions alleged herein are pursuant to policies, practices, and procedures created, adopted, and implemented for all of its business with Raleigh Realty.

**ANSWER:** Defendant denies the allegations of Paragraph 105.

106. Raleigh Realty violated the UDTPA by employing unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services to its homebuyer clients pursuant to the unlawful agreement between Defendants.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106 concerning Raleigh Realty's actions and, on that basis, denies the allegations. Defendant denies the remaining allegations in Paragraph 106.

107. Plaintiff's claims for unfair and deceptive trade practices against Raleigh Realty include but are not limited to:

   a. Undertaking actions which Raleigh Realty knew or should have known to offend well-established public policy, federal and state law, and federal and state banking law and were otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers such as Plaintiff;

   b. Employing unfair and deceptive measures to collect or attempt to collect amounts, fees, and other expenses relating to providing real estate agency and brokerage services to consumers, including Plaintiff;

   c. Employing a system, policies, and procedures for assisting homebuyer clients in securing financing for purchasing a home, procuring mortgage services for clients, and providing settlement services to Plaintiff and other consumers which, under North Carolina law, are unfair, deceptive, and misleading, and not permitted by public policy;

   d. Employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods, with the explicit knowledge that such conduct was in violation of applicable North Carolina law, including 21 NCAC 58A .0109(i);

   e. Executing and implementing an unlawful agreement with CrossCountry to institute unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services to consumers, including Plaintiff, in order to ensure he would acquire a mortgage loan from CrossCountry to his detriment;

   f. Accepting kickback payments from CrossCountry in exchange for unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services;

   g. Knowingly enabling CrossCountry's unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to Raleigh Realty's clients, including Plaintiff;

   h. Knowingly enabling CrossCountry's violations of RESPA and corollary North Carolina laws and regulations designed to protect North Carolina consumers, including Plaintiff; and

   i. Proximately causing economic injuries to Plaintiff.

**ANSWER:** Defendant admits that Plaintiff purports to bring a lawsuit alleging various claims. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107 concerning Raleigh Realty's actions and, on that basis, denies the allegations. Defendant denies any remaining allegations of Paragraph 107.

108. Upon information and belief, all Raleigh Realty's unfair and deceptive conduct, representations, and omissions alleged herein are pursuant to policies, practices, and procedures created, adopted, and implemented for all of its business with CrossCountry.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108 concerning Raleigh Realty's actions and, on that basis, denies the allegations. Defendant denies the remaining allegations of Paragraph 108.

109. The forgoing allegations constitute Defendants' unfair or deceptive acts or practices in or affecting commerce in violation of N.C.G.S. § 75-1.1.

**ANSWER:** Defendant denies the allegations of Paragraph 109.

110. Defendants' unfair and deceptive acts and practices directly and proximately caused Plaintiff injury in the form of anxiety, stress, anger, frustration, mental anguish, and other pecuniary losses, expenses, costs, and other such damages to be proven at trial.

**ANSWER:** Defendant denies the allegations of Paragraph 110.

111. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff is entitled to recover all pecuniary losses, expenses, costs, and damages, including but not limited to the attorneys' fees and expenses incurred in the prosecution of this matter, and other such damages to be proven at trial.

**ANSWER:** Defendant denies the allegations of Paragraph 111.

112. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff is entitled to recover treble damages under N.C.G.S. § 75-16, and reasonable attorneys' fees and costs as provided in N.C.G.S. § 75-16.1.

**ANSWER:** Defendant denies the allegations of Paragraph 112.

### THIRD CAUSE OF ACTION
**Civil Conspiracy.**

113. The foregoing allegations are incorporated by reference and realleged herein.

**ANSWER:** Defendant adopts and incorporates by reference its responses to paragraphs 1 through 112 as its response to Paragraph 113.

114. The actions and conduct of Defendants CrossCountry and Raleigh Realty, as described *supra*, constitute a civil conspiracy.

**ANSWER:** Defendant denies the allegations of Paragraph 114.

115. Generally, a claim for civil conspiracy merely "associate[s] the defendants together" for liability purposes. *Henry v. Deen*, 310 S.E.2d 326, 334 (N.C. 1984). "The liability of the conspirators is joint and several[:]" each party who enters "into a common purpose or design is equally deemed in law a party to every act…done by any of the others in furtherance of such common design." *Muse v. Morrison*, 66 S.E.2d 783, 785 (N.C. 1951) (cleaned up).

**ANSWER:** Defendant states that the legal authorities quoted in Paragraph 115 speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 115.

116. To sufficiently state a claim for civil conspiracy, a plaintiff must allege "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 666 S.E.2d 107, 116 (N.C. 2008) (citing *Muse* at 785).

**ANSWER:** Defendant states that the legal authorities quoted in Paragraph 116 speak for themselves as to their contents, and Defendant denies any allegations or characterizations contrary thereto. Defendant denies any remaining allegations in Paragraph 116.

117. Upon information and belief, Defendants intended to form and did form a conspiracy by entering into an unlawful agreement by which Raleigh Realty exclusively referred its buyer clients, including Plaintiff, to CrossCountry in exchange for a monthly monetary payment.

**ANSWER:** Defendant denies the allegations of Paragraph 117.

118. Upon information and belief, Defendants shared an express understanding to implement this agreement by purposefully and actively depriving consumers, including Plaintiff, of her right to participate in the mortgage lending process without the cost-increasing kickbacks and referral fees explicitly prohibited by RESPA.

**ANSWER:** Defendant denies the allegations of Paragraph 118.

119. Upon information and belief, Defendants shared an express understanding to implement this agreement to institute policies and practices to unfairly and deceptively induce consumers, including Plaintiff, to select a mortgage against her best interest in violation of the UDTPA.

**ANSWER:** Defendant denies the allegations of Paragraph 119.

120. Each Defendant repeatedly violated RESPA and corollary state laws and regulations in furtherance of the conspiracy, and as a result Plaintiff suffered damages as identified herein.

**ANSWER:** Defendant denies the allegations of Paragraph 120.

### VI. PRAYER FOR RELIEF.

WHEREFORE, Plaintiff prays for the following relief:

a. Adjudging that Defendants CrossCountry Mortgage, LLC, and Raleigh Realty, Inc., each violated RESPA, 12 U.S.C. § 2607;

b. Awarding Plaintiff all damages permitted by RESPA, including treble and statutory damages where applicable;

c. Trebling the compensatory damages of Plaintiff pursuant to N.C.G.S. § 75-1.1, *et seq.*;

d. Adjudging that Defendants violated the UDTPA;

e. Awarding Plaintiff attorneys' fees;

f. That the costs of this action be taxed to Defendants;

g. For a trial by jury on all issues so triable; and

h. For such other and further relief as the Court deems just and proper.

**ANSWER:** Defendant denies that Plaintiff is entitled to any relief.

### AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Defendant asserts the following affirmative defenses, reserving the right to supplement or amend these defenses as discovery proceeds.

## FIRST DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted against CrossCountry. Indeed, CrossCountry incorporates the defenses and arguments set forth in its Motion to Dismiss the Amended Complaint and the related briefing thereto (Dkt. 19, 20, and 24), which were previously filed in this action, as if set forth herein.

## SECOND DEFENSE

Plaintiff lacks standing to assert claims against CrossCountry.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by RESPA's carve-out contained in 12 U.S.C. § 2607(c), including because CrossCountry paid fair market value for services it received under any agreement with Raleigh Realty and/or Page One Power. This includes CrossCountry's arguments in CrossCountry's memorandum in support of its motion to dismiss the Amended Complaint. Dkt. 20 at 14-17.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's Unfair or Deceptive Trade Practices Act claim is premised on alleged conduct that is already under pervasive and intricate regulation by other statutory schemes, including as explained in CrossCountry's memorandum in support of its motion to dismiss the Amended Complaint. Dkt. 20 at 18-20.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or ratification.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the application of the voluntary payment doctrine and by the doctrine of accord and satisfaction.

## NINTH DEFENSE

Plaintiff was not harmed by the alleged conduct of CrossCountry because he paid fair market value prices for services he requested and received.

## TENTH DEFENSE

To the extent that Plaintiff suffered any damages, such damages were the result of Plaintiff's own actions or the actions of third parties over which CrossCountry does not maintain any control and/or employees acting outside the scope of their employment.

## ELEVENTH DEFENSE

CrossCountry satisfied all requirements, to the extent applicable, of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*

## TWELFTH DEFENSE

Plaintiff requested all services for which he was charged.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTEENTH DEFENSE

Plaintiff received value for all services and charges by CrossCountry.

## FIFTEENTH DEFENSE

Plaintiff is not entitled to attorneys' fees or costs.

### SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by his failure to mitigate his alleged damages.

### SEVENTEENTH DEFENSE

Plaintiff's claims are subject to set-off or recoupment.

### EIGHTEENTH DEFENSE

Plaintiff's claims for treble damages are barred by the Fifth and Eighth Amendments to the United States Constitution.

### NINETEENTH DEFENSE

Plaintiff's claims are barred by any other matter constituting an avoidance or affirmative defense on legal or equitable grounds. To the extent that Plaintiff failed to set forth his claims with sufficient particularity to allow CrossCountry to determine all applicable and available defenses, or if the applicability of other defenses become apparent over the course of this case, CrossCountry hereby reserves its right to amend its Answer and assert such defenses. CrossCountry's investigation continues.

WHEREFORE, CrossCountry Mortgage, LLC respectfully requests that the Court:

1. Enter a judgment in its favor on all counts of the Amended Complaint;

2. Dismiss the Amended Complaint with prejudice;

3. Award CrossCountry its fees, costs, and expenses, including attorneys' fees incurred in this action; and

4. Grant such other relief as the Court deems just and proper.

This 21st day of July, 2026.

/s/ *Debra Bogo-Ernst*
Debra Bogo-Ernst
Illinois License No. 6271962
Nathan Pflaum
Illinois License No. 6346439
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Drive
Chicago, Illinois 60654
Tel: (312) 728-9062
Fax: (312) 728-9199
dernst@willkie.com
npflaum@willkie.com

*Lead Counsel for Defendant CrossCountry
Mortgage, LLC, by Special Appearance Pursuant to
Local Rule 83.1(e)*

/s/ *Clifton L. Brinson*
Clifton L. Brinson
NC State Bar No. 34331
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27601
Tel: (919) 821-6605
Fax: (919) 821-6800
cbrinson@smithlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendant
CrossCountry Mortgage, LLC*